David E. McAllister (SBN 185831)
dmcallister@piteduncan.com
Ellen Cha (SBN 250243)
echa@piteduncan.com
**PITE DUNCAN, LLP**
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385

Attorneys for *Defendants*
CitiMortgage, Inc. and Federal Home Loan Mortgage
Corporation

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. 10-52330 |
| DAVID RANDALL SMITH, | Chapter 13 |
| Debtor. | Adv. Case No. 11-05107 |
| DAVID RANDALL SMITH, <br><br> Plaintiff, <br><br> vs. <br><br> CITIMORTGAGE, INC.; FEDERAL HOME LOAN MORTGAGE CORPORATION; and all persons claiming by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title thereto; and DOES 1-150, inclusive, <br><br> Defendants. | **DEFENDANTS CITIMORTGAGE, INC. AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> **Hearing**: <br> Date:  May 30, 2013 <br> Time:  2:15 p.m, <br> Ctrm:  3020 <br> Judge: Hon. Arthur S. Weissbrodt |

Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure,[1] *defendants* CitiMortgage, Inc. ("Citi") and Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively, the "Defendants") respectfully submit this memorandum of law in support of their Motion for Summary Judgment.

---

[1] As made applicable to this case by Rules 7056 and 9014 of the Federal Rules of Bankruptcy Procedure.

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ - 1 -

II.     STATEMENT OF FACTS .................................................................................... - 1 -

   A.    LOAN ORIGINATION ............................................................................... - 1 -

   B.    LOAN TRANSFER TO CITI ........................................................................ - 2 -

   C.    TRANSFER OF LOAN TO FREDDIE MAC .................................................... - 3 -

   D.    POOLING OF THE LOAN ........................................................................... - 5 -

   E.    PLAINTIFF'S DEFAULT UNDER LOAN AND FORECLOSURE ACTION ............. - 6 -

   F.    PLAINTIFF'S BANKRUPTCY CASE ............................................................ - 7 -

   G.    ADVERSARY CASE .................................................................................. - 8 -

III.  ARGUMENT .......................................................................................................... - 9 -

   A.    DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW AS THERE IS NO GENUINE
         ISSUE OF MATERIAL FACT REGARDING THE VALIDITY AND/OR EXTENT OF CITI'S CLAIM ................. - 9 -

      1.    Legal Standard. ........................................................................... - 9 -

      2.    Citi Has Standing to Assert a Claim Against Plaintiff's Estate. ......... - 9 -

         a.    No Factual Dispute Exists As to The Negotiability of the Note ........... - 10 -

         b.    Citi is Entitled to Enforce the Note As A Matter of Fact and Law ......... - 11 -

         c.    Plaintiff Cannot Establish Any Genuine Issue As to Any Material Fact ......... - 12 -

   B.    DISPUTES RAISED BY PLAINTIFF FAIL TO CREATE TRIABLE ISSUES OF FACT ......... - 13 -

      1.    The Ownership of the Note is Irrelevant. ........................................... - 13 -

      2.    The Note is Supported by Consideration. .......................................... - 14 -

         a.    Holder in Due Course ............................................................... - 14 -

         b.    Presumptions .......................................................................... - 16 -

         c.    The Consideration for the Loan ................................................... - 17 -

         d.    Subsequent Consideration ......................................................... - 18 -

      3.    Plaintiff's Securitization Theory Does Not Give Rise to a Legally Cognizable Claim ......... - 19 -

         a.    Plaintiff lacks standing to assert any rights under the PC Agreement ......... - 20 -

         b.    Securitization Has No Impact on Citi's Right to Foreclose ......... - 21 -

i                                                    CASE NO. 11-05107

MEMORANDUM OF POINTS AND AUTHORITIES

**C.** **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM FOR QUIET TITLE** .................................................................................................................... - 24 -

**IV.** **CONCLUSION** ............................................................................................................... - 25 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case: 11-05107    Doc# 167    Filed: 04/15/13    Entered: 04/15/13 17:13:46    Page 3 of 33

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 25 –

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 9 –

*Bascos v. Federal Home Loan Mortg. Corp.*, 2011 WL 3157063, at *6 (C.D.Cal. July 22, 2011) . . . . . . . . . . . . . . . – 20 –

*Benham v. Aurora Loan Servs.*, 2009 WL 2880232, at *3 (N.D.Cal. Sept.1, 2009) . . . . . . . . . . . . . . . . . . – 22 –

*Buffalo County v. Richards,* 212 Neb. 826, 828–29, 326 N.W.2d 179 (Neb.1982) . . . . . . . . . . . . . . . . . . . . . . – 18 –

*California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), cert. denied, 484 –

9 –

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 9 –

*Cooper v. Allustiarte (In re Allustiarte)*, 786 F.2d 910, 916 (9th Cir.), cert. denied, 479 U.S. 847 (1986) . . . . . . . . . . – 17 –

*DCM Ltd. P'ship v. Wang*, 555 F.Supp.2d 808, 817 (E.D.Mich.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 18 –

*De Tray v. Higgins*, 31 Cal. App. 2d 482, 494, 88 P.2d 241, 246 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . – 16 –

*Department of Labor v. Triplett*, 494 U.S. 715, 720 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 19 –

*DeTray v. Higgins*, 31 Cal. App. 2d at 494, 88 P.2d at 246 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 17 –

*Dimock v. Emerald Properties*, 81 Cal. App.4th 686, 877 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 25 –

*Finalco, Inc. v. Roosevelt*, 235 Cal. App. 3d 1301, 3 Cal. Rptr. 2d 865 (Ct. App. 1991) . . . . . . . . . . . . . . . . . . . – 16 –

*Fisher v. Lehre*, 175 A.2d 707, 709 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 18 –

*Flores v. Deutsche Bank Nat'l Trust Co.*, 2010 WL 2719848, at *4 (D.Md. July 7, 2010) . . . . . . . . . . . . . . . . . . – 23 –

*Fourness v. Mortg. Elec. Registration Sys.*, 2010 WL 5071049, at *2 (D.Nev. Dec.6, 2010) . . . . . . . . . . . . . . . . . . – 23 –

*Hafiz v. Greenpoint Mortgage Funding, Inc.*, 652 F.Supp.2d 1039, 1043 (N.D.Cal.2009) . . . . . . . . . . . . . . . . . . . . . – 22 –

*Hahn v. Hahn*, 123 Cal.App.2d 97, 101, 266 P.2d 519 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 16 –

*Humboldt Savings Bank v. McCleverty*, 161 Cal. 285, 291 (1911) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 25 –

*In re Correia*, 452 B.R. 319, 324 (1st Cir.B.A.P. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 20 –

*In re Holm*, 931 F.2d at 623 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 10 –

*In re Pajaro Dunes Rental Agency, Inc.*, 174 B.R. at 578 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 16 –

*In re Weisband*, 427 B.R. 13, 22 (Bankr. D. Ariz. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 18 –

*Junger v. Bank of Am.*, 2012 WL 603262, at *3 (C.D. Cal. Feb.24, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 21 -

*Kelley v. Mortgage Elec. Registration Sys.*, 642 F.Supp.2d 1048, 1057 (N.D.Cal.2009) . . . . . . . . . . . . . . . . . . . . - 24 -

*Lona v. Citibank, N.A.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 25 -

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 21 -

*Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . - 10 -

*Lupertino v. Carbahal*, 35 Cal.App.3d 742, 748 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 24 -

*Mann v. Andrus*, 169 Cal.App.2d 455, 460, 337 P.2d 473, 476 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 15 -

*Matracia v. JP Morgan Chase Bank, NA*, 2011 WL 3319721, at *3 (E.D.Cal. Aug.1, 2011) . . . . . . . . . . . . . . . . . - 22 -

*Miller v. Provost*, 26 Cal.App.4th 1703, 1707 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 24 -

*Mix v. Sodd*, 126 Cal.App.3d 386, 390 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 25 -

*Nguyen v. Bank of Am. Nat'l Ass'n*, No. 11–3318, 2011 WL 5574917, at *9 (N.D.Cal. Nov.15, 2011) . . . . . . . . . . . . - 22 -

*Onofrio v. Rice*, 55 Cal. App.4th 413, 424 (2997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 25 -

*Pajaro Dunes Rental Agency, Inc.*, 174 B.R. 557 (Bankr. N.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . - 16 -

*Reyes v. GMAC Mortgage LLC*, 2011 WL 1322775, at *2 (D.Nev. Apr.5, 2011) . . . . . . . . . . . . . . . . . . . . . - 22, 23 -

*Sacchi v. Mortgage Electronic Registration Systems, Inc.*, 2001 WL 2533029 (C.D. Cal. June 24, 2011) . . . . . . . . . - 25 -

*Schumm v. Berg*, 37 Cal.2d 174, 185, 231 P.2d 39 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 16 -

*Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 24 -

*Stockton v. Newman*, 148 Cal.App.2d 558, 564 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 25 -

