David E. McAllister (SBN 185831)
dmcallister@piteduncan.com
Ellen Cha (SBN 250243)
echa@piteduncan.com
**PITE DUNCAN, LLP**
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385

Attorneys for *Defendants* CitiMortgage, Inc.
and Federal Home Loan Mortgage Corporation

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>DAVID RANDALL SMITH,<br><br>Debtor.<br>_____<br><br>DAVID RANDALL SMITH,<br><br>Plaintiff,<br><br>vs.<br><br>CITIMORTGAGE, INC.; FEDERAL HOME LOAN MORTGAGE CORPORATION; and all persons claiming by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title thereto; and DOES 1-150, inclusive,<br><br>Defendants. | Bankruptcy Case No. 10-52330<br><br>Chapter 11<br><br>Adversary Case No. 11-05107<br><br>**DEFENDANTS CITIMORTGAGE, INC. AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S STATEMENT OF UNDISPUTED MATERIAL FACTS**<br><br>**Hearing:**<br>Date: May 30, 2013<br>Time: 2:15 p.m.<br>Ctrm: 3020<br>Judge: Hon. Arthur S. Weissbrodt |

| **UNDISPUTED MATERIAL FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| In or about January of 2006, Plaintiff and Sandra K. Smith (collectively, the "Borrowers") applied to Reunion Mortgage, Inc. ("Reunion") and were approved for a mortgage loan (the "Loan") in the principal amount of $227,000.00. | (Declaration of CitiMortgage, Inc. ("Citi Declaration"), ¶4, **Exhibit A).** |
| In connection with the Loan, Borrowers executed a promissory note (the "Note") in the | (Citi Declaration, ¶5, **Exhibits B and C**; Declaration of Federal Home Loan Mortgage |

-1- Case No. 11-05107
**STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| 1, 2 | original principal sum of $227,000.00, dated January 23, 2006, which was made payable to Reunion and secured by a deed of trust (the "Deed of Trust") encumbering the Property. | Corporation ("FM Declaration"), ¶4; Complaint, ¶¶ 17, 19; Request for Judicial Notice ("RJN"), **Exhibit A**). |
| 3 | The Deed of Trust was duly recorded in the Official Records of Santa Cruz, California. | (Citi Declaration, ¶5, **Exhibit C**; RJN, **Exhibit A**). |
| 4, 5 | Reunion was the originating lender for the Loan. | (Deposition Transcript of Marsha Berlinski ("Berlinski Transcript"), [page:line] 14:20-25; 15:1-2; 16:16-24; 17:4-7; 17:19-20; 22:7-9; 42:23-25; 43:1-4). |
| 6, 7, 8 | Reunion funded the Loan through a combination of advances from a line of credit it maintained with First Collateral Services, Inc. ("First Collateral"), an affiliate of Citi, and its own funds. | (Berlinski Transcript, 13:19-25; 14:1-3; 16:9-11). |
| 9, 10, 11 | As evidenced by the HUD-1 Statement, the Loan proceeds were used to payoff Borrowers' loan with Washington Mutual Bank ("WAMU"). | (Citi Declaration, ¶6, **Exhibit D**). |
| 12 | Following the satisfaction of the WAMU loan, WAMU executed and recorded a Full Reconveyance. | (RJN, **Exhibit B**). |
| 13, 14 | In February of 2006, Citi purchased a pool of loans from Reunion, including the Loan. | (Citi Declaration, ¶7; Reunion Transcript; 34:17-19; Deposition Transcript of Janet Sims ("Sims Transcript"), 20:17-19). |
| 15, 16 | According to Citi's records, the acquisition of the Loan was funded on or about February 6, 2006. | (Citi Declaration, ¶7, **Exhibit E**). |
| 17, 18, 19 | In connection with the sale, Reunion, by and through Ginger Mendoza ("Mendoza"), in her capacity as Assistant Vice President for Reunion, indorsed the Note in blank ("Reunion Indorsement") and transferred physical possession of the Note to First Collateral. | (Berlinski Transcript, 23:1-9; 23:19-23: 24:1-10; 33:21-23; 34:5-6; 34:15-16; 34:25; 44:2-5). |
| 20, 21 | The Reunion Indorsement, which is located on the back of the third page of the Note, was subsequently converted to a special indorsement to Citi. | (Berlinski Transcript, 8:11-16; 24:8-10; 44:2-12; Citi Declaration, ¶8; **Exhibit B**). |
| 22 | Reunion used the proceeds from the sale of the Loan to Citi to pay down its credit line with First Collateral. | (Berlinski Transcript, 29:8-18; 30:5-8). |
| 23, 24 | A copy of a letter dated February 7, 2006, by which Reunion notified Borrowers of the transfer of the Loan to Citi is contained in Citi's records. | (Citi Declaration, ¶9, **Exhibit F**). |
| 25, 26, 27 | In conjunction with the purchase of Loan Citi also acquired the servicing rights to the Loan and on February 18, 2006, Citi notified Borrowers that it acquired the servicing rights to the Loan. According to the notice, the first payment under the Loan was due on March 1, 2006. | (Citi Declaration, ¶10, **Exhibit G**). |
| 28 | Citi has continually serviced the Loan since February of 2006. | (Citi Declaration, ¶11). |

