

**IT IS SO ORDERED.**
**Signed March 27, 2014**

**Arthur S. Weissbrodt**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re ] Case No. 10-52330-ASW
]
DAVID RANDALL SMITH, ] Chapter 11
]
Debtor. ]
_____ ]
]
DAVID RANDALL SMITH, ] Adv. Pro. No. 11-05107-ASW
]
Plaintiff, ]
]
v. ]
]
CITIMORTGAGE, INC., and ]
FEDERAL HOME LOAN MORTGAGE ]
CORPORATION, ]
]
Defendants. ]
_____ ]

**MEMORANDUM DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are cross-motions for summary judgment filed
by Plaintiff David Randall Smith and Defendants CitiMortgage, Inc.
("Citi"), and Federal Home Loan Mortgage Corporation ("Freddie
Mac"). Plaintiff appears in this proceeding in pro per; Defendants
are represented by attorney Ellen Cha.

Defendants seek dismissal of the Plaintiff's remaining claims
in this adversary proceeding – for declaratory relief that

Defendants have no lien on Plaintiff's real property and no claim in this bankruptcy, and to quiet title.  Plaintiff seeks summary judgment on all of his remaining claims for relief.

For the reasons set forth below, Defendants' motion is granted, and Plaintiff's motion is denied.

## I. FACTS

### A. Loan Origination

In January 2006 Plaintiff and his spouse, Sandra K. Smith (collectively, "Borrowers"), were approved by Reunion Mortgage, Inc. ("Reunion") for a mortgage loan ("Loan") in the amount of $227,000.  On January 23, 2006, Borrowers executed a promissory note payable to Reunion ("Note") and secured by a deed of trust ("Deed of Trust") encumbering Plaintiff's real property at 23 Pine Avenue, Mount Hermon, California.  See Declaration of Ellen Hatfield, Exhibits B and C; docket no. 169.   The Deed of Trust was recorded in Santa Cruz County on January 31, 2006.

The loan was funded through a combination of advances from a line of credit Reunion maintained with First Collateral Services, Inc. ("First Collateral"), which is an affiliate of Citi.  The proceeds of the loan were used to pay off the Borrowers' loan with Washington Mutual Bank.  Hatfield decl., Exhibit D.

### B. Sale of Loan to Citi

In February of 2006, Citi purchased a pool of loans from Reunion, which included the Loan.  The acquisition of the Loan was funded on February 6, 2006.  Hatfield decl., ¶ 7; Exhibit E.  As part of the transaction, Ginger Mendoza, Assistant Vice President

of Reunion, indorsed the Note in blank and transferred physical possession of the Note to First Collateral.  See Declaration of Ellen Cha, Exhibit B, docket no. 170.  That indorsement was subsequently converted to a special indorsement to Citi.  Id.; Hatfield decl., Exhibit B.

Reunion notified Borrowers of the transfer of the loan to Citi by letter dated February 7, 2006.  Hatfield decl., Exhibit F.  In conjunction with the purchase of the Loan, Citi acquired the servicing rights to the Loan, and Citi notified Borrowers that Citi was the servicer on February 18, 2006.  Hatfield decl., Exhibit G.

**C. Sale of Loan to Freddie Mac**

On March 13, 2006, Citi sold the Loan to Freddie Mac for $226,794.79.  Hatfield decl., ¶ 12; Declaration of Dean Meyer, ¶ 5, docket no. 168; Cha decl., Exhibit D (Meyer transcript), page 57.  The sale of the Loan is reflected in Citi's records as a sale to "Investor 3404," the internal code Citi uses to identify Freddie Mac.

