FILED

SEP 2 7 2013

CLERK
United States Bankruptcy Court
San Jose, California

DAVID RANDALL SMITH
P.O. Box 436
Mt. Hermon, Ca. 95041
(831) 234-8407
Debtor *pro se*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA- SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. 10-52330-ASW |
| DAVID RANDALL SMITH | Chapter 11 |

**REPLY MEMORANDUM TO CITIMORTGAGE, INC. AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S MOTION TO DISMISS OR, IN THE ALTERNATIVE CONVERT, CHAPTER 11 BANKRUPTCY CASE**

DATE: September 30, 2013
TIME: 2:15 p.m.
CTRM: 3020
JUDGE: Hon. Arthur S. Weissbrodt

280 South 1st St. #3035
San Jose, CA 95113-3099

Customarily, the Debtor DAVID SMITH would not file a *Reply Memorandum* to the plethora of combined Filings that flow from the fertile keyboard of Matthew Clark III, the intermittent counsel for "CitiMortgage, Inc." and "Federal Home Loan Mortgage Corporation."

The latest round of creative mischief-making does merit a response. Specifically, "Clark" is playing games with Debtor and the Court in the matter of farcical "Discovery."

At the outset, Debtor takes the position that "CitiMortgage," having admitted that it has no ownership interest in any debt of this Debtor, is nonetheless entitled to behave as an aggrieved creditor. The representation seems to be that, at one time in the distant past, a "Note" of the Debtor flowed through the hands of "Citi," then passed to another. The truth or falsity of that representation remains undetermined. Nonetheless, it remains cast in concrete that "CitiMortgage" is not classically aggrieved, as there is no act of debtor that causes harm, loss or injury to "Citi." It remains ironclad that "Citi" is not subject to any loss of capital as a result of any act of Debtor; "Citi" has no "skin in the game."

The further representation, perhaps by implication, would seem to be that "Citi" is somehow harmed by a *future* prospective loss of revenues flowing from what it would set forth as being prospective "servicing rights." Yet our Bankruptcy Courts are not set up to contend with ephemeral claims of prospective *future* harms.

"CitiMortgage, Inc.," together with counsel Matthew Clark of Pite Duncan, has committed the grievous sin of filing a Proof of Claim for an entity, "CitiMortgage," that has no money loss or claim in the Bankruptcy estate of Debtor David Smith. Our Courts have confronted this situation in the past and, at least in the case of the Bankruptcy Court for the district of Massachusetts, dealt forcefully with law firms, attorneys, and "servicers" that interpose themselves into a bankruptcy estate where they have no monies at risk of loss. The Court is referred to the Memorandum of Decision issued by Judge Rosenthal in the matter of *In re Nosek,* 02-46025-JBR, Adv. Proc. 04-4517, 07-4109, U.S. Bank.Ct. Distr. Mass. (25 Apr. 2008), in which the Court Sanctioned the servicer "Ameriquest" in the amount of $250,000 for filing a Proof of Claim representing that Ameriquest was a creditor; Sanctioned "Wells Fargo" another $250,000 for the same offense; Sanctioned the law firm of Buchalter Nemer Fields & Younger in the amount of $100,000; sanctioned Attorney Robert Charlton in the amount of $25,000; and issued other money sanctions. . A copy of the Memorandum is attached for the Court's inspection as **EXHIBIT "C".**

2

The offenses of "CitiMortgage" and of Attorney Matthew Clark III and his employer "Pite Duncan" parallel the players sanctioned by Judge Rosenthal in the *Nosek* matter, and considering the guidance of the Massachusetts Court, analogous Sanctions would be appropriately meted out against attorney Matthew Clark III for his obstreperous misconduct herein. Particularly, Attorney Clark has filed Pleadings Papers, the "*Motion to Dismiss or Convert,*" on behalf in part of the entity "Federal Home Loan Mortgage Corp., ["Freddie"], notwithstanding that "Freddie" is not before the Court within this Bankruptcy Petition and, notwithstanding actual knowledge of the Petition Filing, has elected not to file a Proof of Claim. The Bar date having passed, "Freddie" cannot be a creditor of the Estate. "Freddie" lacks all Standing (other than as a Defendant in the parallel Adversary Proceeding); nonetheless, Matthew Clark III and "Pite Duncan" proceed to use "Freddie" as a vehicle for interposing themselves for pernicious abuse as dilatory obstructers of the orderly progression of this case.

As part of that pattern and practice of obstructionism and interposement, Matthew Clark and "Pite Duncan" have issued what is postured as "Request for Admissions" notwithstanding that "Freddie" has no business before the Court. (See Debtor's Response to Request for Admissions **EXHIBIT "A"**). Debtor has Noticed Matthew Clark III under Rule 11 of intent to apply for Sanctions (**EXHIBIT "B"**), parallel to the Massachusetts Court's Findings in *Nosek*, and additionally as a matter of conservatism has nonetheless Responded to the *Request* (with Objection). Notwithstanding, Matthew Clark III continues to abuse the Court and this Debtor by attempting to play games with "dates" and attempting to claim that the Responses to Admissions should be discarded and "deemed admitted" pursuant to Clark's convenient interpretation of mail dates.

Clark further attempts to set forth the proposition that "Citi" is a "creditor" by virtue of the possession by the law firm of "Pite Duncan" of what is claimed to be the "Note," which is then represented as "Indorsed in blank" and therefore enforceable under "Holder" doctrines by whomever "Pite Duncan" conveniently says is the "*holder-du-jour.*" That this is a charade is demonstrated by noting that the "Note Holder" is not whomever can show up in Court and wave

3

around a facsimile of a Note, re-created by printer from a digitized image, with partially-completed special Indorsement "stamps" electronically inscribed by unknown persons under circumstance that remain dubious.   Rather, the "Note Holder" is carefully defined *within the Note itself,* and that definition excludes "Citi," "Pite," and "Freddie." It is not a function of our Courts to go re-define Notes that are freely entered into and reflect, within the Four Corners of the Instrument, the terms of the Obligation. Yet, Matthew Clark III would have this Court insert *his views* over the clear terms contained within the Note itself.