*Tilley v. Ampro Mortg.*, 2012 WL 33033, at *4 (E.D.Cal.Jan.6, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 21 -

*Triton Energy Corp. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 9 -

*United States v. Butner*, 440 U.S. 48 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 11 -

*Upperman v. Deutsche Bank Nat'l Trust Co.*, 2010 WL 1610414, at *3 (E.D. Va. Apr. 16, 2010) . . . . . . . . . . . . . . - 22 -

*Valley Forge Christian Coll. V. Am. United for Separation of Church and State*, 454 U.S. 464 (1982) . . . . . . . . . . . - 21 -

*Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 922 (B.A.P. 9th Cir. 2011) . . . . . . . - 10, 12, 14 -

*Wadhwa v. Aurora Loan Servs., LLC*, 2011 WL 2681483, at *4 (E.D.Cal. July 8, 2011) . . . . . . . . . . . . . . . . . . . - 22 -

*Warren v. Sierra Pac. Mortg. Servs.*, 2010 WL 4716760, at *3 (D.Ariz. Nov.15, 2010) . . . . . . . . . . . . . . . . . . . - 23 -

*Warth v. Selden*, 422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 21 -

*Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 10 -

iv         CASE NO. 11-05107

**MEMORANDUM OF POINTS AND AUTHORITIES**

# Statutes

11 U.S.C. § 101(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 11 –

11 U.S.C. § 101(5)(A)-(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 11 –

11 U.S.C. § 501(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 11 –

11 U.S.C. § 502(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 10 –

A.R.S. § 47-3602(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 14 –

Cal Comm. Code § 1201(27) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 12 –

Cal. Civ. Code § 1605 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 17 –, – 18 –

Cal. Civ. Code § 1614 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 16 –

Cal. Civ. Code § 1615 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 17 –

Cal. Code Civ. Proc. §761.020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 24 –

Cal. Com. Code § 3203. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 14 –

Cal. Comm. Code § 3103(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 15 –

Cal. Comm. Code § 3104(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 10 –

Cal. Comm. Code § 3104(a)(1)-(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 11 –

Cal. Comm. Code § 3201(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 16 –

Cal. Comm. Code § 3301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 11 –

Cal. Comm. Code § 3302(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 15 –, – 19 –

Cal. Comm. Code § 3303(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 17 –

Cal. Comm. Code § 3305(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 15 –

Cal. Comm. Code § 3308. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 12 –

Cal. Comm. Code § 3602(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 12 –, – 13 –

Cal. Comm. Code §1201(a)(21)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 12 –

*Veal*, 450 B.R. at 912, fn 25 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 14 –

# Rules

Fed. R. Bankr. P. 3001(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 10 –

Fed. R. Civ. P. 56(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 9 –

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 9 –

**MEMORANDUM OF POINTS AND AUTHORITIES**

Fed. R. Civ. P. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 9 –

Local Bankruptcy Rule 9014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 9 –

## Other Authorities

1 Witkin, *Summary of California Law*, Contracts § 207 (10th ed. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 17 –

3 L. King, Collier on Bankruptcy § 502.02, at 502-22 (15 ed. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 10 –

3 Williston on Contracts § 7:20 (Richard A. Lord, 4th ed.2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 18 –

Restatement (Second) of Contracts § 71(4) (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 18 –

Restatement (Second) of Contracts § 71, cmt. e (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 17 –

3 L. King Collier on Bankruptcy § 502.02 (15 ed. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . – 10 –

Case: 11-05107   Doc# 167   Filed: 04/15/13   Entered: 04/15/13 17:13:46   Page 7 of 33

# I.     INTRODUCTION

*Plaintiff* David Randall Smith ("<u>Plaintiff</u>") filed this lawsuit to challenge Defendants right to enforce the senior priority lien against his rental property located at 23 Pine Avenue, Mount Hermon, California 95041 (the "<u>Property</u>"). Although he does not dispute having received over two-hundred thousand dollars to finance the Property, he contends that he is not required to repay the amounts he borrowed. Plaintiff also seeks to quiet title to the Property on the grounds that Defendants assert an interest in the Property adverse to his. In essence, this action amounts to an objection to claim and request for the disallowance of a lien. Contrary to Plaintiff's allegations, there can be no material dispute regarding the enforceability of the note at issue in this action and/or Citi's rights to assert a claim in this case. Further, Plaintiff's quiet title claim fails as a matter of fact and law. For these reasons, as explained more fully herein, Defendants are entitled to summary judgment on all claims asserted against them by Plaintiff.

# II.     STATEMENT OF FACTS[2]

## A.   L<small>OAN</small> O<small>RIGINATION</small>

According to Citi's records, in or about January of 2006, Plaintiff and Sandra K. Smith (collectively, the "<u>Borrowers</u>") applied to Reunion Mortgage, Inc. ("<u>Reunion</u>") and were approved for a mortgage loan (the "<u>Loan</u>") in the principal amount of $227,000.00. (*See* Declaration of CitiMortgage, Inc. ("<u>Citi Declaration</u>"), ¶4, **Exhibit A**). In connection with the Loan, Borrowers executed a promissory note (the "<u>Note</u>") in the original principal sum of $227,000.00, dated January 23, 2006, which was made payable to Reunion and secured by a deed of trust (the "<u>Deed of Trust</u>") encumbering the Property. (*See* Citi Declaration, ¶5, **Exhibits B and C**; Declaration of Federal Home Loan Mortgage Corporation ("<u>FM Declaration</u>"), ¶4; Complaint, ¶¶ 17, 19; Request for Judicial Notice ("<u>RJN</u>"), **Exhibit A**). The Deed of Trust was duly recorded in the Official Records of Santa Cruz, California. (*See* Citi Declaration, ¶5**, Exhibit C**; RJN, **Exhibit A**).

Reunion was the originating lender for the Loan. (*See* Deposition Transcript of Marsha Berlinski ("<u>Berlinski Transcript</u>"), [page:line] 14:20-25; 15:1-2; 16:16-24; 17:4-7; 17:19-20;

---

[2] The facts herein are set forth more fully in the accompanying Statement of Undisputed Facts in Support of Motion for Summary Judgment.

**MEMORANDUM OF POINTS AND AUTHORITIES**

22:7-9; 42:23-25; 43:1-4). Reunion funded the Loan through a combination of advances from a line of credit it maintained with First Collateral Services, Inc. ("First Collateral"), an affiliate of Citi, and its own funds. (Berlinski Transcript, 13:19-25; 14:1-3; 16:9-11).

As evidenced by the HUD-1 Statement, the Loan proceeds were used to payoff Borrowers' loan with Washington Mutual Bank ("WAMU"). (*See* Citi Declaration, ¶6, **Exhibit D**). Following the satisfaction of the WAMU loan, WAMU executed and recorded a Full Reconveyance. (RJN, **Exhibit B**).

**B. LOAN TRANSFER TO CITI**

According to Citi's records, in February of 2006, Citi purchased a pool of loans from Reunion, including the Loan. (*See* Citi Declaration, ¶7; Reunion Transcript; 34:17-19; Deposition Transcript of Janet Sims ("Sims Transcript"), 20:17-19). According to Citi's records, the acquisition of the Loan was funded on or about February 6, 2006. (*See* Citi Declaration, ¶7, **Exhibit E**). In connection with the sale, Reunion, by and through Ginger Mendoza ("Mendoza"), in her capacity as Assistant Vice President for Reunion, indorsed the Note in blank ("Reunion Indorsement") and transferred physical possession of the Note to First Collateral. (Berlinski Transcript, 23:1-9; 23:19-23: 24:1-10; 33:21-23; 34:5-6; 34:15-16; 34:25; 44:2-5). The Reunion Indorsement, which is located on the back of the third page of the Note, was subsequently converted to a special indorsement to Citi. (Berlinski Transcript, 8:11-16; 24:8-10; 44:2-12; Citi Declaration, ¶8; **Exhibit B**). Reunion used the proceeds from the sale of the Loan to Citi to pay down its credit line with First Collateral. (Berlinski Transcript, 29:8-18; 30:5-8).

A copy of a letter dated February 7, 2006, by which Reunion notified Borrowers of the transfer of the Loan to Citi is contained in Citi's records. (*See* Citi Declaration, ¶9, **Exhibit F**). In conjunction with the purchase of Loan Citi also acquired the servicing rights to the Loan and on February 18, 2006, Citi notified Borrowers that it acquired the servicing rights to the Loan. According to the notice, the first payment under the Loan was due on March 1, 2006. (*See* Citi Declaration, ¶10, **Exhibit G**). Citi has continually serviced the Loan since February of 2006. (*See* Citi Declaration, ¶11).

**MEMORANDUM OF POINTS AND AUTHORITIES**

## C.     TRANSFER OF LOAN TO FREDDIE MAC

As with mortgage loans generally, the Loan to Plaintiff has an investor, that owns the loan, a servicer, that services the loan, and a custodian, that holds the original Note.