| | | |
|---|---|---|
| 1, 2 | On or about March 13, 2006, the Loan was sold by Citi to Freddie Mac, thus transferring ownership of the Loan from Citi to Freddie Mac. | (Citi Declaration, ¶12; FM Declaration, ¶5; Deposition Transcript of Dean Meyer ("Meyer Transcript"), 42:21-22; 43:1-5 and **Exhibit 7**). |
| 3, 4 | The sale of the Loan is reflected in Citi's records as a sale to Investor 3404, which is the internal code that Citi uses to identify Freddie Mac. | (Citi Declaration, ¶13; **Exhibit H**). |
| 5 | The sale price of the Loan was $226,794.79, which Freddie Mac paid to Citi on or about March 13, 2006. | (Citi Declaration, ¶12, 14, and **Exhibit H**; FM Declaration, ¶5, **Exhibit A**; Meyer Transcript, **Exhibit 7**). |
| 6, 7, 8, 9, 10, 11, 12 | In conjunction with its acquisition of the Loan, Freddie Mac required: (i) Citi to deliver the Note and Deed of Trust to Freddie Mac, or its designee to serve as the document custodian of the Loan; (ii) the Note to be indorsed in blank; and (iii) the designated document custodian to verify certain information contained in the Note and related documents for the Loan, and certify that it performed the verification and that the original Loan documents, including the Note, were in its possession, a process Freddie Mac refers to as "certification" or "certifying" the Note. | (FM Declaration, ¶6; Sims Transcript, 28:4-10; 66:10-15; Meyer Transcript, 174:7-20; 175:1-8). |
| 13, 14, 15, 16, 17 | Before the closing of the sale of the Loan to Freddie Mac, the following occurred: (i) Citi delivered the original Note, indorsed in blank, and Deed of Trust to Citibank, N.A. ("Citibank"), an affiliate of Citi, as Freddie Mac's designated document custodian; (ii) Citi represented and warranted to Freddie Mac that it was the owner of the Loan for purposes of the sale to Freddie Mac; and (3) Citibank, as designated document custodian of the Loan, completed the certification of the Note. | (FM Declaration, ¶8; Meyer Transcript, 72:1-5; 155:6-10; Sims Transcript, 28:6-10). |
| 18, 19, 20 | Section 56.7 of the Freddie Mac Single Family/Single-Family Seller/Servicer Guide (the "<u>Guide</u>") requires that "[w]hen a Mortgage is sold to Freddie Mac, the Seller must endorse the Note in blank in accordance with Section 16.4" of the Guide. | (Cha Declaration, ¶8, **Exhibit F,** p. 94-98; RJN, **Exhibit G**; Sims Transcript, 30:13-14). |
| 21, 22 | In accordance with the Guide, Janet Sims, in her capacity as a Vice President of Citi, indorsed the Note in blank (the "<u>Citi Indorsement</u>") on behalf of Citi as seller. | (Citi Declaration, **Exhibit B**; Sims Transcript, 25:17-25; 30:13-14; Meyer Transcript, 70:5-17 and **Exhibit 5**). |
| 23 | The Citi Indorsement is located on the front side of the third page of the Note. | (Citi Declaration, ¶8; **Exhibit B**; Meyer Transcript, 70:5-17 and **Exhibit 5**). |
| 24, 25 | Plaintiff is not a party to or an intended beneficiary of the sale transaction of the Loan between Citi and Freddie Mac. | (FM Declaration, **Exhibits B, C, and D**). |
| 26 | Freddie Mac has never disputed Citi's ownership in or right to sell the Loan. | (Meyer Transcript, 154:21-22; 155:2-17; 156:5-10). |
| 27 | Continuously since Freddie Mac acquired the Loan, Citi has acted as Freddie Mac's authorized servicing agent with respect to the Loan. | (FM Declaration, ¶9; Citi Declaration, ¶11). |
| 28 | As servicer, Citi's servicing obligations and | (FM Declaration, ¶9). |