In conjunction with its acquisition of the Loan, Freddie Mac required: (i) Citi to deliver the Note and Deed of Trust to Freddie Mac, or its designee to serve as the document custodian of the Loan; (ii) the Note to be indorsed in blank; and (iii) the designated document custodian to verify certain information contained in the Note and related documents for the Loan, and to certify that it performed the verification and that the original Loan documents, including the Note, were in its possession, a process Freddie Mac refers to as "certification" or "certifying" the Note.  Meyer decl., p. 6; Cha decl., Exhibit C (Sims

Transcript), pages 28, 66; Cha decl., Exhibit D (Meyer Transcript), pages 174-75.  Before the sale to Freddie Mac closed, (i) Citi delivered the original Note, indorsed in blank, and Deed of Trust to Citibank, N.A. ("Citibank"), an affiliate of Citi, as Freddie Mac's designated document custodian; (ii) Citi represented and warranted to Freddie Mac that Citi was the owner of the Loan for purposes of the sale to Freddie Mac; and (3) Citibank, as designated document custodian of the Loan, completed the certification of the Note.  Meyer decl., page 8; Cha decl., Exhibit D (Meyer Transcript), pages 72, 155; Cha decl., Exhibit C (Sims Transcript), page 28.

In addition, Janet Sims, as a Vice President of Citi, indorsed the Note in blank on behalf of Citi as seller, as required under section 56.7 of the Freddie Mac Single Family/Single-Family Seller/Servicer Guide (the "Guide").  See Cha decl., Exhibit C (Sims Transcript) and Exhibit F (the Guide), docket no. 170.

Citi has serviced the loan continuously since Freddie Mac acquired the Loan.  Meyer decl., ¶ 9.  Under the provisions of the Guide, Citi may physically possess and enforce the Note, have the Deed of Trust assigned to Citi when necessary, report information to Mortgage Electronic Registration Systems, Inc. ("MERS"), substitute a trustee to enforce the Deed of Trust, declare whether the loan is in default, collect payments due under the Note, and initiate foreclosure action.  The Guide requires Citi to transfer the original Note and Deed of Trust to Freddie Mac or its designee, which in this case is Citibank.  Cha decl., Exhibit F (Guide excerpts).  Citi transferred possession of the Note and Deed of Trust to Citibank as custodian for Freddie Mac prior to the closing

of the sale of the Loan.  Cha decl., Exhibit D (Meyer Transcript),
page 174.  The Note and Deed of Trust were sent to Citi's
bankruptcy department in Dallas, Texas in September of 2010 to be
provided to Citi's counsel.  Hatfield decl., Exhibit I.
Thereafter, Citi mailed the Note and Deed of Trust to Pite Duncan
in San Diego, California.  Hatfield decl., Exhibit J.

## D. Securitization of the Loan

Freddie Mac offers Mortgage Participation Certificates
("PCs"), which are securities that represent interests in and
receive payments from pools of one- to four-family residential
mortgages.  Meyer decl., ¶ 13.  Shortly after purchasing the Loan,
Freddie Mac issued a Pool Supplement to the original offering
circular dated February 1, 2001, which indicated that the Loan was
part of PC Pool Number A44088.  Meyer decl., ¶ 16; Cha decl.,
Exhibit D (Meyer Transcript), page 92.  The placement of the Loan
into the pool did not change ownership of the Loan itself;
according to Mr. Meyer's declaration, Freddie Mac has always owned
a 100% interest in the Note since the Loan was purchased from Citi
in 2006.  Meyer decl., ¶ 19.  As a result of Borrowers' default
under the Loan, the Loan was removed from PC Pool A44088 on
February 15, 2010.  Meyer decl., ¶ 21.