At some point, the Court will be placed in the admittedly uncomfortable position of having to deal forcefully with the obstructionism and mendacious misconduct of "Pite Duncan" and their attorneys who come before this Court with a consistent pattern and practice of abuse. The Court may be mindful that it has already had to issue Sanctions on three occasions so far against these players, apparently without any discernible deterrent effect.  There is no basis for Clark and his clients to go off filing their "Admissions" demands in the first place, as client "Citi" is not aggrieved and is not affected by any results emanating from this bankruptcy Petition; "Freddie" is not a filed creditor and is displaced from the matters before the Court by the Bar Date; neither has Standing to even commence their Motion Pleadings. For Clark to play postage-date games with the Objections (and Answers) and suggest to this Court that his ideas of "Admissions" should be treated as "deemed Admissions" is sophistry.

Dated:  September 23, 2013

DAVID RANDALL SMITH,
Debtor-in-possession pro se

DAVID RANDALL SMITH

P.O. Box 436

Mt. Hermon, Ca. 95041

(831) 234-8407

Debtor *pro se*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA- SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. 10-52330-ASW |
| DAVID RANDALL SMITH | Chapter 11 |
| | DEBTOR DAVID SMITH'S RESPONSE TO CITIMORTGAGE, INC. AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S FIRST SET OF REQUESTS FOR ADMISSIONS. |

## **GENERAL OBJECTIONS**

Debtor objects to CitiMortgage, Inc. and Federal Home Loan Mortgage Corporation's First Set of Requests for Admissions on the basis that Requestor has no Standing and that they are filed in bad faith and for improper purpose. Requestor was served a Rule 11 Sanctions Notice to withdraw the Request on the basis of a willful act of improper Filing of discovery demands;

taking actions as a debt collector in an attempt to collect a debt without stay-relief all violative of 11 USC 362(a); and abusing a Petitioning Debtor in acts expressly intended to place a Debtor under duress. Requestor has not to date withdrawn the Request. Furthermore, Freddie Mac is not before the court in the bankruptcy case, has not filed a Proof of Claim, has not appeared in any Pleading before the filing of the present Motion. Debtor maintains that Freddie Mac is not, therefore, a party in interest with the right to file a Motion in Debtor's bankruptcy case. Debtor responds to these inappropriate assertions in order to avoid any possible finding that the assertions are deemed admitted. Debtor's Response herein is not an admission that the Request is in conformance with Rule 11. Debtor responds under protest.

## RESPONSE TO REQUEST FOR ADMISSIONS

**Request for Admission No. 1:** Admit that the document attached hereto as *Exhibit A* is a true and correct copy of the Note.

RESPONSE: Denied.

**Request for Admission No. 2:** Admit that the document attached hereto as *Exhibit B* is a true and correct copy of the Deed of Trust.

RESPONSE: Denied.

**Request for Admission No. 3:** Admit that Reunion loaned you and Mrs. Smith $227,000.00 in January of 2006.

**RESPONSE:** Denied.

**Request for Admission No. 4:** Admit that you promised to repay to Reunion the $227,000.00 loan referenced in Request for Admission No. 3, together with finance charges on the unpaid principal.

**RESPONSE:** Denied as stated. To be clear, "Reunion" was not the Lender to any "Smith Loan."

**Request for Admission No. 5:** Admit that you signed the Note.

**RESPONSE**: Denied. To be clear, Debtor admits he signed a Note document. Debtor denies that what Requestor suggests is "the Note" is a Note document of this debtor.

**Request for Admission No. 6**: Admit that you signed the Deed of Trust.

**RESPONSE**: Denied. To be clear, Debtor admits he signed a Deed of Trust document; however, that does not appear to be the document Requestor suggests.

**Request for Admission No. 7**: Admit that Mrs. Smith signed the Note.

**RESPONSE**: Cannot be admitted or denied, thus Denied as Stated. Debtor has no knowledge of what Mrs. Smith did or did not do. Debtor can only speak for himself.

**Request for Admission No. 8**: Admit that Mrs. Smith signed the Deed of Trust.

**RESPONSE**: Denied as stated; debtor cannot admit nor deny what others did or did not do, and can only speak for himself. Debtor has no knowledge of what Mrs. Smith did or did not do.

**Request for Admission No. 9**: Admit that you have not repaid all amounts due under the Note.

**RESPONSE**: Denied. Debtor has no knowledge of any amount due.

**Request for Admission No. 10**: Admit that Mrs. Smith has not repaid all amounts due under the Note.

**RESPONSE**: Debtor cannot speak for what Mrs. Smith did or did not do; therefore, Denied.

**Request for Admission No. 11**: Admit that no person other than CMI has demanded payments from you under the Note since March of 2006.

**RESPONSE**: Objection; not calculated to produce discoverable evidence. To be clear, the issuance, demand, or absence of demand for payments under a "Note" does not impact the ownership or rights under a "Note," unless in so doing the owner of the Note fails to take steps to enforce within the Statutory limits, after which the "Note" would be stale-dated and unenforceable.

**Request for Admission No. 12**: Admit that you have not filed timely operating reports in the Bankruptcy.

**RESPONSE**: Objection; irrelevant and immaterial to the controversy between Requestor and Debtor. In any event, the record speaks for itself.

**Request for Admission No. 13**: Admit that you had no intention to reorganize your debts when you filed the Bankruptcy.

**RESPONSE**: Objection; the Request is abusive, argumentative and not calculated to produce discoverable evidence. In any event and as further response, Denied.

**Request for Admission No. 14**: Admit that your successful reorganization is dependent on the success of your claims against Movants in the Adversary.

**RESPONSE**: Denied. To be clear, the Plan of Debtor sets out the reorganization.

**Request for Admission No. 15**: Admit that you have no evidence to support your claims in the Adversary.

**RESPONSE**: Denied. Further, this Request for Admissions sets forth the continuing pattern of abusive misconduct that CitiMortgage by counsel engages in within this bankruptcy proceeding.

**Request for Admission No. 16**: Admit that you have no defense to CMI's enforcement of the CMI Loan.

**RESPONSE**: Denied. To be clear, "CMI" is an officious intermeddler with no classic aggrievement by or from any act of debtor, and interposes itself into these proceedings with improper purpose.