On or about March 13, 2006, the Loan was sold by Citi to Freddie Mac, thus transferring ownership of the Loan from Citi to Freddie Mac. (*See* Citi Declaration, ¶12; FM Declaration, ¶5; Deposition Transcript of Dean Meyer ("Meyer Transcript"), 42:21-22; 43:1-5 and **Exhibit 7**). The sale of the Loan is reflected in Citi's records as a sale to Investor 3404, which is the internal code that Citi uses to identify Freddie Mac. (*See* Citi Declaration, ¶13; **Exhibit H**). The sale price of the Loan was $226,794.79, which Freddie Mac paid to Citi on or about March 13, 2006. (*See* Citi Declaration, ¶12, 14, and **Exhibit H**; FM Declaration, ¶5, **Exhibit A**; Meyer Transcript, **Exhibit 7**).

In conjunction with its acquisition of the Loan, Freddie Mac required: (i) Citi to deliver the Note and Deed of Trust to Freddie Mac, or its designee to serve as the document custodian of the Loan;  (ii) the Note to be indorsed in blank; and (iii) the designated document custodian to verify certain information contained in the Note and related documents for the Loan, and certify that it performed the verification and that the original Loan documents, including the Note, were in its possession, a process Freddie Mac refers to as "certification" or "certifying" the Note. (*See* FM Declaration, ¶6; Sims Transcript, 28:4-10; 66:10-15; Meyer Transcript, 174:7-20; 175:1-8). Before the closing of the sale of the Loan to Freddie Mac, the following occurred: (i) Citi delivered the original Note, indorsed in blank, and Deed of Trust to Citibank, N.A. ("Citibank"), an affiliate of Citi, as Freddie Mac's designated document custodian; (ii) Citi represented and warranted to Freddie Mac that it was the owner of the Loan for purposes of the sale to Freddie Mac; and (3) Citibank, as designated document custodian of the Loan, completed the certification of the Note. (*See* FM Declaration, ¶8; Meyer Transcript, 72:1-5; 155:6-10; Sims Transcript, 28:6-10).

Additionally, Section 56.7 of the Freddie Mac Single Family/Single-Family Seller/Servicer Guide (the "<u>Guide</u>") requires that "[w]hen a Mortgage is sold to Freddie Mac, the Seller must endorse the Note in blank in accordance with Section 16.4" of the Guide. (*See* Cha

Case: 11-05107   Doc# 167   Filed: 04/15/13   Entered: 04/15/13 17:13:46   Page 10 of 33

Declaration, ¶8, **Exhibit F,** p. 94-98; RJN, **Exhibit G**; Sims Transcript, 30:13-14). In accordance with the Guide, Janet Sims, in her capacity as a Vice President of Citi, indorsed the Note in blank (the "Citi Indorsement") on behalf of Citi as seller. (Citi Declaration, **Exhibit B**; Sims Transcript, 25:17-25; 30:13-14; Meyer Transcript, 70:5-17 and **Exhibit 5**). The Citi Indorsement is located on the front side of the third page of the Note. (*See* Citi Declaration, ¶8; **Exhibit B**; Meyer Transcript, 70:5-17 and **Exhibit 5**).

Plaintiff is not a party to or an intended beneficiary of the sale transaction of the Loan between Citi and Freddie Mac. (*See* FM Declaration, **Exhibits B, C, and D**). Freddie Mac has never disputed Citi's ownership in or right to sell the Loan. (Meyer Transcript, 154:21-22; 155:2-17; 156:5-10).

Continuously since Freddie Mac acquired the Loan, Citi has acted as Freddie Mac's authorized servicing agent with respect to the Loan. (*See* FM Declaration, ¶9; Citi Declaration, ¶11). As servicer, Citi's servicing obligations and authority are governed by the Guide. (*See* FM Declaration, ¶9). The Guide authorizes Citi to take certain action with respect to the Loan (FM Declaration, ¶9), including but not limited to: (a) the right to physically possess and enforce the note (FM Declaration, ¶10; Meyer Transcript, 66:11-17; 170:9-15; 171:12-18); (b) have the Deed of Trust assigned to Citi when necessary (Meyer Transcript,79:4-6; 83:6-14); (c) report information to MERS (Meyer Transcript, 154:5-8); (d) substitute trustee to enforce the Deed of Trust (Meyer Transcript, 158:17-21); (e) declare whether a loan is in default (Meyer Transcript, 161:7-18); (f) collect payments due under the Note (Meyer Transcript, 164:13-22; 165:1-20; 171:12-18; FM Declaration, ¶11); (g) initiate foreclosure action (Meyer Transcript, 175:19-22; 176:2-4 and 6-10). Plaintiff is not a party to or an intended beneficiary of the Guide and neither Citi nor Freddie Mac have any dispute as to the fact that Citi is the authorized servicer of the Loan on behalf of Freddie Mac. (FM Declaration, ¶12).

The Guide also instructs Citi as servicer with respect to custody of the original Note and Deed of Trust for the Loan. Pursuant to Section 52.7 of the Guide, Citi is required to transfer the original Note and Deed of Trust to Freddie Mac or its designee which, as to the Loan, is Citibank. (*See* Cha Declaration, ¶8, **Exhibit F,** p.99-100; RJN, **Exhibit G**). In accordance with

**MEMORANDUM OF POINTS AND AUTHORITIES**

the Guide and at Freddie Mac's request, Citi transferred possession of the original Note and Deed of Trust to Freddie Mac, through its designated custodian, Citibank, prior to the closing of the sale of the Loan. (*See* Meyer Transcript, 174:12-14). For ordinary business purposes, the original Loan documents, including the original Note, –are maintained by Citibank. (*See* Sims Transcript, 64:6-8).

On or about September 13, 2010, the original Note and Deed of Trust were sent to Citi's bankruptcy department in Dallas, Texas to be provided to Citi's undersigned counsel, Pite Duncan, LLP ("Pite"). (*See* Citi Declaration, ¶15, **Exhibit I**). Shortly thereafter, on or about September 15, 2010, Citi mailed the original Note and Deed of Trust to Pite at its San Diego, California office. (*See* Citi Declaration, ¶16, **Exhibit J**). Pite has been in possession of these documents for the purposes of this litigation as an agent of and bailee for Citi. (Cha Declaration, ¶7, **Exhibit E**).

**D.     POOLING OF THE LOAN**

Although not dispositive as to the outcome of the Plaintiff's claims in this action, Freddie Mac issues and offers Mortgage Participation Certificates ("PCs") in connection with certain mortgage loans. (*See* FM Declaration, ¶ 13). PCs are securities that represent interests in, and receive payments from, pools of one-to-four family residential mortgages. On or about February 1, 2001, Freddie Mac entered into a Mortgage Participation Certificates Agreement (the "Agreement"), which was amended on June 28, 2004, with holders of PCs offered pursuant to Freddie Mac's Offering Circular for Mortgage Participation Certificates (the "Offerings Circular"), dated February 1, 2001. (*See* FM Declaration, ¶14, **Exhibit B**; **FM** Declaration, ¶15, **Exhibit C**). On July 1, 2004, Freddie Mac issued an Offering Circular that contained information about PCs being offered to potential investors pursuant to the terms of the Agreement. (*See* FM Declaration, ¶15, **Exhibit C**). On or about March 6, 2006, Freddie Mac issued a Pool Supplement (the "Supplement") to the Offering Circular that incorporated by reference the terms of the Offering Circular and identified PCs being offered to potential investors along with the pool of mortgages to which the PCs related (the "PC Pool A44088"), which were included in a mortgage loan schedule (the "Mortgage Loan Schedule") annexed to

**MEMORANDUM OF POINTS AND AUTHORITIES**

the Supplement. (*See* FM Declaration, ¶16, **Exhibit D**; Meyer Transcript, 92:9-11; 92:17-19). The Pool Supplemental and Mortgage Loan Schedules reflect the loans from which cash flows were pledged as collateral, to guarantee payments by Freddie Mac to the holders of PCs under the PC Agreement. (Meyer Transcript, 93:14-15; 97:8-11; 104:8-16). According to the Pool Supplement and Mortgage Loan Schedules to the PC Agreement, the Loan is identified as having been part of PC Pool Number A44088. (*See* FM Declaration, ¶¶17 and 18; **Exhibit D**, p.74). Since the purchase of the Loan from Citi in March 2006, Freddie Mac has always owned the Note (even while the Note was within the PC Pool A44088). (*See* FM Declaration, ¶19; Meyer Transcript, 90:22; 91:1; 104:8-16; 118:15-21). Plaintiff is not a party to or an intended beneficiary of the PC Agreement between Freddie Mac and purchasers of PCs and Borrowers did not purchase any of the PCs offered in the Supplement. (*See* FM Declaration, ¶19 and **Exhibit B, C, and D**).