| | | |
|---|---|---|
| 1 | authority are governed by the Guide. | |
| | The Guide authorizes Citi to take certain action with respect to the Loan, including authorizing Citi to physically possess and enforce the note. | (FM Declaration, ¶9; FM Declaration, ¶10; Meyer Transcript, 66:11-17; 170:9-15; 171:12-18). |
| 2 | | |
| 3 | The Guide authorizes Citi to have the Deed of Trust assigned to Citi when necessary. | (Meyer Transcript, 79:4-6; 83:6-14). |
| 4 | The Guide authorizes Citi to report information to MERS. | (Meyer Transcript, 154:5-8). |
| 5 | The Guide authorizes Citi to substitute trustee to enforce the Deed of Trust | (Meyer Transcript, 158:17-21). |
| 6 | The Guide authorizes Citi to declare whether a loan is in default. | (Meyer Transcript, 161:7-18). |
| 7 | The Guide authorizes Citi to collect payments due under the Note | (Meyer Transcript, 164:13-22; 165:1-20; 171:12-18; FM Declaration, ¶11). |
| 8 | The Guide authorizes Citi to initiate foreclosure action. | (Meyer Transcript, 175:19-22; 176:2-4 and 6-10). |
| 9 | Plaintiff is not a party to or an intended beneficiary of the Guide and neither Citi nor Freddie Mac have any dispute as to the fact that Citi is the authorized servicer of the Loan on behalf of Freddie Mac. | (FM Declaration, ¶12). |
| 10 | | |
| 11 | | |
| 12 | Pursuant to Section 52.7 of the Guide, Citi is required to transfer the original Note and Deed of Trust to Freddie Mac or its designee which, as to the Loan, is Citibank. | (Cha Declaration, ¶8, **Exhibit F**, p.99-100; RJN, **Exhibit G**). |
| 13 | | |
| 14 | In accordance with the Guide and at Freddie Mac's request, Citi transferred possession of the original Note and Deed of Trust to Freddie Mac, through its designated custodian, Citibank, prior to the closing of the sale of the Loan. | (Meyer Transcript, 174:12-14). |
| 15 | | |
| 16 | For ordinary business purposes, the original Loan documents, including the original Note, are maintained by Citibank. | (Sims Transcript, 64:6-8). |
| 17 | | |
| 18 | On or about September 13, 2010, the original Note and Deed of Trust were sent to Citi's bankruptcy department in Dallas, Texas to be provided to Citi's undersigned counsel, Pite Duncan, LLP ("Pite"). | (Citi Declaration, ¶15, **Exhibit I**). |
| 19 | | |
| 20 | On or about September 15, 2010, Citi mailed the original Note and Deed of Trust to Pite at its San Diego, California office. | (Citi Declaration, ¶16, **Exhibit J**). |
| 21 | | |
| 22 | Pite has been in possession of these documents for the purposes of this litigation as an agent of and bailee for Citi. | (Cha Declaration, ¶7, **Exhibit E**). |
| 23 | Freddie Mac issues and offers Mortgage Participation Certificates ("PCs") in connection with certain mortgage loans. | (FM Declaration, ¶ 13). |
| 24 | | |
| 25 | On or about February 1, 2001, Freddie Mac entered into a Mortgage Participation Certificates Agreement (the "Agreement"), which was amended on June 28, 2004, with holders of PCs offered pursuant to Freddie Mac's Offering Circular for Mortgage Participation Certificates (the "Offerings Circular"), dated February 1, 2001. | (FM Declaration, ¶14, **Exhibit B**; FM Declaration, ¶15, **Exhibit C**). |
| 26 | | |
| 27 | | |
| 28 | | |