## E. Foreclosure

In October of 2009, following Borrowers' default, Citi
retained Cal-Western Reconveyance Corporation ("Cal Western") to
initiate foreclosure proceedings against the Property.  Cal-Western
was the duly appointed substitute trustee under the Deed of Trust.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

As authorized under the Guide, Freddie Mac authorized Citi to cause the Deed of Trust to be assigned to Citi.  Cha decl., Exhibit D (Meyer transcript), page 79; RJN, Exhibit C, docket no. 171.  On October 5, 2009, Yvonne Wheeler, who is an employee of Cal-Western, but in her capacity as Assistant Secretary of Mortgage Electronic Registration Systems, Inc. ("MERS") executed an assignment of Deed of Trust to Citi ("Assignment"), which was recorded on January 19, 2010.  RJN, Exhibit D.[1]

On November 17, 2009, Cal-Western executed a Notice of Default, which was recorded in Santa Cruz County.  RJN, Exhibit E.  When Borrowers failed to cure their default, Cal-Western executed a Notice of Trustee's Sale on February 18, 2010, which was recorded on February 19, 2010.  RJN, Exhibit F.  The foreclosure sale was set for March 11, 2010.

///

///

---

[1]MERS acts as mortgagee of record for mortgage loans that are registered in MERS' system.  Mortgage lenders subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages.  Members (lenders and servicers) contractually agree to appoint MERS to act as their common agent on all mortgages the member registers in the MERS system.  To facilitate the execution of assignments from MERS, MERS regularly designates "certifying officers," who are typically employees of MERS member firms.  MERS authorizes these employees through formal corporate resolutions to execute assignments on its behalf.  Kiah v. Aurora Loan Services, LLC, 2011 WL 841282, at *1 n.1 (D. Mass. Mar. 4, 2011).

Here, Ms. Wheeler was appointed as Assistant Secretary of MERS in accordance with MERS' Corporate Resolution dated July 14, 2000. In her capacity as Assistant Secretary, Ms. Wheeler was authorized to assign the lien of any mortgage loan naming MERS as the mortgagee when Cal-Western is under contract with a MERS Member who is also the current promissory note holder.  Cha decl., Exhibit A (Wheeler Transcript), pages 118-19.

## F. Bankruptcy Proceedings

On March 10, 2010, before the foreclosure sale could be held, Plaintiff filed the instant bankruptcy proceeding under chapter 13. The case was converted to chapter 11 on February 14, 2011. On April 2, 2010, Citi filed a proof of claim for $222,926.35, secured by the Property, attaching an itemization of the amounts owed, and a copy of the Note, Deed of Trust, Notice of Loan Transfer letter dated February 7, 2006, and the Assignment. Citi also moved for relief from stay. Plaintiff objected to Citi's standing on the same grounds as raised in this adversary proceeding. The Court ordered supplemental declarations and briefing. On September 16, 2010, Citi filed in the main case the declaration of Travis J. Lillie, counsel for Citi. In his declaration, Mr. Lillie testified that he had received the original "blue ink" Note from Citi on September 16, 2010, at which time he made a copy of the note and attached that photocopy to the declaration. Thereafter the Court found that Citi had a colorable claim of standing to prosecute the motion. On June 16, 2011 the Court entered an adequate protection order requiring Plaintiff, among other conditions, to make regular monthly payments of $1,607.08 plus $1,888.42 per month toward post-petition arrears until paid in full. The Court subsequently denied Plaintiff's motion for reconsideration of that order.

Plaintiff filed the instant adversary proceeding on April 13, 2011. On July 7, 2011, the Court granted Defendants' motion to dismiss Plaintiff's third, fourth, and fifth causes of action.[2] The remaining claims are for (1) a declaration that Defendants have

---

[2]The Court dismissed the claims with leave to amend, but Plaintiff did not amend the Complaint.

no interest in the Property; (2) a declaration that Citi has no claim in this bankruptcy; and (3) a judgment quieting title to the Property in Plaintiff.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered by the Court if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56, incorporated in bankruptcy via Fed. R. Bank. P. Rule 7056; Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation, 475 U.S. 574, 584-85 (1985). All inferences must be drawn against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970); United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." Matsushita Elec. Indus. Co., 475 U.S. at 587.