**Request for Admission No. 17**: Admit that CMI qualifies as the "holder", as that term is defined under Article 3 of the Uniform Commercial Code, of the Note.

**RESPONSE**: Denied. To be clear, the definition of "Note Holder" is contained within the Instrument itself, which is definitive as to these proceedings.

**Request for Admission No. 18**: Admit that you have no formal legal training.

**RESPONSE**: Objection; the debtor represents that he operates a sawmill; accordingly, the Request for Admissions is not calculated to produce discoverable evidence, and is abusive, immaterial, and reflects the peculiar arrogance of the Requestor.

**Request for Admission No. 19**: Admit that you are not a licensed attorney.

1   **RESPONSE**:   Objection; the Request is not calculated to produce discoverable evidence, and is

2   abusive, arrogant, and immaterial.

3   **Request for Admission No. 20**:  Admit that you are receiving advice in the Adversary from an

4   attorney.

5   **RESPONSE**:   Objection; the Request is not calculated to produce discoverable evidence and is

6   abusive.  To be clear, in response to the Court's request, debtor has consulted with an attorney.

7   **Request for Admission No. 21**:  Admit that you are receiving advice in the Bankruptcy from an

8   attorney.

9   **RESPONSE**:   Objection; the Request is not calculated to produce discoverable evidence and is

10  abusive.  To be clear, in response to the Court's request, debtor has consulted with an attorney.

11

12  **Request for Admission No. 22**:  Admit that you are in default under the CMI Loan.

13  **RESPONSE**:   Denied.  To be clear, Debtor does not have a Loan obligation with CMI.

14  **Request for Admission No. 23**:  Admit that you have no evidence to refute Movants' contention

15  in the Motion to Dismiss that you signed the Note.

16  **RESPONSE**:  Debtor denies signing a Note Movant claims to hold.

17  **Request for Admission No. 24**:  Admit that you have no evidence to refute Movants' contention

18  in the Motion to Dismiss that you signed the Deed of Trust.

19  **RESPONSE**:   Objection; any such document would be self-authenticating.

20  **Request for Admission No. 25**:  Admit that you have no evidence to refute Movants' contention

21  in the Motion to Dismiss that CMI is authorized to enforce the Note.

22  **RESPONSE**:   Denied. Debtor possesses evidence that CMI has no authority to enforce any Note

23  of Debtor.

24  **Request for Admission No. 26**:  Admit that you have no evidence to refute Movants' contention

25  in the Motion to Dismiss that you have made no progress toward reorganizing your debts in the

26  Bankruptcy.

27  **RESPONSE**:  Denied.  See response to No. 13.

28

**Request for Admission No. 27**: Admit that you reside at 1105 Pinecrest Drive, Boulder Creek, Ca. 95006.

**RESPONSE**: Denied.

**Request for Admission No. 28**: Admit that Mrs. Smith resides at 1105 Pinecrest Drive, Boulder Creek, Ca. 95006.

**RESPONSE**: Objection; Debtor responds only for himself. Mrs. Smith speaks for herself.

**Request for Admission No. 29**: : Admit that you are a tenant of the real property located at 1105 Pinecrest Drive, Boulder Creek, Ca. 95006 pursuant to a lease agreement.

**RESPONSE**: Objection; Debtor's "tenancy" or lack thereof is not in controversy, is argumentative, suggests facts not in the Record, and there is no articulable representation by any party that such tenancy would be material in these proceedings. To be clear, the Request is Denied.

**Request for Admission No. 30**: Admit that you have not disclosed all of your monthly expenses on your operating reports in the Bankruptcy.

RESPONSE: Objection; not calculated to produce discoverable information. To be clear, the Requestor is intruding on territory reserved for the United States Trustee.

**Request for Admission No. 31**: Admit that you operate a business at the Property.

**RESPONSE**: Objection; the Request is not calculated to produce discoverable information, is over-broad, and does not describe what Requestor intends by the phrase "operate a business." To be clear, to the extent that Debtor operates a sawmill enterprise and, in conjunction therewith, answers his business cell phone while standing on the described property, Admitted.

Dated: September 20, 2013

DAVID RANDALL SMITH,

Debtor-in-possession pro se

27 August 2013

Mr. Matthew R. Clark
Pite Duncan LLP
P.O. Box 17933
San Diego, California 92177-0933

**RULE 11 SANCTIONS NOTICE**

RE:    Your role as attorney for "CitiMortgage, Inc." and "Federal Home Loan Mortgage Corp."
       Docket no: 10-52330
       Via Certified Mail 7012 3460 0000 3405 2634

Mr. Clark:

I am in receipt of certain Documents styled as:
        Requests for admissions (set one)
        Request for Interrogatories (set one)
        Request for Production of Documents (set one)

The gravamen of these documents  ["the discovery Documents"] is that you take the position that
the clients you assert you represent are entitled to issue same upon a Debtor in a Bankruptcy
Petition. As an experienced attorney, you know perfectly well that that is untruthful.
Accordingly, you are to consider this a Rule 11 Notice requiring you to immediately withdraw
the "Documents," and file a Notice with the Bankruptcy Court of your withdrawal.

In the event that you choose to not file a Withdrawal, you are to consider this as further Notice
that I shall file a Rule 11 Motion for Sanctions against you personally in addition to your law
firm and your "clients,"  on the basis including but not limited to a willful act of improper Filing
of discovery demands; taking actions as a debt collector in an attempt to collect a debt without
stay-relief all violative of 11 USC 362(a);  and abusing a Petitioning Debtor in acts expressly
intended to place a Debtor under duress.  I shall ask that an appropriate money sanctions be
levied, and additionally I shall ask the Court to issue an Order of Sanctions barring you from
practice before the Federal Courts for an appropriate time.

Regards,

DAVID SMITH
P.O. Box 436
Mt. Hermon, California 95041

EXHIBIT "B" p. 1 OF 2

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent  ☐ Addressee

B. Received by ( *Printed Name* )   C. Date of Delivery

Thomas _____

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

1. Article Addressed to:

MATT CLARK
PITE DUNCAN, LLP
4375 JUTLAND DR #200
SAN DIEGO, CA. 92177-0933

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

2.