As a result of the Borrowers' default under the Loan, the Loan was removed from PC Pool A44088 on February 15, 2010. (*See* FM Declaration, ¶21). By virtue of the removal of the Loan, the holders of the PCs are no longer entitled to any principal or interest payments from the Loan. (*See* FM Declaration, ¶21; Meyer Transcript, 115:14-22).

**E.** **PLAINTIFF'S DEFAULT UNDER LOAN AND FORECLOSURE ACTION**

Following Borrowers' default under the Loan, Citi retained Cal-Western Reconveyance Corporation ("Cal-Western") to initiate foreclosure proceedings against the Property in October, 2009. (*See* Citi Declaration, ¶¶18 and 19). Cal-Western is the duly appointed substitute trustee under the Deed of Trust. (*See* RJN, **Exhibit C**). Pursuant to the terms of the Guide, Freddie Mac authorized Citi to cause the Deed of Trust to be assigned to Citi. (Meyer Transcript, 79:4-18).

On October 5, 2009, Yvonne Wheeler ("Wheeler"), an employee of Cal Western, in her capacity as Assistant Secretary of Mortgage Electronic Registration Systems, Inc. ("MERS"), executed an Assignment of Deed of Trust ("Assignment") whereby MERS granted, assigned, and transferred the beneficial interest under the Deed of Trust to Citi. (*See* RJN, **Exhibit D**; Deposition Transcript of Yvonne Wheeler ("Wheeler Transcript"), 20:3-13; 20:20-21; 21:13-14;

22:2-3). The Assignment was recorded in Official Records of Santa Cruz County, California on January 19, 2010, as Instrument No. 2010-0001664. (*See* RJN, **Exhibit D**).

According to the Mortgage Electronic Registration Systems, Inc.'s Corporate Resolution, dated July 14, 2000, Wheeler, as an employee of Cal-Western, was appointed as assistant secretary of MERS. (Wheeler Transcript, 37:5-20; 38:1-2; 38:16-18; 61:11-14; Cha Declaration, ¶3, **Exhibit A,** p.20). In her capacity as assistant secretary, Wheeler was authorized to: "assign the lien of any mortgage loan naming MERS as the mortgagee when Cal-Western is under contract with a MERS Member who is also the current promissory note-holder." (Wheeler Transcript, 118:22-25; 119:1-5; 119:9-13).

On November 17, 2009, Cal-Western executed a Notice of Default ("<u>NOD</u>") which was recorded against the Property in the Official Records of Santa Cruz County, California as Instrument No. 2009-0053784. (*See* RJN, **Exhibit E**). After Borrowers failed to cure the default referenced in the NOD, on February 18, 2010, Cal-Western executed a Notice of Trustee's Sale ("<u>NOS</u>") that put interested parties on notice that the Property would be sold at a public auction on March 11, 2010. (*See* RJN, **Exhibit F**). The NOS was recorded against the Property on February 19, 2010, in the Official Records of Santa Cruz County, California as Instrument No. 2010-0006322. (*Id.*)

**F.  PLAINTIFF'S BANKRUPTCY CASE**

In order to stop the foreclosure of the Property, on March 10, 2010, Plaintiff commenced the administrative case underlying this action by filing a voluntary petition for relief under chapter 13 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* ("<u>Bankruptcy Code</u>"). (*See* Bankruptcy Docket ("Bky. Dkt."), No. 1). The case was subsequently converted to a chapter 11 on February 14, 2011. (*See* Bky. Dkt., No. 56). As of the date of this motion, Plaintiff has not obtained Court approval of a disclosure statement, much less confirmed a plan of reorganization. (*See generally* Bky. Dkt.).

Prior to the conversion of Plaintiff's bankruptcy case, on or about June 15, 2010, Citi filed a Motion for Relief from Automatic Stay ("<u>Motion for Relief</u>"), which it subsequently amended to include a request for relief from the co-debtor stay of 11 U.S.C. § 1301, to enable it

**MEMORANDUM OF POINTS AND AUTHORITIES**

to enforce its state law remedies with respect to the Property. (*See* Bky. Dkt. Nos. 21 and 25).

On July 27, 2010, Plaintiff filed an opposition to the Motion for Relief (the "Opposition"), on the grounds that Citi and MERS, the named beneficiary under the Deed of Trust, lacked standing to prosecute the motion. (*See* Bky. Dkt. No. 27). Notwithstanding Plaintiff's Opposition, the Court determined that Citi had standing to prosecute the Motion for Relief and, as a result, entered an order granting Citi adequate protection (the "APO"). (*See* Bky. Dkt., No. 94). On or about June 29, 2011, Plaintiff unsuccessfully moved the Court to reconsider the APO. (*See* BK Dkt., No. 98).

## G.   ADVERSARY CASE

On April 13, 2011, Plaintiff filed his complaint, thereby commencing this case. (*See* Adversary Docket ("Adv. Dkt."), No. 1). Upon the motion of Defendants, the Court dismissed Plaintiff's third, fourth, and fifth causes of action, with leave to amend, and declined to dismiss Plaintiff's first, second, and sixth causes of action, *without prejudice*. (Adv. Dkt., No. 19). In support of its denial of the motion as to the three remaining causes of action, the Court found that the Complaint asserts that the note was never endorsed. (Adv. Dkt., 44, [page:line] 6:16-17). The Court also found that the allegations in the Complaint assert that Citi did not provide consideration for the Note. (Adv. Dkt., 44, 6:17-18). Further, the Court found that the Complaint alleged that the note was funded by an unknown third party. (Adv. Dkt., 44, 6:18-19). The Court determined that the Complaint alleges that Citi is not a holder of the Note and, thus, any rights asserted by Citi in the Loan are derivative of those of Reunion. To the extent that the Complaint asserts that Reunion did not provide consideration for the Note, then Citi's rights would be subject to any defenses to the enforceability of the Note available as against non-holders in due course. (Adv. Dkt., 44, 7:16-25).

The Court found that the allegations in the Complaint regarding the possibility that the note was transferred to a securitized trust did not appear relevant because the Complaint nowhere alleges that Citi does not currently hold the Note. (Adv. Dkt., 44, 8:1-4). The Court further stated that the Plaintiff provided no legal authority for the proposition that the creation of securities evidencing an interest in a trust caused the underlying property held by the trust to change in

**MEMORANDUM OF POINTS AND AUTHORITIES**

character from being a negotiable instrument to a non-negotiable paper.   (Adv, 44, 8:5-9).
Plaintiff failed to timely amend his third, fourth and fifth causes of action. As a consequence,
only the first, second and sixth causes of action remain in dispute.

## III.   ARGUMENT

### A.   DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW AS THERE IS NO GENUINE ISSUE OF MATERIAL FACT REGARDING THE VALIDITY AND/OR EXTENT OF CITI'S CLAIM

#### 1.   Legal Standard.

Rule 56 of the Federal Rules of Civil Procedure[3] provides, in pertinent part, that "a party against whom relief is sought may move, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b). Summary judgment is appropriate if "there is no genuine issue as to any material fact and…the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex*, 477 U.S. at 323.  Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" to defeat a motion for summary judgment. *Triton Energy Corp. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Moreover, mere disagreement or the bald assertion that a genuine issue of material fact exists will not preclude the use of summary judgment. *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988). Finally, not every disputed factual issue is material in light of the substantive law that governs the case. Instead, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. at 248.

#### 2.   Citi Has Standing to Assert a Claim Against Plaintiff's Estate.

The issue before the Court is simple: whether Citi has standing to assert a claim in the Plaintiff's bankruptcy case. A validly filed proof of claim constitutes *prima facie* evidence of the

---

[3] As made applicable to this case by Rules 7056 and 9014 of the Federal Rules of Bankruptcy Procedure.

claim's validity and amount. Fed. R. Bankr. P. 3001(f). It is well settled that a proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a). *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000). Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *Id.* (citing *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991)(quoting 3 L. King, Collier on Bankruptcy § 502.02, at 502-22 (15 ed. 1991)). To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Id.* (citing *In re Holm*, 931 F.2d at 623).

The record reflects that Citi's claim was filed in accordance with Rule 3001. More specifically, the claim was: (1) filed on the Court's Official B10 Form; (2) executed by Citi's authorized agent (i.e., its undersigned counsel); (3) accompanied by a duplicate of the writing on which the claim is based (i.e., the Note); and (4) accompanied by evidence that the security interest in the Property has been perfected (i.e., a copy of the recorded Deed of Trust). (*See* Claims Registry Claim No. 2). Nevertheless, Citi acknowledges that it may be required to show that it has standing to assert a claim in order to obtain the benefits of Rule 3001(f). *See Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 922 (B.A.P. 9th Cir. 2011)(noting that standing is a prerequisite to the evidentiary benefits set forth in Rule 3001(f)). As discussed more fully below, Citi has met its burden.