| | | |
|---|---|---|
| 1, 2 | On July 1, 2004, Freddie Mac issued an Offering Circular that contained information about PCs being offered to potential investors pursuant to the terms of the Agreement. | (FM Declaration, ¶15, **Exhibit C**). |
| 3, 4, 5, 6, 7 | On or about March 6, 2006, Freddie Mac issued a Pool Supplement (the "<u>Supplement</u>") to the Offering Circular that incorporated by reference the terms of the Offering Circular and identified PCs being offered to potential investors along with the pool of mortgages to which the PCs related (the "<u>PC Pool A44088</u>"), which were included in a mortgage loan schedule (the "<u>Mortgage Loan Schedule</u>") annexed to the Supplement. | (FM Declaration, ¶16, **Exhibit D**; Meyer Transcript, 92:9-11; 92:17-19). |
| 8, 9 | The Pool Supplemental and Mortgage Loan Schedules reflect the loans from which cash flows were pledged as collateral, to guarantee payments by Freddie Mac to the holders of PCs under the PC Agreement. | (Meyer Transcript, 93:14-15; 97:8-11; 104:8-16) |
| 10, 11, 12 | According to the Pool Supplement and Mortgage Loan Schedules to the PC Agreement, the Loan is identified as having been part of PC Pool Number A44088. | (FM Declaration, ¶¶17 and 18; **Exhibit D**, p.74) |
| 13, 14 | Since the purchase of the Loan from Citi in March 2006, Freddie Mac has always owned the Note (even while the Note was within the PC Pool A44088). | (FM Declaration, ¶19; Meyer Transcript, 90:22; 91:1; 104:8-16; 118:15-21). |
| 15, 16 | Plaintiff is not a party to or an intended beneficiary of the PC Agreement between Freddie Mac and purchasers of PCs and Borrowers did not purchase any of the PCs offered in the Supplement. | (FM Declaration, ¶19 and **Exhibits B, C, and D**). |
| 17, 18 | As a result of the Borrowers' default under the Loan, the Loan was removed from PC Pool A44088 on February 15, 2010. | (FM Declaration, ¶21). |
| 18, 19 | By virtue of the removal of the Loan, the holders of the PCs are no longer entitled to any principal or interest payments from the Loan | (FM Declaration, ¶21; Meyer Transcript, 115:14-22). |
| 20, 21, 22 | Following Borrowers' default under the Loan, Citi retained Cal-Western Reconveyance Corporation ("Cal-Western") to initiate foreclosure proceedings against the Property in October, 2009. | (Citi Declaration, ¶¶18 and 19). |
| 23 | Cal-Western is the duly appointed substitute trustee under the Deed of Trust. | (RJN, **Exhibit C).** |
| 24 | Pursuant to the terms of the Guide, Freddie Mac authorized Citi to cause the Deed of Trust to be assigned to Citi. | (Meyer Transcript, 79:4-18). |
| 25, 26, 27, 28 | On October 5, 2009, Yvonne Wheeler ("<u>Wheeler</u>"), an employee of Cal Western, in her capacity as Assistant Secretary of Mortgage Electronic Registration Systems, Inc. ("<u>MERS</u>"), executed an Assignment of Deed of Trust ("<u>Assignment</u>") whereby MERS granted, assigned, and transferred the beneficial interest | (RJN, **Exhibit D**; Deposition Transcript of Yvonne Wheeler ("Wheeler Transcript"), 20:3-13; 20:20-21; 21:13-14; 22:2-3). |