## III. ANALYSIS

The parties have filed cross-motions for summary judgment. Although Plaintiff asserts in his response to Defendants' motion that there are factual issues remaining vis-à-vis Defendants' motion, Plaintiff also asserts that the undisputed facts warrant granting summary judgment in Plaintiff's favor on Plaintiff's claims.

1    To resolve these motions, the Court need answer only one
2  question: does Citi have the right to enforce the Note?  Plaintiff
3  asserts that Citi is not "a person entitled to enforce an
4  instrument" under Cal. Comm. Code § 3301 (quoted below) because (1)
5  the Note is not governed by Article 3 of the UCC, but by Article 9;
6  (2) the original lender did not give consideration for the Note;
7  (3) the Note is not properly endorsed to Citi; and (4) the
8  securitization of the loan into a pool gave the pool investors
9  rights in the Note or otherwise disrupted the chain of title so as
10  to render the Note unenforceable.  Plaintiff further argues that
11  the Assignment of the Deed of Trust to Citi was a false conveyance
12  because at the time the Assignment was executed, Citi did not own
13  the loan and so was not the beneficiary with authority to instruct
14  Cal-Western to execute the Assignment.  Based upon the evidence
15  provided, the Court finds that Citi is entitled to enforce the
16  Note.

17

18  **A. <u>Citi is entitled to enforce the Note</u>.**

19      **1. <u>The Note is a negotiable instrument governed by Article 3</u>**
20  **<u>of the Uniform Commercial Code</u>.**

21      Plaintiff argues that the promissory note is governed by
22  Article 9 of the Uniform Commercial Code ("UCC").  Plaintiff's
23  argument is difficult to follow, but appears to pertain
24  specifically to the securitization of the Note; Plaintiff argues
25  that the Note could not be enforced while the Note was held in a
26  securitized trust.  Plaintiff offers no authority or evidence to
27  support these contentions; nor does Plaintiff explain why, if
28  Article 9 applies, this makes any difference as to whether Citi is

entitled to enforce the Note. As discussed <u>infra</u>, securitization does not change the obligation of the borrower to pay the note or the note holder's right to foreclose. <u>In re Nordeen</u>, 495 B.R. 468, 479-80 (9th Cir. BAP 2013). Plaintiff misapprehends the application of Article 3 and Article 9 to promissory notes.

Article 3 of the UCC pertains to negotiable instruments. Cal. Comm. Code § 3102. Article 9 governs the sale of most payment rights, including the sale of both negotiable and non-negotiable promissory notes. <u>See</u> Cal. Comm. Code § 9109(a)(3) (scope of Division 9 of the California Commercial Code includes sale of promissory notes); <u>see also</u> Report of the Permanent Editorial Board for the Uniform Commercial Code, <u>Application of the Uniform Commerical Code to Selected Issues Relating to Mortgage Notes</u> (ALI/NCCUSL, Nov. 14, 2011), at 2 and 8 ("Report"). However, the sale of a promissory note under Article 9 does not necessarily change the identity of the person entitled to enforce the note. Report, at 8 (citing UCC § 3-301, identical to Cal. Comm. Code § 3301, which provides that a person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument).

Under California law, a negotiable instrument is defined as "an unconditional promise or order to pay a fixed amount of money." Cal. Comm. Code § 3104(a). For an instrument to be negotiable under California law: (1) it must be made payable to bearer or order at the time it is issued or first comes into possession of a holder; (2) it must be payable on demand or at a definite time; and (3) it must not state any other undertaking or instruction by the person promising to do any act in addition to the payment of money,

except that the promise or order may contain an undertaking or power to give, maintain, or protect collateral to secure payment. Cal. Comm. Code § 3104(a)(1)-(3).  Here, the Note was made payable to the order of Reunion at the time it was issued.  The Note is payable at a definite time, February 1, 2036.  Finally, the Note does not require Borrowers to undertake any act other than the payment of money (with the exception of maintaining and protecting the Property to secure payment, as permitted under Cal. Comm. Code § 3104(a)(3)).  See Note, Exhibit C to Hatfield Declaration filed April 15, 2013, docket no. 169.  The Note thus meets the requirements of a negotiable instrument under California law.