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

EXHIBIT "B" p. 2 of 2

# United States Bankruptcy Court
## District of Massachusetts

In re:                                    )
                                          )
JACALYN S. NOSEK,                         )      Chapter 13
            DEBTOR.                        )      Case No. 02-46025 -JBR
_____          )
                                          )
JACALYN S. NOSEK,                         )      Adversary Proceeding
            PLAINTIFF,                     )      No. 04-4517 and
                                          )      No. 07-4109
v.                                        )
AMERIQUEST MORTGAGE COMPANY, )
*et al.*                                  )
            DEFENDANTS                     )
_____          )


### MEMORANDUM OF DECISION REGARDING ORDER TO SHOW CAUSE

This matter came before the court for a hearing on the Court's Order to Show Cause why

sanctions should not be imposed for apparent misrepresentations as to the status of Ameriquest

Mortgage Company as the holder of the note and mortgage at issue in this case and adversary

proceedings.

**FACTS**

The facts surrounding the dispute between the Debtor and Ameriquest Mortgage

Company ("Ameriquest") as found by the Court after trial in adversary proceeding 04-4517 are

set forth in *In re Nosek*, 2006 WL 1867096 at *6 (Bankr. D. Mass. June 30, 2006). The facts

pertinent to the issues now before the Court can be summarized as follows. On October 2, 2002

the Debtor filed a voluntary petition pursuant to Chapter 13 of the United States Bankruptcy

Code. On November 1, 2002 she filed her schedules, including Schedule D on which she listed a

secured, albeit disputed, debt owed to "Norwest Bank Minnesota, NA, Tr, c/o Ablitt & Caruolo,

EXHIBIT "C"

P.C." as well as the firm's address. The same schedule also lists "Ameriquest Mortgage Company Representing: Norwest Bank Minnesota, NA, Tr" and "Buchalter, Nemer, Fields et al Representing: Norwest Bank Minnesota, NA, Tr" and their respective addresses. Ameriquest, Norwest Bank Minnesota, NA, Tr. and the Buchalter firm are listed on the amended creditor matrix. Throughout the course of the bankruptcy case and Adversary Proceeding 04-4517, Ameriquest and its attorneys have represented that Ameriquest was the "holder" of a note and mortgage given by the Debtor/Plaintiff to Ameriquest.[1] The Court's judgment in Adversary Proceeding 04-4517 is currently on appeal before the Court of Appeals for the First Circuit.

On July 27, 2007 the Debtor commenced Adversary Proceeding 07-4109 against Ameriquest and the two standing Chapter 13 Trustees for the District of Massachusetts and sought, among other things, an order for trustee process. On September 27, 2007 Ameriquest filed an opposition [# 20] and in it, for the *first time* in this case, informed the Court that "Ameriquest merely collects these funds [which the Debtor sought to attach] on behalf of their owners. It does not own these funds...." The Affidavit of Eileen Driscoll Rubens,[2] dated September 27, 2007, reads in part:

> Prior to March, 2005, Ameriquest acted as a loan *servicer* both for certain of the loans it originated and for loans originated by other parties.

Rubens Affidavit at ¶ 8 (emphasis added).

---

[1]As discussed below, the term "holder" has a specific meaning when used in connection with a promissory note.

[2]Ms. Rubens identifies herself as "a Senior Counsel for ACC Holdings Corporation ("ACC") and the Assistant Secretary for the ACC subsidiaries Ameriquest Mortgage Company ("Ameriquest") and AMC Mortgage Services, Inc. ("AMC Mortgage Services")." Rubens Affidavit at ¶ 1.

2

A flurry of motions and cross-motions ensued, including Ameriquest's cross-motion to dismiss Adversary Proceeding 07-4109 on the grounds that the Court lacked jurisdiction because of the pending appeal and the Debtor's motion to amend the complaint in Adversary Proceeding 07-4109 to add Norwest Bank, Minnesota, N.A. ("Norwest") as a defendant.[3] Ameriquest opposed the motion to amend the complaint on the grounds that the Plaintiff had elected to sue Ameriquest instead of Norwest, its allegedly disclosed principal. The complaint was dismissed as to Ameriquest but the Debtor was permitted to amend her complaint to add Norwest as the Defendant.

On January 9, 2008 Norwest Bank, Minnesota, N.A., now known as Wells Fargo Bank, N.A., as Trustee for Amresco Residential Securities Corp. Mortgage Loan Trust, Series 1998-2 filed a Request for Judicial Notice, which, along with its attached exhibits, evidence the following:

1. On November 25, 1997 the Debtor gave Ameriquest a note and mortgage on her principal residence to secure the note.

2. On November 30, 1997, *five days after Ameriquest originated the loan*, Ameriquest assigned the note and mortgage to Norwest.

3. On May 22, 2000 the assignment of the note and mortgage was recorded.

4. On March 31, 2005 an assignment of the servicing rights in connection with the November 30, 1997 note and mortgage were assigned by Ameriquest to AMC Mortgage

---

[3]The Debtor also sought to add Citi Residential Lending, Inc. as a trustee defendant. Citi Financial is not a party to this Order to Show Cause.

3

Services.[4]

Despite the above chronology which indicates that Ameriquest was the loan originator and had not held the note since November 30, 1997 and despite the fact that Ameriquest ended its servicer role as of March 31, 2005, the Court noted that Ameriquest and its attorneys made contrary representations as to Ameriquest's status. For example

- On February 13, 2003, Ameriquest filed a proof of claim [Claim # 1], which was amended by a proof of claim dated April 22, 2003 [Claim #16] and signed by one John Teston, to which the note and mortgage were attached without any reference to the assignment.

- In the February 17, 2003 Response to Debtor's Objection to Ameriquest's Proof of Claim, attorney Jennifer G. Haskell of the law firm of Ablitt & Caruolo, P.C. signed the pleading containing the following statement: "That Ameriquest *is* the holder of the first mortgage on real property known as 60 Bolton Road, South Lancaster, Massachusetts, and [sic] was recorded in the Worcester County (Worcester District) registry of Deeds in Book 19404, Page 164." (Emphasis added).