### a. No Factual Dispute Exists As to The Negotiability of the Note

As a threshold matter, Defendants address Plaintiff's apparent contention that the Note is nonnegotiable. Under California law, a negotiable instrument is defined as "an unconditional promise or order to pay a fixed amount of money." Cal. Comm. Code § 3104(a). The following criteria must be met in order for an instrument to be negotiable under California law: (1) it must be made payable to bearer or order; (2) it must be payable on demand or at a definite time; (3) it must not state any other undertaking or instruction by the person promising to do any act in addition to the payment of money. Cal. Comm. Code § 3104(a)(1)-(3). Each of these elements is satisfied in this case. First, the Note was made payable to the order of Reunion at the time it was

- 10 -    CASE NO. 11-05107

**MEMORANDUM OF POINTS AND AUTHORITIES**

issued, thereby satisfying the requirements of Section 3104(a)(1). (*See* Citi Declaration, ¶5, **Exhibit B**). Second, the Note satisfies the requirements of Section 3104(a)(2) because it is payable at a definite time (i.e., the Note specifically provides that it is due and payable on February 1, 2036). (*See* Id.). Finally, the Note complies with Section 3104(a)(3) as it does not require Borrowers to undertake any act aside from the payment of money (with the exception of maintaining and protecting the Property to secure payment, which is expressly allowed under the statute). In light of the foregoing, there can be no genuine dispute that the Note is negotiable.

### b.    Citi is Entitled to Enforce the Note As A Matter of Fact and Law

Turning to the issue of whether Citi may assert a claim in this case, the Court must look to both federal and state law. Section 501 of the Bankruptcy Code authorizes a "creditor" to file a proof of claim. *See* 11 U.S.C. § 501(a). A "creditor" is defined under the Bankruptcy Code as, among other things, an "entity that has a 'claim' against the debtor that arose at the time of or before the order for relief concerning the debtor." *See* 11 U.S.C. § 101(10). In turn, the Bankruptcy Code defines "claim" as follows:

> (A)    *right to payment*, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

> (B)    right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5)(A)-(B)(emphasis added). To determine whether Citi has a "right to payment" under the Note, the Court must look to California law. *See United States v. Butner*, 440 U.S. 48 (1979) (state substantive law controls the rights of note and lienholders).

In California, the enforcement of negotiable instruments is governed by the California Commercial Code (the "CCC"). Among the persons[4] entitled to enforce a negotiable instrument under the CCC is the "holder." *See* Cal. Comm. Code § 3301. Section 1201 of the CCC defines

---

[4] Cal. Comm. Code § 1201(27) defines "person" as "an individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, government, governmental subdivision, agency or instrumentality, public corporation or any other legal or commercial entity."

**MEMORANDUM OF POINTS AND AUTHORITIES**

"holder" as the "person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession…" Cal. Comm. Code §1201(a)(21)(a). An instrument is payable to the bearer if it does not state a payee. *See* Cal Comm. Code § 3109(a)(2).

Citi qualifies as the "holder" of the Note because it is in possession of the Note, which is indorsed and payable in blank.[5] (*See* Citi Declaration, ¶8 and **Exhibit B**; Sims Transcript, 30:13-14; 64:6-8; 66:10-15; Meyer Transcript, 165:12-16; 167:15-20; 168:9-17). As the holder, Citi is the "person entitled to enforce" the Note pursuant to California law. In this capacity, Citi indisputably has a "right to payment" under the Note. Indeed, in order to discharge their obligations under the Note, Borrowers are required to tender payments to the "person entitled to enforce" the instrument. *See* Cal. Comm. Code § 3602(a) (providing that "an instrument is paid to the extent payment is made…to a person entitled to enforce the instrument.") It follows that Citi is a "creditor" within the meaning of section 101(10) of the Bankruptcy Code and has both the injury-in-fact requirement of constitutional standing and the real party in interest requirement of prudential standing to assert a claim against Plaintiff's bankruptcy estate. *See Veal*, 450 B.R. at 920 ("In the context of a claim objection, both the injury-in-fact requirement of constitutional standing and the real party in interest requirement of prudential standing hinge on who holds the right to payment under the Note and hence the right to enforce the Note").

### c. *Plaintiff Cannot Establish Any Genuine Issue As to Any Material Fact*

Throughout the course of this litigation, Plaintiff has confounded the material issues. His discovery efforts have focused on either the ownership of the Loan or the servicing of the Loan. This focus is misguided. Regardless of whether who owns or services the Loan, Citi has standing to assert a claim in Plaintiff's bankruptcy case so long as it has a "right to payment" under the Note. As previously discussed, the record reflects that Citi has a right to payment under the Note by virtue of its status as the "holder" of the Note. More significantly, Freddie Mac, as the owner of the Loan, has specifically authorized Citi, as servicer, to also be the holder of the Note and enforce the Note, including the authority to collect payments due under the Note pursuant to the

---

[5] All of the signatures and indorsements on the Note are presumptively authentic and authorized. *See* Cal. Comm. Code § 3308.

**MEMORANDUM OF POINTS AND AUTHORITIES**

terms of the Guide. (Meyer Transcript, 167:7-20; 168:9-22; 66:11-17; 171:12-18; 164:13-22; 165:1-20; 170:9-15). Plaintiff has not presented any evidence to refute this fact. Nor can he. In fact, the only evidence that Plaintiff will presumably set forth in opposing this motion is his opinion that the Guide is not a legal contract on the grounds that it is unsigned by the Defendants and, therefore, fails to confer any authority upon Citi to enforce the Loan. (Meyer Transcript, 81:3-9). Regardless of Plaintiff's opinion of what constitutes a legal contract, Plaintiff is not a party to or an intended beneficiary of the Guide or any other servicing agreement and neither Citi nor Freddie Mac have any dispute as to the fact that Citi is the authorized servicer of the Loan on behalf of Freddie Mac and the note holder. (*See* FM Declaration, ¶¶11 and 19). Thus, Plaintiff lacks standing to raise any dispute as to the terms of the Guide or any other servicing agreement.

It is indisputable that Citi is in possession of the Note, which is indorsed and payable in blank. (*See* FM Declaration, ¶10; Citi Declaration, ¶¶8 and 15; **Exhibit B**; Sims Transcript, 64:6-8; Meyer Transcript, 70:5-17). Even the Court found that the Complaint nowhere alleged that Citi does not currently hold the Note. (Adv. Dkt. 44, 8:1-4). Simply put, Plaintiff cannot establish any genuine issue as to Citi's authority to enforce the Note as holder. Based upon the foregoing, Defendants are entitled to summary judgment that Citi has standing to assert a claim in Plaintiff's administrative case.

**B.      DISPUTES RAISED BY PLAINTIFF FAIL TO CREATE TRIABLE ISSUES OF FACT**

Undoubtedly, Plaintiff will defend against this motion by arguing that Citi lacks standing because it is not the owner of the Loan and did not pay consideration for the Note. These legal contentions have spurned countless hours of discovery. For the reasons discussed below, Plaintiff's arguments are both irrelevant and meritless.

**1.      The Ownership of the Note is Irrelevant.**

Plaintiff confuses the ownership and holder concepts. In short, Plaintiff argues that Citi lacks standing to enforce the Note because Freddie Mac and/or the certificate holders of a securitization trust *own* the Loan. (Complaint, 7:2-6). Under California law, the Note is "paid to the extent payment is made by or on behalf of a party obliged to pay the instrument and to *a person entitled to enforce the instrument*." *See* Cal. Comm. Code § 3602(a)(emphasis added). As

**MEMORANDUM OF POINTS AND AUTHORITIES**

the *Veal* court recognized, one can be the "person entitled to enforce" without having an ownership interest in the negotiable instrument. *Veal*, 450 B.R. at 912, fn 25. Since Citi is the "person entitled to enforce" the Note, it is the entity to which Borrowers must tender payments, regardless of whether the Loan is owned by another person or entity.[6] *See Veal*, 450 B.R. at 921 fn 27 ("Article 3 is sufficiently flexible to allow a single identified person to be both the "person entitled to enforce" the note, and an agent for all those who may have ownership interests in a note. This point reflects the view that so long as the maker's obligation is discharged by payment, the maker should be indifferent as to whether the 'person entitled to enforce' the note satisfies his or her obligations, under the law of agency, to the ultimate owners of the note."). Applying this principle to the facts of this case, Plaintiff, like the Veals, should be indifferent as to whether Citi has an ownership interest in the Note, so long as his payments to Citi discharge his obligations under the Note. Based on the record in this case, there can be no dispute that Plaintiff's payment to Citi, in its capacity as the "person entitled to enforce" the Note, discharges his obligations as a matter of law, even if Citi is ultimately required to tender the payments to a separate owner of the Loan. As a consequence, it is immaterial whether Citi has an ownership interest in the Loan.

### 2.    The Note is Supported by Consideration.

Throughout this litigation, Plaintiff has sought to defend against the enforcement of the Note on the ground that it is not supported by consideration. Specifically, Plaintiff argues that Citi is not entitled to enforce the Note because Reunion did not provide Borrowers with any consideration and, thus, Reunion had no interest to transfer to Citi. (Complaint, 4:11-14; 6:22-23). Plaintiff's contention fails for multiple reasons.