-5- Case No. 11-05107

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | |
|---|---|
| under the Deed of Trust to Citi. | |
| The Assignment was recorded in Official Records of Santa Cruz County, California on January 19, 2010, as Instrument No. 2010-0001664. | (RJN, **Exhibit D).** |
| According to the Mortgage Electronic Registration Systems, Inc.'s Corporate Resolution, dated July 14, 2000, Wheeler, as an employee of Cal-Western, was appointed as assistant secretary of MERS. | (Wheeler Transcript, 37:5-20; 38:1-2; 38:16-18; 61:11-14; Cha Declaration, ¶3, **Exhibit A,** p.20). |
| In her capacity as assistant secretary, Wheeler was authorized to: "assign the lien of any mortgage loan naming MERS as the mortgagee when Cal-Western is under contract with a MERS Member who is also the current promissory note-holder." | (Wheeler Transcript, 118:22-25; 119:1-5; 119:9-13). |
| On November 17, 2009, Cal-Western executed a Notice of Default ("NOD") which was recorded against the Property in the Official Records of Santa Cruz County, California as Instrument No. 2009-0053784. | (RJN, **Exhibit E**). |
| After Borrowers failed to cure the default referenced in the NOD, on February 18, 2010, Cal-Western executed a Notice of Trustee's Sale ("NOS") that put interested parties on notice that the Property would be sold at a public auction on March 11, 2010. | (RJN, **Exhibit F**). |
| The NOS was recorded against the Property on February 19, 2010, in the Official Records of Santa Cruz County, California as Instrument No. 2010-0006322. | (RJN, **Exhibit F**). |
| In order to stop the foreclosure of the Property, on March 10, 2010, Plaintiff commenced the administrative case underlying this action by filing a voluntary petition for relief under chapter 13 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. ("Bankruptcy Code"). | (Bankruptcy Docket ("Bky. Dkt."), No. 1). |
| The case was subsequently converted to a chapter 11 on February 14, 2011. | (Bky. Dkt., No. 56), |
| As of the date of this motion, Plaintiff has not obtained Court approval of a disclosure statement, much less confirmed a plan of reorganization. | (*See generally* Bky. Dkt.). |
| On or about June 15, 2010, Citi filed a Motion for Relief from Automatic Stay ("Motion for Relief"), | (Bky. Dkt. Nos. 21 and 25). |
| On July 27, 2010, Plaintiff filed an opposition to the Motion for Relief (the "Opposition"), on the grounds that Citi and MERS, the named beneficiary under the Deed of Trust, lacked standing to prosecute the motion. | (Bky. Dkt. No. 27). |
| Notwithstanding Plaintiff's Opposition, the Court determined that Citi had standing to prosecute the Motion for Relief and, as a result, entered an order granting Citi adequate | (Bky. Dkt., No. 94). |

-6- Case No. 11-05107

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | |
|---|---|
| protection (the "APO"). | |
| On April 13, 2011, Plaintiff filed his complaint, thereby commencing this case. | (Adversary Docket ("Adv. Dkt."), No. 1). |
| Upon the motion of Defendants, the Court dismissed Plaintiff's third, fourth, and fifth causes of action, with leave to amend, and declined to dismiss Plaintiff's first, second, and sixth causes of action, *without prejudice*. | (Adv. Dkt., No. 19). |
| In support of its denial of the motion as to the three remaining causes of action, the Court found that the Complaint asserts that the note was never endorsed. | (Adv. Dkt., 44, [page:line] 6:16-17). |
| The Court also found that the allegations in the Complaint assert that Citi did not provide consideration for the Note. | (Adv. Dkt., 44, 6:17-18). |
| Further, the Court found that the Complaint alleged that the note was funded by an unknown third party. | (Adv. Dkt., 44, 6:18-19). |
| The Court determined that the Complaint alleges that Citi is not a holder of the Note and, thus, any rights asserted by Citi in the Loan are derivative of those of Reunion. To the extent that the Complaint asserts that Reunion did not provide consideration for the Note, then Citi's rights would be subject to any defenses to the enforceability of the Note available as against non-holders in due course. | (Adv. Dkt., 44, 7:16-25). |
| The Court found that the allegations in the Complaint regarding the possibility that the note was transferred to a securitized trust did not appear relevant because the Complaint nowhere alleges that Citi does not currently hold the Note. | (Adv. Dkt., 44, 8:1-4). |
| The Court further stated that the Plaintiff provided no legal authority for the proposition that the creation of securities evidencing an interest in a trust caused the underlying property held by the trust to change in character from being a negotiable instrument to a non-negotiable paper | (Adv, 44, 8:5-9). |
| Plaintiff failed to timely amend his third, fourth and fifth causes of action. As a consequence, only the first, second and sixth causes of action remain in dispute. | (See generally Adv. Dkt.). |

**PITE DUNCAN, LLP**

Dated: April 11, 2013  /s/ *Ellen Cha*
ELLEN CHA (CA SBN 250243)
Attorneys for *Defendants* CitiMortgage, Inc. and Federal Home Loan Mortgage Corporation

-7- Case No. 11-05107

**STATEMENT OF UNDISPUTED MATERIAL FACTS**