### 2. Consideration

Plaintiff argues that Reunion was not the lender or true originator of the Loan because the funds for the loan came from First Collateral.  Plaintiff argues that Citi's rights as transferee of the Note are derivative of Reunion's, and because Reunion provided no consideration, the Note is not enforceable.

Plaintiff misconstrues the applicable law.  It is undisputed that Plaintiff received consideration for the Note and Deed of Trust; as noted, the loan proceeds were used to pay off Plaintiff's loan with Washington Mutual Bank, which executed a full reconveyance.  California law defines "good consideration" as

> [a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor . . . ."

Cal. Civ. Code § 1605.  Plaintiff has cited no authority to support the notion that the funding of a loan by a third party somehow

invalidates a promissory note.  Consideration for a contract,

including a promissory note, may be provided by a third party.

> [B]ecause the Debtor executed the Note and received
> consideration . . . the contract is enforceable
> regardless of who provided the funding.  In other words,
> the fact that the funds for a borrower's loan are
> supplied by someone other than the loan originator, does
> not invalidate the loan or restrict enforcement of the
> loan contract to the parties who funded the loan.

In re Weisband, 427 B.R. 13, 22 (Bankr. D. Ariz. 2010) (citing DCM

Ltd. P'ship v. Wang, 555 F. Supp. 2d 808, 817 (E.D. Mich. 2008); 3

Williston on Contracts § 7:20 (Richard A. Lord, 4th ed. 2009);

Restatement (Second) of Contracts § 71(4) (2009)).


### 3. **Who May Enforce the Note?**

Under California law, a "person entitled to enforce" an

instrument is defined as

> (a) the holder of the instrument, (b) a nonholder in
> possession of the instrument who has the rights of a
> holder, or (c) a person not in possession of the
> instrument who is entitled to enforce the instrument
> pursuant to Section 3309 or subdivision (d) of Section
> 3418. A person may be a person entitled to enforce the
> instrument even though the person is not the owner of the
> instrument or is in wrongful possession of the
> instrument.

Cal. Comm. Code § 3301.

Plaintiff argues that the Note itself defines who is the

holder of the Note: "The Lender or anyone who takes this Note by

transfer and who is entitled to receive payments under the Note is

called the 'Note Holder.'"  This language does not materially

differ from the definition of "holder" set forth in Cal. Comm. Code

§ 1201(b)(21)(A):  "the person in possession of a negotiable

instrument that is payable either to bearer or to an identified

person that is the person in possession."  As noted, Citi provided

Case: 11-05107   Doc# 274   Filed: 03/27/14   Entered: 03/28/14 09:59:11   Page 12 of
19

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

evidence that it is in physical possession of the Note, which contains an endorsement to Citi as well as a blank endorsement. According to the deposition transcript of Janet Sims, senior vice president in document services for Citi, Citi is holding the Note as custodian for Freddie Mac.  <u>See also</u> Meyer transcript (Exhibit D to Cha decl.), pages 165, 167-68.  Therefore, Citi is entitled to enforce the Note.

Plaintiff argues that the endorsements on the Note do not establish that the Note was transferred to Citi.  The Note contains two undated endorsements.  One endorsement appears on the back of the last page of the Note, and reads "Pay to the order of: CitiMortgage, Inc. Without Recourse," and is signed by Ginger Mendoza as Assistant Vice President of Reunion Mortgage, Inc.  The other endorsement appears on the last page of the Note and reads "Pay to the order of _____ without recourse on as [sic] CitiMortgage, Inc.," and is signed by Janet L. Sims, as Vice President of CitiMortgage, Inc.  The blank on the endorsement stamp has not been filled in.  Plaintiff argues that the fact that there is no date on either endorsement is inadequate to confer holder status.  In the case cited by Plaintiff to support this contention, <u>U.S. Bank Nat'l Ass'n v. Kimball</u>, 190 Vt. 210, 217-18 (2011), the Vermont Supreme Court upheld the trial court's conclusion that there was no evidence to show that U.S. Bank was the holder of the promissory note at issue <u>when its complaint was filed</u>, and therefore lacked standing.  The court's conclusion was based on the fact that there was no evidence as to the timing of the endorsement.  Here, Defendants have produced evidence that the Note was endorsed and physically transferred to Citibank, an affiliate