- By letter dated October 26, 2002 Ameriquest's Customer Service Department sent the debtor a letter in which Ameriquest stated "Ameriquest Mortgage Company (AMC) *holds* an Adjustable Rate Note secured by a mortgage (or Deed of Trust)

---

[4]The trial in Adversary Proceeding 04-4517 began on November 28, 2005. At that time Ameriquest, while it could be held accountable for its past behavior, had no role with respect to the note and mortgage, a fact not disclosed to the Court.

against the residential real property...."[5]

- On or about February 24, 2003 attorney Jennifer G. Haskell signed a Motion for Relief in the Debtor's bankruptcy case on behalf of Ameriquest and represented that "[t]he movant *is* the holder of a first mortgage ...."[6]

- On January 3, 2005 attorney William J. Amann of the law firm of Ablitt & Caruolo P.C. signed an answer to the complaint in Adversary Proceeding 04-4517 in which he admitted the allegation in the complaint filed December 2, 2004 that Ameriquest *"is"* the holder of the first position mortgage.

- Attorney Robert F. Charlton defended Ameriquest in the 8-day trial in Adversary Proceeding 04-4517 without advising the Court that Ameriquest was neither the noteholder nor mortgagee.[7]

- Attorney Jeffrey K. Garfinkle of the law firm of Buchalter Nemer filed an appearance in Adversary Proceeding 04-4517 on July 17, 2006 and failed to advise the Court until the pleadings of January 9, 2008 filed in Adversary Proceeding 07-4109 of Ameriquest's true role in these proceedings.

Consequently the Court issued its Order to Show Cause requiring Ameriquest; John Teston, who

---

[5]Ameriquest sent more than one letter containing this language. See for example, Ameriquest's letter of April 26, 2003.

[6]Failure to identify Norwest as the subsequent holder of the obligation and identify Ameriquest as the agent for the holder violates the current iteration of MLBR 4001-1(b)(2)(F), a requirement not contained in the local rules then in effect. There is nothing in MLRB 4001-1, as it existed when the motion was filed, that permits the misrepresentation of the movant's role, however.

[7]At the time of the trial, Ameriquest was no longer the servicer.

5

signed proofs of claim on behalf of Ameriquest; the law firm of Ablitt & Caruolo, PC;[8] Attorney

Jennifer G. Haskell; Attorney William Amann, Attorney Robert F. Charlton; the law firm of

Buchalter Nemer Fields & Younger ("Buchalter"); Attorney Jeffrey K. Garfinkle; Kirkpatrick &

Lockhart Preston Gates Ellis ("K&L Gates"); and Norwest to show cause why they should not

be sanctioned for their apparent misrepresentations.  In addition. Attorney R. Bruce Allensworth

was ordered to provide evidence for his representation during the November 28, 2007 hearing on

the Motion to Amend the Complaint in Adversary Proceeding 07-4109 that "following whatever

initial pleadings may have been followed [sic] in this case, it is the case that in the course of

discovery there was testimony at deposition that these loans had been sold."[9]  He was also

ordered to provide support for his contention that Norwest's identity was disclosed by virtue of

the 2000 recordation of the assignment of the note and mortgage when Ameriquest's own

counsel improperly referred to Ameriquest as the holder of the note and mortgage throughout the

bankruptcy and adversary proceedings until January 9, 2008.

Shortly after the Order to Show Cause entered on the docket, Citi Residential Lending,

Inc., in its capacity as loan servicer for the note, through attorneys David Liu and Jason E.

Goldstein of the Buchalter Nemer firm, filed a "Transfer of Claim Other than for Security" and

listed Ameriquest as the transferor of the claim evidenced by claim number 16.[10]  The Debtor has

---

[8]At some point prior to the trial in Adversary Proceeding 04-4517, the law firm of Ablitt
& Caruolo, P.C. became Ablitt & Charlton, P.C.  A response was filed on behalf of Ablitt &
Charlton, P.C. (The "Ablitt Firm").

[9]The Debtor's attorney had advised the Court that he was also unaware of the assignment
until learning of it in the most recent adversary proceeding.

[10]The Transfer of claim form indicates that claim # "16 (Amended #1)" was transferred.
There is no amended proof of claim regarding claim #16.

6

requested that the Court take judicial notice of the fact that Ameriquest is listed as the transferor; Ameriquest responded that it was entitled to file the proof of claim in its own name pursuant to a "Pooling and Servicing Agreement" dated June 1, 1998, a copy of which was filed at the hearing on the Order to Show Cause on February 21, 2008 [docket #214].

All of the individuals and entities named in the Order to Show Cause, with the exception of John Teston, filed written responses as required by the Order.[11] The responses focused on several common themes: first, nobody intended to mislead the Court; second, the Debtor and her attorney knew that Ameriquest was not the noteholder and thus she was not harmed; third, notes and mortgages are bought and sold so frequently, that it is difficult to know at any given moment who holds the note and mortgage; and fourth, that the Pooling and Service Agreement permitted Ameriquest to undertake some actions in its own name. In addition, Ablitt & Caruolo and its attorneys urged the Court to find that their reliance on representations of individuals at the Buchalter firm was reasonable. The Court held a hearing on the Order to Show Cause at which these same points were reiterated and took the matter under advisement.

**DISCUSSION**

Throughout most of these proceedings, Ameriquest and its attorneys represented that Ameriquest was the "holder" of the note of the note and mortgage. The word "holder" has a very specific definition when used in connection with a negotiable instrument such as a note.

---

[11] Ameriquest advised the Court that Mr. Teston was no longer employed by Ameriquest and that his current whereabouts are unknown. Although Ameriquest mailed a copy of the Order to Show Cause to Mr. Teston's last known address, Ameriquest is unsure whether he received the Order. The Court will not proceed against Mr. Teston given this uncertainty and in light of Buchalter's acceptance of responsibility for the preparation of the proofs of claim.