### *a.    Holder in Due Course*

---

[6] Cal. Com. Code § 3203 specifically recognizes that a person who has an ownership right in an instrument might not be a person entitled to enforce the instrument. Note 1 to Cal. Com. Code § 3203 provides the following example: "suppose X is the owner and holder of an instrument payable to X. X sells the instrument to Y but is unable to deliver immediate possession to Y. Instead, X signs a document conveying all of X's right, title, and interest in the instrument to Y. Although the document may be effective to give Y a claim to ownership of the instrument, Y is not a person entitled to enforce the instrument until Y obtains possession of the instrument. No transfer of the instrument occurs under Section 3-203(a) until it is delivered to Y."

**MEMORANDUM OF POINTS AND AUTHORITIES**

As an initial matter, the defense to the enforcement of a negotiable instrument based on lack of consideration is available only as against non-holders in due course. *See* Cal. Comm. Code § 3305(b); *Mann v. Andrus*, 169 Cal.App.2d 455, 460, 337 P.2d 473, 476 (1959)(citation omitted) ("Defenses between the original parties, such as lack of consideration, are usually not available as defenses against a holder in due course"). In other words, evidence of want of consideration to the maker of a note is irrelevant as against a holder in due course. *Id.* Therefore, to the extent Citi qualifies as a holder in due course, Plaintiff cannot assert a defense based on lack of consideration.

A person qualifies as a holder in due course if:

> (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and

> (2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 3- 306, and (vi) without notice that any party has a defense or claim in recoupment described in Section 3- 305(a).

Cal. Comm. Code § 3302(a). There can be no dispute that Citi qualifies as a holder in due course. First, the Note does not bear any apparent evidence of forgery or alteration. On the contrary, Borrowers do not dispute executing the Note. (*See* Complaint, 4:8-11; 4:14-17). Second, the record reflects that Citi took the Note for value prior to Borrowers' default under the Loan. (*See* Citi Declaration, ¶8, **Exhibit E**). Third, Citi took the  instrument in good faith as it observed reasonable commercial standards of fair dealing in purchasing the Note from Reunion. *See* Cal. Comm. Code § 3103(4) (defining "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing."). Although the Complaint conclusorily alleges that *Reunion* falsely represented that it was funding the Note, (*see* Complaint, 4:11-13), it is devoid of any allegations that *Citi* acted in bad faith in acquiring the Loan. Fourth, Citi did not have notice that the Note was overdue at the time it acquired the Loan because Borrowers were current on the Loan at the time of the acquisition. This was necessarily the case because the first

**MEMORANDUM OF POINTS AND AUTHORITIES**

payment under the Note was not due until March 1, 2006, *after Citi acquired the Loan*. (*See* Citi Declaration, ¶10, **Exhibit G**). Fifth, there is no evidence that the Note contains an unauthorized signature or alteration. In fact, Plaintiff admits to executing the Note, as previously noted. (*See* Complaint, 4:8-11; 4:14-17). Sixth, Reunion was the only person claiming a property or possessory right in the Note or its proceeds at the time Citi purchased the Loan. (*See* Berlinski Transcript, 14:20-25; 15:1-2; 16:16-24; 17:19-20; 22:7-9). Finally, Citi was unaware of any defenses to the enforcement of the Note at the time it acquired the Loan.

In sum, Citi qualifies as a holder in due course as a matter of fact and law. As a result, Plaintiff cannot assert the defense of lack of consideration against Citi. Nor can he assert the defense against any of Citi's transferees (i.e. Freddie Mac). *See* Cal. Comm. Code § 3201(1) ("Transfer of an instrument vests in the transferee such rights as the transferor has therein…"); *Finalco, Inc. v. Roosevelt*, 235 Cal. App. 3d 1301, 3 Cal. Rptr. 2d 865 (Ct. App. 1991) ("[W]hen a transferee takes an instrument from a holder in due course, the transferee takes free from all claims and defenses to the same extent as did the holder in due course even if the transferee is aware of those claims and defenses.").

### b. Presumptions

As a general rule, California courts do not concern themselves with the adequacy of consideration. *Schumm v. Berg*, 37 Cal.2d 174, 185, 231 P.2d 39 (1951)("…the law will not enter into an inquiry as to the adequacy of the consideration."). In the case of written instruments, it is presumed that a promissory note was given for sufficient consideration. *See* Cal. Civ. Code § 1614; *see also In re Pajaro Dunes Rental Agency, Inc.*, 174 B.R. 557 (Bankr. N.D. Cal. 1994); *Hahn v. Hahn*, 123 Cal.App.2d 97, 101, 266 P.2d 519 (1954). Similarly, "a recital in a contract that a specific consideration has been received is an admission, and is prima facie evidence that such was the consideration." 1 Witkin, *Summary of California Law*, Contracts § 207 (10th ed. 2010). The introduction of a note into evidence establishes a prima facie right to recover according to its terms. *De Tray v. Higgins*, 31 Cal. App. 2d 482, 494, 88 P.2d 241, 246 (1939). A party challenging the enforceability of a note bears the burden of showing lack of consideration. *In re Pajaro Dunes Rental Agency, Inc.*, 174 B.R. at 578 (*citing* Cal. Civ. Code §

**MEMORANDUM OF POINTS AND AUTHORITIES**

1615); *Cooper v. Allustiarte* (*In re Allustiarte*), 786 F.2d 910, 916 (9th Cir.), *cert. denied*, 479 U.S. 847 (1986)). If the challenging party fails to make a showing that there was a want of consideration, the presumption prevails and furnishes sufficient evidence to support a finding that the note was given for a good and valuable consideration. *DeTray v. Higgins*, 31 Cal. App. 2d at 494, 88 P.2d at 246.

Pursuant to well settled California law, Citi's introduction of the Note into evidence creates a presumption that the instrument was given for a good and valuable consideration. This presumption is further established through Borrowers' admission in the Note that they received consideration in the form of the Loan. (*See* Citi Declaration, ¶¶4 and 6; **Exhibits A, B, and D**). Unless Borrowers can present sufficient evidence to demonstrate that there was a want of consideration, this presumption is sufficient to support a finding that the Note was supported by consideration. As explained below, Borrowers cannot meet their burden.

### c. The Consideration for the Loan

The requirements for consideration under California law are minimal. Consideration is defined in the CCC as "any consideration sufficient to support a simple contract." *See* Cal. Comm. Code § 3303(b). California Civil Code section 1605 defines the type of consideration that is sufficient to support a contract as follows:

> [a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise.

*See* Cal. Civ. Code § 1605. It does not matter from whom the consideration moves or to whom it goes. *See* Restatement (Second) of Contracts § 71, cmt. e (2007). If it is bargained for and given in exchange for the promise, the promise is not gratuitous. *Id.*

Applying the foregoing principles to the facts of this case establishes that there can be no genuine issue as to the sufficiency of the consideration given in exchange for the Note. As an initial matter, Plaintiff's lack of consideration defense is premised on an erroneous legal theory. Plaintiff contends that the Note is not supported by consideration because the Loan was funded

**MEMORANDUM OF POINTS AND AUTHORITIES**

by a third party, not Reunion. (*See* Complaint, 4:11-14; Adv. Dkt., 3:18-28). It is well settled that consideration for a contract, including a promissory note, can be provided by a third party. *In re Weisband*, 427 B.R. 13, 22 (Bankr. D. Ariz. 2010)(citing *DCM Ltd. P'ship v. Wang,* 555 F.Supp.2d 808, 817 (E.D.Mich.2008); *Buffalo County v. Richards,* 212 Neb. 826, 828–29, 326 N.W.2d 179 (Neb.1982); 3 Williston on Contracts § 7:20 (Richard A. Lord, 4th ed.2009); Restatement (Second) of Contracts § 71(4) (2009)); *see also Fisher v. Lehre*, 175 A.2d 707, 709 (1961)(promissory note made to a payee in return for consideration received by the maker from a third party is binding on the maker). Accordingly, it is immaterial that the Loan may have been funded by a third party. Instead, Defendants only need to establish that a benefit was conferred upon Borrowers. *See* Cal. Civ. Code § 1605.

The evidence clearly establishes that Reunion conferred a benefit upon Borrowers. Indeed, there can be no dispute that Borrowers received $227,000.00 in exchange for the Note. The record reflects that Borrowers used these monies to satisfy their loan with WAMU. (*See* Citi Declaration, ¶6, **Exhibit D**). This fact is affirmed by WAMU's recordation of a release of its lien against the Property. (*See* RJN, **Exhibit B**). While Defendants do not dispute that Reunion funded the Loan through a combination of advances from a line of credit it maintained with First Collateral and its own funds, (Berlinski Transcript, 13:19-15; 14:1-3; 16:9-11), the source of the funds is immaterial. What matters is that Borrowers bargained for the loan proceeds in the amount of $227,000 and executed the Note in exchange for the proceeds. (*See* Citi Declaration, ¶5, **Exhibit B**). In short, there can be no genuine dispute regarding the sufficiency of the consideration given in exchange for the Note. Because the Note is supported by sufficient consideration, Plaintiff's lack of consideration defense fails.