of Citi, as Freddie Mac's designated document custodian, in February and March 2006, well before foreclosure proceedings were commenced.

Plaintiff next argues that the blank endorsement is not truly a blank endorsement because it contains restrictions in the form of language "pay to the order of" and "without recourse." Therefore, according to Plaintiff, Citi cannot be a holder of the Note.

Plaintiff cites to no authority that an endorsement that does not identify a payee is not a blank endorsement if the stamp contains "pay to the order of" or "without recourse" language. The Court has found no authority that the presence of extraneous language on an endorsement invalidates an otherwise blank endorsement. Under Cal. Comm. Code § 3205, an endorsement by the holder that identifies a person to whom it makes the instrument payable is a special endorsement; an endorsement made by the holder of an instrument that is not a special endorsement is a blank endorsement; and the holder may convert a blank endorsement into a special endorsement by writing words identifying the person to whom the instrument is made payable. See also In re Lee, 408 B.R. 893, 899-900 (Bankr. C.D. Cal. 2009) (if endorsement does not specify a payee, it constitutes a blank endorsement).

Plaintiff argues, without authority, that physical possession of the Note is not sufficient to establish Citi's status as a holder. Plaintiff also argues that there is no proof that Citi holds the Note as a servicer for Freddie Mac or that Citi is authorized to enforce the Note on behalf of Freddie Mac. However, as noted, Janet Sims (Senior Vice President of Document Services for Citi) testified in her deposition that Citi is holding the Note

1   as custodian for Freddie Mac.  Plaintiff offers no evidence to the

2   contrary.  Finally, Plaintiff argues, again without any citation to

3   authority, that the entities entitled to receive payments under the

4   Note are the certificate holders.  However, none of these arguments

5   are supported by evidence or authority, nor do they take into

6   account California's nonjudicial foreclosure statues, which do not

7   require a party initiating a foreclosure to have a beneficial or

8   economic interest in a note.

9       California's nonjudicial foreclosure statute, Cal. Civ. Code

10  § 2924, provides a "comprehensive framework for the regulation of a

11  nonjudicial foreclosure sale pursuant to a power of sale contained

12  in a deed of trust."  Lona v. Citibank, N.A., 202 Cal. App. 4th 89,

13  (2011).  Under Cal. Civ. Code § 2924, the party initiating

14  foreclosure proceedings is not required to have a beneficial or

15  economic interest in the note in order to foreclose.  Lane v. Vitek

16  Real Estate Indus. Grp., 713 F. Supp. 2d 1092, 1099 (E.D. Cal.

17  2010); Castaneda v. Saxon Mortgage Servs., 687 F. Supp. 2d 1191,

18  1201 (E.D. Cal. 2009) (no requirement that entity initiating

19  foreclosure has physical possession of the underlying note).

20  Instead, a "trustee, mortgagee, or beneficiary, or any of their

21  authorized agents" may commence the nonjudicial foreclosure

22  process.  Cal. Civ. Code § 2924(a)(1).

23      The evidence submitted by Defendants shows that Citi both

24  holds the Note and also services the loan for Freddie Mac.  Nothing

25  more is required to establish Citi's right to enforce the Note.