Case: 10-52330    Doc# 298    Filed: 09/27/13    Entered: 09/30/13 08:19:43    Page 19 of 30

> "Holder" with respect to a negotiable instrument, means the person
> in possession if the instrument is payable to bearer or, in the case
> of an instrument payable to an identified person, if the identified
> person is in possession....

M.G.L.A. 106 § 1-201(20). The term "holder" is similarly defined when used in connection with a mortgage. *See* BLACK'S LAW DICTIONARY, 1034 (8th ed. 2004)(mortgage-holder or mortgagee is "one to whom property is mortgaged; the mortgage creditor or lender").

Unfortunately the parties' confusion and lack of knowledge, or perhaps sloppiness, as to their roles is not unique in the residential mortgage industry. *In re Maisel*, 378 B.R. 19 (Bankr. D. Mass. 2007); *In re Schwartz*, 366 B.R. 265 (Bankr. D. Mass. 2007). *See also In re Foreclosure Cases*, 2007 WL 3232430 (N.D. Ohio 2007). Nor are "mistakes" and misrepresentations limited to the identification of roles played by various entities in this industry. *In re Schuessler,* 2008 WL 1747935, *3 (Bankr. S.D.N.Y. 2008) (movant's motion misrepresented debtor's equity); Porter, Katherine M., "Misbehavior and Mistake in Bankruptcy Mortgage Claims" (November 6, 2007). University of Iowa Legal Studies Research Paper No. 07-29. Available at SSRN: http://ssrn.com/abstract=1027961. As this Court has noted on more than one occasion, those parties who do not hold the note or mortgage and who do not service the mortgage do not have standing to pursue motions for relief or other actions arising from the mortgage obligation. *Schwartz*, 366 B.R. at 270. The Court has had to expend time and resources, as have debtors already burdened in their attempts to pay their mortgages, because of the carelessness of those in the residential mortgage industry and the bombast this Court and others have encountered when calling them on their shortcomings. *In re Foreclosure Cases*, 2007 WL 3232430 at *3, n.1.

"The purpose of Rule 9011 is to deter baseless filings in bankruptcy and thus avoid the

8

expenditure of unnecessary resources by imposing sanctions on those found to have violated it." *In re MAS Realty Corp.*, 326 B.R. 31, 37 (Bankr. D. Mass. 2005). Pursuant to Fed. R. Bankr. 9011(b), an attorney or unrepresented party who signs "a pleading, written motion, or other paper" is, among other things, certifying to the Court that "the allegations and other factual contentions have evidentiary support, or if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery...." The certification is not an absolute guaranty of accuracy, however; the rule expressly permits the representations to be based upon the signer's best knowledge, information, and belief "formed after an inquiry reasonable under the circumstances." The standard to be applied is "an objective standard of reasonableness under the circumstances." *Cruz v. Savage,* 896 F.2d 626, 631 (1st Cir. 1990). "Courts, therefore, must inquire as to whether 'a reasonable attorney in like circumstances could believe his actions to be factually and legally justified.'" *Cabell v. Petty,* 810 F.2d 463, 466 (4th Cir.1987). *Cullen v. Darvin,* 132 B.R. 211, 215 (D. Mass. 1991). A finding of unreasonableness must be shown by a preponderance of the evidence. *Miller-Holzwarth, Inc. v. U.S.,* 2000 WL 291728, 3 (Fed. Cir. 2000).[12]

When Fed. R. Civ. P. 11 was amended in 1983,[13] the Advisory Committee noted that

> what constitutes a reasonable inquiry may depend on such factors
> as how much time for investigation was available to the signer;
> whether he had to rely on a client for information as to the facts
> underlying the pleading, motion, or other paper; whether the

---

[12]All parties, except Mr. Teston, who did not respond, submitted affidavits. None of the parties requested an evidentiary hearing.

[13]In determining whether the imposition of sanctions is appropriate in [a] case, the Court may look to authorities interpreting Fed. R. Civ. P. 11 as a guidepost. *In re M.A.S. Realty Corp.* 326 at 38, n.7.

Case: 10-52330    Doc# 298    Filed: 09/27/13    Entered: 09/30/13 08:19:43    Page 21 of 30

> pleading, motion, or other paper was based on a plausible view of
> the law; or whether he depended on forwarding counsel or another
> member of the bar.

In commenting upon the revisions made to subdivisions (b) and (c) of the Rule in 1993, the

Advisory Committee explained

> The revision in part expands the responsibilities of litigants to the
> court, while providing greater constraints and flexibility in dealing
> with infractions of the rule. The rule continues to require litigants
> to "stop-and-think" before initially making legal or factual
> contentions. It also, however, emphasizes the duty of candor by
> subjecting litigants to potential sanctions for insisting upon a
> position after it is no longer tenable and by generally providing
> protection against sanctions if they withdraw or correct contentions
> after a potential violation is called to their attention.

If Rule 9011 is violated, the Court may impose sanctions. "The imposition of sanctions

under Rule 9011 is a very serious matter. The decision regarding whether they should be

imposed requires a great deal of thought and care. Only those actions deemed to fall squarely

within the purview of Rule 9011 will result in a finding that it has been violated and the

concomitant imposition of sanctions by this Court." *In re M.A.S. Realty Corp.*, 326 B.R. at 37.

If sanctions are imposed, "the Court must limit the amount imposed to 'what is sufficient to deter

repetition of such conduct or comparable conduct by others similarly situated.' Fed. R. Bankr. P.

9011(c)(2); *Arcari v. Marder*, 225 B.R. 253, 257 (D. Mass. 1998)." *Id.* at 38.