### d. *Subsequent Consideration*

In addition to challenging the sufficiency of the consideration Reunion gave in exchange for the Note, Plaintiff alleges that Defendants failed to pay consideration for their interest in the Note. Not only is this contention unsupported by the record, (*See* Citi Declaration, ¶7, **Exhibit E**; Meyer Transcript, 43:1-21 and **Exhibit 7**), but it is not a valid defense to the enforcement of the Note. Assuming *arguendo* that Defendants did not pay consideration for the Note (they did), the

**MEMORANDUM OF POINTS AND AUTHORITIES**

lack of consideration would only affect Defendants' qualifications as holders in due course. *See* Cal. Comm. Code § 3302(a) (requiring "value" be given to obtain holder in due course status). Put differently, if Defendants did not pay value for the Note, they would be subject to Borrowers' personal defenses to the enforcement of the instrument. Since Borrowers do not have a valid personal defense to the enforcement of the Note, it is immaterial whether Defendants qualify as holders in due course.

In any event, Borrowers lack standing to challenge the sufficiency of the consideration Defendants gave in exchange for the Note. *See Department of Labor v. Triplett*, 494 U.S. 715, 720 (1990) (noting that "a litigant must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interest of third parties.")(citation omitted). Indeed, while Borrowers were the makers of the Note, they were not parties to or intended beneficiaries of the subsequent sale agreements through which Citi and Freddie Mac acquired the Loan. Borrowers do not otherwise have any basis for asserting the rights of Reunion, Citi, or Freddie Mac in connection with these agreements. Simply put, only parties to the sale agreements can challenge the sufficiency of the consideration Defendants paid for the Note. Regardless, the record clearly establishes that both Defendants paid consideration for the Note. (*See* Citi Declaration, ¶7, **Exhibit E**; Meyer Transcript, 43:1-21 and **Exhibit 7**). For all the foregoing reasons, Plaintiff's lack of consideration theory must be overruled and Defendants are entitled to summary judgment that Citi is entitled to enforce the Note.

### 3. Plaintiff's Securitization Theory Does Not Give Rise to a Legally Cognizable Claim

In an effort to avoid his obligations under the Loan, Plaintiff has devoted a significant amount of time in this litigation to ascertaining the securitization history of the Loan. Plaintiff's securitization theory is not one of first impression. Numerous courts have examined the impact that the securitization of a loan has on a borrower's obligations, most often in circumstances where a borrower seeks to defend against a foreclosure proceeding. Courts across the country have overwhelmingly rejected the arguments advanced by Plaintiff in this action. For the reasons discussed below, this Court should follow the majority of other courts on this issue.

**MEMORANDUM OF POINTS AND AUTHORITIES**

According to Plaintiff, at some point, the Loan was allegedly sold and securitized into a trust pool; namely, the Freddie Mac Pool A44088 Trust (the "<u>Trust</u>"). (*See* Complaint, 3:15-18). Plaintiff alleges that the Loan was not properly part of the securitized trust because Defendants failed to transfer the "note into the trust in accordance with the offering circular and IRS regulations for REMIC Trusts." (*See* Complaint, 3:25-26; 8:11-12). More specifically, Plaintiff argues that under IRS Rule 860D(a)(4), the Note and Deed of Trust must have been conveyed into the trust by lawful assignment and transfer within 90 days of the closing date. (*See* Complaint, 5:8-10). He asserts that there was no assignment of the Loan into the Trust by the June 1, 2006 cut-off date. (*See* Complaint, 5:11-12; 8:9-11). The Complaint further alleges that any purported transfer into the Trust after the cut-off date or closing date violates New York law and is void. (*See* Complaint, 8:19-21). Plaintiff has also dispute the "chain of title" of the Loan on the basis that the Note, Deed of Trust, and Assignment of Deed of Trust fail to reflect the transfer of the Loan in and out of the Trust. Although not entirely clear, Plaintiff appears to contend that Defendants have no interest in the Loan based on the foregoing, alleged improprieties.

### a.    *Plaintiff lacks standing to assert any rights under the PC Agreement*

As an initial matter, Plaintiff lacks standing to assert any rights under the PC Agreement. Notably, Plaintiff does not claim to be an investor in the PCs issued and offered by Freddie Mac, or a third party beneficiary of the MPCA. Instead, Plaintiff is merely the maker of a Note that was at one time part of the Pool. This capacity alone does not confer any standing on Plaintiff to challenge the validity of the securitization of the Loan. *See Bascos v. Federal Home Loan Mortg. Corp.*, 2011 WL 3157063, at *6 (C.D.Cal. July 22, 2011) ("To the extent Plaintiff challenges the securitization of his loan because Freddie Mac failed to comply with the terms of its securitization agreement, Plaintiff has no standing to challenge the validity of the securitization of the loan as he is not an investor of the loan trust."); *see also In re Correia*, 452 B.R. 319, 324 (1st Cir.B.A.P. 2011) (where debtors asked court to declare mortgage assignment invalid based upon breach of Pooling Services Agreement, a contract to which debtors were not a party nor third-party beneficiaries, the court found that debtors lacked standing to object to any breaches of

**MEMORANDUM OF POINTS AND AUTHORITIES**

the terms of the PSA); *Junger v. Bank of Am*., 2012 WL 603262, at *3 (C.D. Cal. Feb.24, 2012) ("The Court finds that plaintiff lacks standing to challenge the process by which his mortgage was (or was not) securitized because he is not a party to the PSA."); *Tilley v. Ampro Mortg*., 2012 WL 33033, at *4 (E.D.Cal.Jan.6, 2012) (holding plaintiff lacked standing to assert securitization of her loan violated terms of PSA, to which she was not a party).

In fact, Plaintiff asserts that "[t]he Trust participants have executed Trust Agreements..." (*See* Complaint, 7:27-28). For Plaintiff to be able seek redress for any violations of the Pc Agreement, he must establish that he is either a party to the contractual obligation (he is not) or that he otherwise has standing (constitutional and prudential) to enforce the terms of the trust agreement. Constitutional standing, at a minimum, requires that a party must have suffered some actual or threatened injury as a result of the defendant's conduct, that the injury be traced to the challenged action, and that it is likely to be redressed by a favorable decision. *Valley Forge Christian Coll. V. Am. United for Separation of Church and State*, 454 U.S. 464 (1982); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). The prudential limitations on standing comprise the other component of constitutional standing with the additional requirement that the party seeking redress assert their own rights rather than relying on the rights or interests of a third party. *Warth v. Selden*, 422 U.S. 490 (1975). Although Plaintiff asserts the rights of the trust and/or the investors of the trust, the Complaint is devoid of any allegation that Plaintiff is seeking redress for an injury to his own rights under the PC Agreement. (*See* Complaint, 8:11-12; 8:15-19; 10:1-7). Because Plaintiff has not and cannot allege that he is a party to the PC Agreement, he cannot state a claim for any breach of the agreement. Therefore, to the extent his claims are based on a breach of the PC Agreement, Defendants are entitled to judgment as a matter of fact and law.

### b. *Securitization Has No Impact on Citi's Right to Foreclose*

Plaintiff's lawsuit is based, in part, upon the theory that Defendants have no legal right to enforce the Loan, including the right to foreclose on the Property. Specifically, Plaintiff alleges that Defendants unlawfully assigned and/or transferred their ownership and security interest in the Loan to the Trust. (*See* Complaint, 5:23-27; 6:9-13). Plaintiff also alleges that the loan

**MEMORANDUM OF POINTS AND AUTHORITIES**

documents fail to reflect this transfer of ownership in the Loan to and out of the Trust. As a consequence, Plaintiff alleges that the Defendants' action to enforce the Loan were improper. (*See* Complaint, 6:15-22). Once again, Plaintiff's argument is without merit.