26

27

28

### 4. **Effect of Securitization**

Plaintiff contends that there is no evidence of an assignment of the Loan either into or out of a pool.  Plaintiff argues that if the Loan was placed into a pool and not removed, Plaintiff may still have liability to pool investors, because the investors became the holders of the Note.  Contrary to Plaintiff's assertion, Defendants have provided evidence of the transfers both in and out of the pool.  According to the Meyer declaration, Plaintiff's loan was placed into PC Pool A44088 on or around March 6, 2006, and removed from the pool on February 15, 2010.  Plaintiff offers no contrary evidence.

Even if the Loan had not been removed from the pool, securitization does not change the obligation of the borrower to pay the note or the note holder's right to foreclose. Nordeen, 495 B.R. at 479-80:

> [H]ome loan borrowers are not purchasing an investment
> when they enter into a loan agreement to purchase or
> refinance a home. When they sign a promissory note and
> mortgage or trust deed secured by their real property,
> they are entering into a contract for a loan transaction
> on fixed terms, and any "upside" or investment incentive
> to enter into the transaction is based on a prospective
> increase in the value of the subject real property.
> Accordingly, the borrower's loan contract (the Note and
> Trust Deed in this appeal) is distinct and separate from
> any securities transaction in the "secondary market"
> encompassing assignment of the contract.

The uncontested evidence before the Court is that the Loan was transferred into the pool and removed from it.  The transfer of the Loan into and out of the pool did not impact Citi's right to enforce the Note.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

## B. <u>Assignment of Deed of Trust</u>

Plaintiff argues that the Assignment to Citi recorded on January 19, 2010 is a "wild deed" and a false conveyance because at that time the loan had been sold to Freddie Mac and thus Citi was not a beneficiary of the Deed of Trust. Plaintiff further contends that Cal-Western did not receive a declaration of default from the beneficiary, citing to the deposition of Yvonne Wheeler, the employee of Cal-Western who executed the Assignment (Exhibit F to declaration of David Smith, docket no. 245). Ms. Wheeler testified that a declaration of default and demand for sale was delivered to Cal-Western in the form of an electronically transmitted referral, which states who the servicer and beneficiary are. Ms. Wheeler further testified that Cal-Western employees verify this information with the title company and the MERS website, and in this case Cal-Western had documentation provided by Citi showing that Citi was the note holder – specifically, a copy of the promissory note showing the endorsement to Citi. Plaintiff has not provided any evidence or authority that the electronic referral was insufficient to constitute a declaration of default and demand for sale.

Plaintiff argues that Ms. Wheeler was not an officer of MERS when she executed the Assignment. However, Ms. Wheeler was appointed as Assistant Secretary of MERS in accordance with MERS' Corporate Resolution dated July 14, 2000, Cha decl., ¶ 3, Exhibit A (Wheeler transcript), page 20, and in that capacity she was authorized to assign the lien of any mortgage loan naming MERS as the mortgagee when Cal-Western is under contract with a MERS Member who is also the current promissory note holder. <u>Id.</u> at 118-119.

In any event, even if there were irregularities in the Assignment, any transfer of the note automatically carries with it a transfer of the deed of trust. <u>Davidson v. Countrywide Home Loans, Inc.</u>, 2010 WL 962712, at *5 (S.D. Cal. Mar. 16, 2010); Cal. Civ. Code § 2936 ("The assignment of a debt secured by mortgage carries with it the security.")  As the note holder, Citi was authorized to initiate foreclosure.

## V. CONCLUSION

Because Defendants have established that Citi is entitled to enforce the Note, Defendants are entitled to summary judgment of dismissal of Plaintiff's claims.  Defendants' motion is granted, and Plaintiff's motion is denied.  Defendants may submit a proposed form of judgment.

**\*\*\* END OF MEMORANDUM DECISION \*\*\***

1

2

3    David Randall Smith
     P.O. Box 436
4    Mt. Hermon, CA 95041

5
     Parties to be notified electronically:
6    Ellen Cha
     Pite Duncan LLP
7    Counsel for Defendants

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California