With these tenets as a guide, the Court must examine the conduct of each party required

to show cause but before doing will dispense with some common arguments. Virtually all of

parties argue that there was no intent to mislead the Court. Because the standard to be applied is

an objective one, the Court may quickly dispatch this argument. Intent is irrelevant. The

argument that the assignment of the note and mortgage was a matter of public record and

10

therefore the Debtor knew or should have known of Norwest's identity is relevant but disingenuous, indeed even arrogant, since many of these same parties asserting this position allege they had no way of knowing about the assignment. They seek to bind the Debtor to one standard and themselves to a much lower one. Moreover the attorneys and law firms' argument that notes and mortgages frequently change hands multiple times, often with written documentation executed later, which they offer as explanation as to why its reasonable for them to rely on the representations of their clients should provide little shelter when they insist that the Debtor should have known better than to take their pleadings literally. This Court will not countenance creditors and creditors's attorneys holding themselves to a different and clearly lower standard than what they expect of the Debtor. It will not tolerate a lender's or servicer's disregard for the rules that govern litigation, including contested matters, in the federal courts. It is the *creditor's* responsibility to keep a borrower and the Court informed as to who owns the note and mortgage and is servicing the loan, not the borrower's or the Court's responsibility to ferret out the truth.

AMERIQUEST

Ameriquest attempts to portray itself as the victim; in its view, the Debtor knew the true identity of the mortgage holder and that Ameriquest was the servicer. As proof it cites to the Debtor's schedules and amended matrix. Of course this argument has two major flaws. First, the Order to Show Cause was not issued to deal with misrepresentations to the Debtor and her counsel but rather to determine whether the misrepresentations to the Court were indicative of very sloppy practice at best or an intentionally deceptive practice at worst. Second, as noted above, that these obligations are frequently bought and sold imposes a responsibility to know

11

and correctly represent the status of the loan.  That Ameriquest had *no* role after March 2005 --
well before the trial in Adversary Proceeding 04-4517, was unknown to the Court.

     Similarly Ameriquest's argument that the noteholder's identity was disclosed during a
deposition of one of its employees misses the mark and, as noted above, so does the argument
that the assignment of the note and mortgage ultimately became a matter of public record.
Ameriquest argues that assignments of notes and mortgages frequently occur with
documentation of the transfers recorded, and even executed, at a later time.  Moreover
Ameriquest represents that it is not uncommon for the original noteholder or mortgagee to take
back the note and/or mortgage when a borrower defaults.  Using these excuses, the parties'
attitude appears to be that  confusion as to a party's role is understandable against the current
commercial climate.  If the transfer of such negotiable instruments occurs at such a fast pace and
without timely recorded evidence of the transfers, why should the Court and Debtor's counsel be
expected to know the roles of the parties?  The burden is clearly on the sophisticated, albeit
careless, lenders and servicers.

     Ameriquest also seeks to hide behind the Pooling and Servicing Agreement by arguing
that the document gave Ameriquest the power to act in its own name, including for the purpose
of filing proofs of claim.  That may be true but proofs of claim filed under a written power of
attorney MUST have the power of attorney attached.  Fed. R. Bankr. P. 3001 and Official Form
10.  No part of the agreement was attached to the proof of claim.  It is worth repeating as a
warning to lenders and servicers that the rules of this Court apply to them.  Their private
agreements and the frenzied trading market for mortgages do not excuse compliance with the
Bankruptcy Rules any more than they would justify ignoring the Bankruptcy Code.

Case: 10-52330    Doc# 298    Filed: 09/27/13    Entered: 09/30/13 08:19:43    Page 24 of
30

This Court finds that Ameriquest made repeated misrepresentations and its behavior in failing to properly disclose its role was unreasonable under the circumstances. Although Ameriquest has informed the Court that it is no longer engaged in originating and servicing loans and therefore presents no danger to misrepresent its status in the future, it ignores the fact that it could reenter the residential mortgage arena in the future. Moreover, sanctions are designed to deter future actions not only those of the offending party but also "comparable conduct by others similarly situated." Fed. R. Bankr. P. 9011(c)(2). Therefore Ameriquest is sanctioned $250,000.

THE ABLITT FIRM AND ITS ATTORNEYS

By its express terms Rule 9011 applies to law firms as well as attorneys. Fed. R. Bankr. P. 9011(c). The Ablitt Firm and its attorneys, Jennifer Haskell and William Amann, filed a joint response in which they assert that they had no knowledge of any mistaken or incomplete information, that their filings and statements were based upon and consistent with Ameriquest's proof of claim and the information they received from Ameriquest and its national counsel, the Buchalter Firm. They also state that notes and mortgages are frequently sold back to the originator when the notes are in default. The Ablitt Firm also submitted the affidavit of Attorney Steven Ablitt, who testified that the firm "relied upon the direction of its institutional clients regarding what name relief should be sought in or a foreclosure action prosecuted in part because of the uncertainty of unrecorded transfers." He cites to Title Standard No. 58 of the Real Estate Bar Association of Massachusetts, which opines that a title is not defective solely because a foreclosure is done in the name of an assignee even though the assignment of mortgage is not executed until after the foreclosure, as evidence that memorialization of an assignment of the mortgage is not the operative document by which mortgages are sold. Thus he argues that

13

reliance upon an institutional client's representations in a foreclosure referral is an accepted practice. Neither Attorney Ablitt nor the response addresses the fact that, prior to the Debtor's current bankruptcy, the Ablitt firm had been retained to commence foreclosure proceedings and seek relief from stay in the Debtor's prior bankruptcy cases. If they had, they would have seen all those actions were undertaken in the name of Norwest. So the question becomes whether a firm should be permitted to rely on representations of its client without reviewing its own files. At a time when mortgages and notes are bought and sold at a pace so swiftly that the assignor and assignee cannot keep up with the paperwork, had the attorneys at the Ablitt firm checked the firm's file, they would have seen that Norwest was perhaps the real party in interest, at least when prior actions were taken, and thus sought additional information. The firm cannot shield itself from its institutional knowledge. Therefore the Court will impose sanctions of $25,000 on the firm.

Attorneys Haskell and Amann aver that they were both associates at the firm at the time of their involvement in these matters. They assert essentially that they were carrying out the bidding of their client, Ameriquest, and its national counsel, the Buchalter firm. Nevertheless they had an independent obligation to the Court pursuant to Rule 9011. Yet the Court is mindful that young associates are often not in a position to question the assignments given to them. Because the affidavits are unclear as to what each associate was told when given the assignment, the Court will not impose monetary sanctions on Attorneys Haskell and Amann but will let this decision serve as a warning that in the future the Court expects associates will be cognizant of and fulfill their responsibilities under Rule 9011.