As numerous courts have recognized, the securitization of a loan does not alter or affect the legal beneficiary's standing to enforce the deed of trust. *See*, e.g., *Wadhwa v. Aurora Loan Servs., LLC*, 2011 WL 2681483, at *4 (E.D.Cal. July 8, 2011) (rejecting argument that "assignment of the note to a [REMIC] renders any interest in the property other than plaintiffs' somehow invalid"); *Hafiz v. Greenpoint Mortgage Funding, Inc*., 652 F.Supp.2d 1039, 1043 (N.D.Cal.2009) (argument that "all defendants lost their power of sale pursuant to the deed of trust when the original promissory note was assigned to a trust pool" is "both unsupported and incorrect"); *Benham v. Aurora Loan Servs*., 2009 WL 2880232, at *3 (N.D.Cal. Sept.1, 2009) ("Other courts in this district have summarily rejected the argument that [lenders] lose their power of sale pursuant to the deed of trust when the original promissory note is assigned to a trust pool."); *Reyes v. GMAC Mortgage LLC*, 2011 WL 1322775, at *2 (D.Nev. Apr.5, 2011)(the alleged "securitization of a loan does not in fact alter or affect the legal beneficiary's standing to enforce the deed of trust."); *Nguyen v. Bank of Am. Nat'l Ass'n*, No. 11–3318, 2011 WL 5574917, at *9 (N.D.Cal. Nov.15, 2011) (securitization of mortgage loan does not provide mortgagor with cause of action). Nowhere does Plaintiff allege that the Deed of Trust prohibits the securitization of the Loan. In fact, the express language of the Deed of Trust states that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to the Borrower." (*See* Citi Declaration, ¶5, **Exhibit C, p.25; RJN, Exhibit A**). Nor does the securitization of a loan impact a borrower's obligation under a note or deed of trust. *See Upperman v. Deutsche Bank Nat'l Trust Co.*, 2010 WL 1610414, at *3 (E.D. Va. Apr. 16, 2010) (there is no authority that the mere existence of a pooling and servicing agreement or investment trust can relieve borrowers of their obligations to perform under a duly executed promissory note and deed of trust); *see also Matracia v. JP Morgan Chase Bank, NA*, 2011 WL 3319721, at *3 (E.D.Cal. Aug.1, 2011)("[S]ecuritization merely creates a separate contract, distinct from [p]laintiffs['] debt obligations under the note, and does not change the

**MEMORANDUM OF POINTS AND AUTHORITIES**

relationship of the parties in any way."); *Reyes*, 2011 WL 1322775, at *3. More significantly, Freddie Mac has always owned a 100% interest in the Note regardless of whether Freddie Mac offered and sold PCs to guarantee payments to the holders of PCs. (Meyer Transcript, 90:20-22; 93:14-15; 97:8-11; 104:8-16; 90:22; 91:1; 118:15-21). Regardless of whether the Loan was in the Trust, Freddie Mac authorized Citi to accelerate the loan and initiate foreclosure action upon default. (Meyer Transcript, 161:19-22; 162:1-14). Even if the Court were to find that the Loan had been securitized, Borrowers remain liable under the Note as a matter of fact and law.

Lastly, Plaintiffs' theory that lenders that received funds through loan securitizations or credit default swaps must waive their borrowers' obligations fails as a matter of law. (*See* Complaint, 7:6-11). Federal courts have repeatedly rejected this theory. For example, in *Flores v. Deutsche Bank Nat'l Trust Co.,* 2010 WL 2719848, at *4 (D.Md. July 7, 2010), the borrower argued that his lender "already recovered for [the borrower's] default on her mortgage payments, because various 'credit enhancement policies,' 'such as a credit default swap or default insurance, compensated the injured parties in full.'" The court rejected the argument, explaining that the fact that a "mortgage may have been combined with many others into a securitized pool on which a credit default swap, or some other insuring-financial product, was purchased, does not absolve [the borrower] of responsibility for the Note." *Id.* at *5; *see also Fourness v. Mortg. Elec. Registration Sys.,* 2010 WL 5071049, at *2 (D.Nev. Dec.6, 2010) (dismissing claim that borrowers' obligations were discharged where "the investors of the mortgage backed securities were paid as a result of ... credit default swaps and/or federal bailout funds); *Warren v. Sierra Pac. Mortg. Servs.,* 2010 WL 4716760, at *3 (D.Ariz. Nov.15, 2010) ("Plaintiffs' claims regarding the impact of any possible credit default swap on their obligations under the loan ... do not provide a basis for a claim for relief"). Accordingly, Plaintiff cannot assert a viable claim for lack of authority to enforce the Loan or wrongful foreclosure based on the allegation that the Loan obligations were somehow relieved by payments made by third parties.

In sum, the various securitization theories set forth by Plaintiff have been uniformly rejected as being unpersuasive. Even if the Court were to assume the truth of Plaintiff's factual contentions regarding the securitization of the Loan, he nevertheless fails to state a viable claim

**MEMORANDUM OF POINTS AND AUTHORITIES**

because the claim is premised upon incognizable legal theories. For this reason, Defendants are entitled to summary judgment that the securitization of the Loan does not affect Plaintiff's obligations under the Note.

## C. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM FOR QUIET TITLE

Cal. Code Civ. Proc. §761.020 sets forth the pleading requirements for quiet title action. A Complaint for quiet title must: (1) be verified; (2) describe the property that is the subject to the action; (3) state the title of the plaintiff as to which a determination is sought; (4) state the adverse claims against which a determination is sought; (5) state the date as of which the determination is sought; and (6) contain a prayer for the determination of the title of the plaintiff against the adverse claims. *See* Cal. Code Civ. Proc. §761.020.

Plaintiff alleges that Defendants claim interests in the Property that are adverse to the Borrowers' title in the Property. (*See* Complaint, 16:1-7). As a result, Plaintiff seeks to quiet title to the Property in Borrowers' favor. The quiet title claim fails in several respects. First, the Complaint fails to establish "adverse claims" to the Borrowers' title to the Property. Indeed, Defendants hold no claim adverse to Borrowers. More specifically, the Deed of Trust carries "none of the incidents of ownership of the property, other than the right to convey upon default on the part of the debtor in payment of his debt." *Lupertino v. Carbahal*, 35 Cal.App.3d 742, 748 (1973). Because Defendants lack an interest in the property subject to a quiet title claim, Plaintiff's claim necessarily fails.

Second, a basic requirement of an action to quiet title is an allegation that the plaintiffs are the rightful owners of the property, i.e., that they have satisfied their obligations under the deed of trust. *See Kelley v. Mortgage Elec. Registration Sys.*, 642 F.Supp.2d 1048, 1057 (N.D.Cal.2009). Thus, it is dispositive as to this claim that, under California law, a borrower may not assert "quiet title" against a mortgagee without first paying the outstanding debt on the property. *Miller v. Provost*, 26 Cal.App.4th 1703, 1707 (1994) ("a mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee"); *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934)("It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured."); *Mix v. Sodd*, 126 Cal.App.3d

- 24 -

**MEMORANDUM OF POINTS AND AUTHORITIES**

386, 390 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, (1974) (trustor is unable to quiet title "without discharging his debt"). Absent a meaningful ability or willingness to tender the amounts due under the Note, Plaintiff's quiet title claim fails.

Defendants acknowledge that there are exceptions to the tender requirement. *See generally Onofrio v. Rice*, 55 Cal. App.4th 413, 424 (2997); *Sacchi v. Mortgage Electronic Registration Systems, Inc.*, 2001 WL 2533029 (C.D. Cal. June 24, 2011). At the motion to dismiss stage, the Court, citing *Dimock v. Emerald Properties*, 81 Cal. App.4th 686, 877 (2000), held that it would be inequitable to require Plaintiff to tender where the complaint alleges defenses against the enforcement of the Note, including, but not limited to, the allegation that the note was not funded. (*See* Adv. Dkt., 44, 11:3-10). In *Lona v. Citibank, N.A.*, the California Court of Appeals for the Sixth District recognized four exceptions to the tender requirement. Only two of these exceptions are arguably applicable to this case, including: (1) tender is not required if the borrower's action attacks the validity of the underlying debt since it would constitute a reaffirmation of the debt; and (2) inequitable exception. *Lona v. Citibank, N.A.*, 202 Cal.App.4th 89, 112-13 (2011) (citing *Stockton v. Newman*, 148 Cal.App.2d 558, 564 (1957) and *Humboldt Savings Bank v. McCleverty*, 161 Cal. 285, 291 (1911)). Because Plaintiff cannot establish any genuine dispute as to Citi's right to enforce the Loan, neither of the exceptions is applicable. To the extent Plaintiff's quiet title claim is premised on the same deficient legal theory as his other claims, it too must fail. In light of the foregoing, Defendants are entitled to summary judgment on Plaintiff's claim for quiet title.

## IV. CONCLUSION

For all the foregoing reasons, Defendants are entitled to summary judgment on each of Plaintiff's claims and the Citi's claim should be allowed in its entirety.

**WHEREFORE**, Defendants respectfully request:

1. That the Court grant this motion and enter summary judgment in favor of Defendants and against Plaintiff;

2. That Citi's claim be allowed in its entirety;

**MEMORANDUM OF POINTS AND AUTHORITIES**

1       3.      Reasonable attorneys' fees and costs; and

2       4.      Such other and further relief as the Court deems just and proper.

3                                       Respectfully submitted,

4                                       **PITE DUNCAN, LLP**

5   Dated: April 11, 2013               /s/ *Ellen Cha*
                                        ELLEN CHA
6                                       Attorneys for *Defendants* CitiMortgage, Inc. and
                                        Federal Home Loan Mortgage Corporation
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28