ATTORNEY ROBERT CHARLTON

14

Attorney Charlton was a partner at the Ablitt firm at the time he conducted the trial in this matter but in his response he avers that he had not been involved in this matter since October 2006 and that he never heard of Norwest. The response begs the question; should he have known about Norwest. For the same reasons that the Ablitt firm knew of Norwest, so should Attorney Charlton. Therefore Attorney Charlton is sanctioned $25,000.

### "K&L GATES" AND ATTORNEY R. BRUCE ALLENSWORTH

K&L Gates did not enter this matter until February 2008. The Court finds that the conduct of the K&L Gates attorneys did not violate Rule 9011.

### THE BUCHALTER FIRM AND ATTORNEY JEFFREY GARFINKLE

The Buchalter firm is one of the prime sources of the problem in this case. One of its unnamed paralegals prepared the proof of claim forms and by its own admission, the firm cannot determine whether it had information as to the identity of the owner at the time the forms were prepared, although it was aware of the Pooling and Servicing Agreement. But as the Court has noted, that agreement cannot change the requirements for filings proofs of claim in accordance with the Bankruptcy Rules or Official Form 10. The Buchalter firm's response blithely ignores the role it played in setting the series of misrepresentations in motion. As national counsel to a mortgage lender, it has a responsibility to know its client's role in a case.[14] It cannot rely on the representations of its client; it has a responsibility to question and probe to the extent necessary to ensure that it has elicited correct information. The firm fell far short of what was required.

---

[14]The Court notes that the Buchalter firm and Attorney Garfinkle filed pleadings on behalf of Norwest/Wells Fargo in Adversary Proceeding 07-4109. None of the pleadings filed in response to the Order to show cause address the firm's current and historical relationship with Norwest or Wells Fargo. It would be curious indeed if the firm was national counsel to both yet incapable of distinguishing between the roles each played in a given case.

Consequently the firm is sanctioned $100,000.

Attorney Garfinkle became involved after the trial in Adversary Proceeding 04-4517 was concluded. His and the firm's response argues that there was no reason for him to question Ameriquest's role. Given that the court had awarded damages against Ameriquest, there was nothing inherently improper about Attorney Garfinkle's representations in this case. His involvement centered on pursuing an appeal of the judgment and opposing the imposition of costs and attorney's fees. Thus attorney Garfinkle was dealing with the facts as they had historically been presented to the Court, and made no representations of Ameriquest's then-current status. Therefore the Court does not impose sanctions on Attorney Garfinkle.

### NORWEST N/K/A WELLS FARGO

Norwest/Wells Fargo seeks to hide behind the Pooling and Servicing Agreement. Its position is that it turned all responsibilities over to Ameriquest and it knew nothing about what Ameriquest was doing. The Court notes, however, that it knew nothing about what Ameriquest was doing because it chose not to know. It has attempted to bifurcate the benefits of the note, namely its right to receive repayment of the loan, from all responsibilities associated with servicing and collecting payments. If Norwest/Wells Fargo wishes to engage servicers, as it is certainly free to do, it cannot turn a blind eye to the actions of the servicers. Had Norwest/Wells Fargo shown even a modicum of oversight or review of Ameriquest's behavior, it should have been able to correct the misrepresentations. The Court does not accept that one can simply by contract sever the benefits and burdens associated with residential mortgage lending. The Court joins in the frustration expressed by the courts in *In re Schuessler* and *In re Parsley,* 2008 WL 622859 at * 19 (Bankr. S.D.Tex. 2008) ("Tracing the steps leading up to the filing of the Motion

Case: 10-52330    Doc# 298    Filed: 09/27/13    Entered: 09/30/13 08:19:43    Page 28 of 30

shows that this is an assembly line process."). The link between lender and borrower in the current residential mortgage industry is a multilayered, tightly-if not hopelessly-entangled "assembly line," the purpose of which seems to be the avoidance of responsibility. *In re Schuessler*, 2008 WL 1747935at *25 ("Notwithstanding Chase Home Finance's [the apparent servicer] disingenuous claim that its system is designed to protect debtors, it primarily exists to protect Chase Home Finance and JPMorgan Chase Bank [the apparent noteholder and mortgagee]."). Under the guise of creating a complex structure to suit their needs, Wells Fargo and Ameriquest have attempted to jettison the obligation to be forthright and diligent with the Court and the Debtor. This Court will not allow Wells Fargo or any other mortgagee to shirk responsibility by pointing fingers at their servicers. Moreover because Wells Fargo continues as a participant in the mortgage industry, the Court is cognizant that the sanction must be sufficient to deter its cavalier behavior in the future. Therefore the Court will impose a sanction of $250,000 on Wells Fargo. In imposing the sanction on Wells Fargo, the Court is not limiting the sanction against Wells Fargo solely and to the extent that there are assets in the AMERESCO Residential Securities Corporation Mortgage Loan Trust 1998-2, which was established under the Pooling and Servicing Agreement. That the note and mortgage were subsequently assigned to a trust holding a pool of notes and mortgages by Wells Fargo's predecessor, Norwest, is simply another example of the layers interposed between borrower and lender in today's marketplace. It cannot serve as a vehicle to deflect ultimate responsibility from Wells Fargo.

**CONCLUSION**

For the reasons set forth herein, sanctions will be imposed as set forth above on

- Ameriquest in the amount of $250,000;

Case: 10-52330    Doc# 298    Filed: 09/27/13    Entered: 09/30/13 08:19:43    Page 29 of 30

- Ablitt & Charlton, P.C., formerly known as Ablitt & Caruolo, P.C., in the amount of $25,000;

- Attorney Robert Charlton in the amount of $25,000;

- Buchalter Nemer Fields & Younger in the amount of $100,000; and

- Wells Fargo in the amount of $250,000.

Sanctions will not be imposed on

- Attorney Jennifer Haskell;

- Attorney William Amann;

- Attorney R. Bruce Allensworth; and Kirkpatrick & Lockhart Preston Gates Ellis.

A separate order will issue.

*Joel B. Rosenthal*

Dated: April 25 , 2008

_____
Joel B. Rosenthal
United States Bankruptcy Judge.

18