David E. McAllister (SBN 185831)
dmcallister@piteduncan.com
Ellen Cha (SBN 250243)
echa@piteduncan.com
Brian A. Paino (SBN 251243)
bpaino@piteduncan.com
Matthew R. Clark III (SBN 271054)
mclark@piteduncan.com
**PITE DUNCAN, LLP**
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385

Attorneys for *Respondent*
CitiMortgage, Inc.

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| In Re<br><br>DAVID RANDALL SMITH,<br><br>Debtor. | Case No. 10-52330<br><br>Chapter 11<br><br>**OPPOSITION TO DEBTOR'S OBJECTION TO PROOF OF CLAIM**<br><br>**Hearing**:<br>Date: February 27, 2014<br>Time: 3:00 p.m.<br>Place: Crtm. 3020<br>280 South 1st Street<br>San Jose, CA 95113 |

  *Respondent* CitiMortgage, Inc. ("CMI") respectfully submits the following opposition to *debtor* David Randall Smith's ("Debtor") *Objection to Proof of Claim* [Dkt. No. 349] (the "Objection"). This opposition is supported by the points and authorities cited herein, the request for judicial notice filed concurrently herewith, and the record currently before the Court.

/././

/././

/././

/././

# TABLE OF CONTENTS

| | Page |
|---|---|
| I. INTRODUCTION | 1 |
| II. FACTUAL AND PROCEDURAL SUMMARY | 1 |
|    A. THE LOAN ORIGINATION | 1 |
|    B. THE TRANSFERS | 2 |
|    C. THE BANKRUPTCY & ADVERSARY | 3 |
| II. LEGAL STANDARD | 4 |
| III. ARGUMENT | 4 |
|    A. DEBTOR HAS NOT REBUTTED THE PRESUMPTIVE VALIDITY OF THE CLAIM | 4 |
|       1. The Claim is Presumptively Valid | 4 |
|       2. The Constitutional Standing Principles Do Not Apply to CMI | 5 |
|    B. THE OBJECTION SHOULD BE OVERRULED BECAUSE CMI HAS STANDING TO ENFORCE THE NOTE | 6 |
|       1. The Note is a Negotiable Instrument | 7 |
|       2. CMI Qualifies as a "Holder" | 7 |
|       3. The Indorsements on the Note Are Valid | 8 |
|       4. CMI Alternatively Qualifies as a Non-Holder in Possession | 9 |
|       5. The Assignment is Irrelevant | 12 |
|    C. DEBTOR IS DEEMED TO HAVE ADMITTED THAT CMI HAS STANDING TO ENFORCE THE LOAN | 12 |
|    D. DEBTOR SHOULD NOT BE ALLOWED TO PURSUE THE SAME RELIEF THROUGH DUPLICATE PROCEEDINGS | 13 |
|    E. DEBTOR SHOULD BE SANCTIONED FOR HIS BAD FAITH CONDUCT | 14 |
| IV. CONCLUSION | 15 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allen v. U.S. Bank, N.A. (In re Allen)*, 472 B.R. 559, 569 (9th Cir. BAP 2012) ....................- 12 -

*Allen v. Wright*, 468 U.S. 737, 750 (1984) .................................................................- 5 -

*Associated Creditors' Agency v. Davis*, 13 Cal. 3d 374, 383-84, 530 P.2d 1084, 1089 (1975).......
.................................................................................................................................- 11 -

*Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.),* 77 F.3d 278, 283–84 (9th Cir.1996) ..........................................................................................................................- 14 -

*CASC Corp. v. Milner (In re Locke)*, 180 B.R. 245, 254 (Bankr. C. D. Cal. 1995) ....................- 5 -

*Growth Equities Corp. v. Freed*, 227 Cal. App. 3d 506, 509, 277 Cal. Rptr. 848, 850 (Cal. Ct. App. 1991) .................................................................................................................- 7 -

*In re Skyline Lumber Co.*, 311 F.Supp. 112 (W.D. Va. 1970)......................................................- 5 -

*In re State Line Hotel, Inc.*, 323 B.R. 703, 710 (9th Cir. BAP 2005), *vacated on other grounds and remanded*, 242 F. App'x 460 (9th Cir. 2007) .................................................................- 5 -

*Knupfer v. Lindblad (In re Dyer),* 322 F.3d 1178, 1196 (9th Cir.2003)...................................- 14 -

*Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000) ......................- 4 -

*Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990) .................- 13 -

*Santens v. Los Angeles Finance Co.*, 91 Cal. App. 2d 197, 201, 204 P.2d 619 (4th Dist. 1949).....
.................................................................................................................................- 12 -

*United States v. Butner*, 440 U.S. 48, 54-55 (1979) ...................................................................- 6 -

*United States v. Levoy (In re Levoy)*, 182 B.R. 827, 834 (9th Cir. BAP 1995)............... - 5 -, - 13 -

*Veal v. Am. Home Mortgage Servicing, Inc. (In re Veal)*, 450 B.R. 897, 922 (9th Cir. BAP 2011)
.................................................................................................................. - 5 -, - 10 -

*Volpert v. Ellis (In re Volpert),* 110 F.3d 494, 500–502 (7th Cir.1997) ..................................- 14 -

*Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991) .............................................- 4 -

**STATUTES**

11 U.S.C. § 101(10) ..................................................................................................................- 6 -

11 U.S.C. § 105(a) ..................................................................................................................- 14 -

11 U.S.C. § 501(a) ....................................................................................................................- 6 -

| | | |
|---|---|---|
| 1 | Cal. Civ. Code § 1084 | - 12 - |
| 2 | Cal. Civ. Code, § 2936 | - 12 - |
| 3 | Cal. Comm. Code § 1103(b) | - 11 - |
| 4 | Cal. Comm. Code § 1201 | - 8 - |
| 5 | Cal. Comm. Code § 1201(27) | - 7 - |
| 6 | Cal. Comm. Code § 1201(31) | - 9 - |
| 7 | Cal. Comm. Code § 1201(8) | - 9 - |
| 8 | Cal. Comm. Code § 3104(a) | - 7 - |
| 9 | Cal. Comm. Code § 3106 | - 7 - |
| 10 | Cal. Comm. Code § 3203(a) | - 10 - |
| 11 | Cal. Comm. Code § 3203(b) | - 10 - |
| 12 | Cal. Comm. Code § 3301 | - 7 -, - 8 -, - 10 -, - 12 - |
| 13 | Cal. Comm. Code § 3308(a) | - 9 - |
| 14 | Cal. Comm. Code § 3415(a) | - 9 - |
| 15 | Cal. Comm. Code § 3602(a) | - 8 - |
| 16 | U.C.C. § 3–301 | - 8 - |
| 17 | UCC § 3-301, *Note 1* | - 10 - |
| 18 | UCC § 3-401(b) | - 8 - |
| 19 | UCC § 3-402(a) | - 8 - |

**OTHER AUTHORITIES**

| | | |
|---|---|---|
| 21 | 3 L. King, Collier on Bankruptcy § 502.02, at 502-22 (15 ed. 1991) | - 4 - |
| 22 | Fed. R. Bankr. P. 3007, advisory committee's notes | - 13 - |
| 23 | Fed. R. Bankr. P. 3011, advisory committee's notes | - 4 - |
| 24-26 | John A. Sebert, *Report of the PEB on the UCC Rules Applicable to the Assignment of Mortgage Notes and to the Ownership and Enforcement of Those Notes and the Mortgages Securing Them* (November 4, 2011), p. 7, *available at* http://www.ali.org/00021333/PEB%20Report%20-%20November%202011.pdf | - 11 - |
| 27 | RESTATEMENT (SECOND) OF CONTRACTS § 317 (1981) | - 11 - |
| 28 | RESTATEMENT (THIRD) OF AGENCY § 2.01 (2006) | - 11 - |

RESTATEMENT (THIRD) OF AGENCY § 2.02 (2006) ..................................................................- 11 -

**RULES**

Fed. R. Bankr. P. 3001 ..................................................................................................- 4 -

Fed. R. Bankr. P. 3001(f) ..............................................................................................- 4 -

Fed. R Bankr P. 7036 ..................................................................................................- 12 -

Fed. R. Bankr. P. 9014 .......................................................................................- 5 -, - 12 -

Fed. R. Bankr. P. 9014(c) ............................................................................................- 13 -

Fed. R. Civ. P. 42(a)(2) ...............................................................................................- 13 -

Fed. R. Civ. P. 36 ........................................................................................................- 12 -

## I. INTRODUCTION

Through his Objection, Debtor seeks an order disallowing the proof of claim that CMI filed in this case (defined below). The Objection is premised on Debtor's contention that CMI lacks standing to file the claim because it does not have the right to enforce the promissory note on which the claim is based. Notably, the Objection addresses the same issues that are being litigated in *Smith v. CitiMortgage, Inc., et al.*, Case No. 11-05107 (Bankr. N.D.Cal.) (the "Adversary"). That action has been pending for nearly three years, during which Debtor has been afforded a full and fair opportunity to challenge CMI's standing. Given the similarities between the Objection and the Adversary, it is evident that Debtor filed the Objection for an improper purpose; namely, to harass CMI and cause a needless increase in CMI's litigation costs. Regardless, Debtor's contentions are meritless. As an initial matter, Debtor's standing argument is misguided as he is the one invoking the Court's jurisdiction to resolve a controversy, not CMI. It follows that the constitutional standing requirements apply to Debtor, not CMI. Assuming *arguendo* that Debtor could overcome this deficiency, the Objection is nevertheless baseless. Indeed, the record reflects that CMI has standing to file a claim in this case because it is entitled to enforce the underlying promissory note. For these reasons, as explained more fully herein, Debtor's Objection should be overruled and he should be sanctioned for his bad faith conduct.

## I. FACTUAL AND PROCEDURAL SUMMARY[1]

### A. THE LOAN ORIGINATION

In or about January of 2006, Debtor and his wife, Sandra K. Smith (collectively, the "Borrowers") applied to Reunion Mortgage, Inc. ("Reunion") and were approved for a mortgage loan (the "Loan") in the principal amount of $227,000.00. (*See* Request for Judicial Notice ("RJN"), **Exhibit A**, ¶ 4). Borrowers executed a promissory note (the "Note") in connection with the Loan, dated January 23, 2006, in the original principal sum of $227,000.00, which was made payable to Reunion. (*See id.* at ¶ 5). The Note is secured by a deed of trust (the "Deed of Trust") encumbering

---

[1] Pursuant to Rules 201(b) and 201(d) of the Federal Rules of Evidence, which are made applicable to this proceeding by Rule 9017 of the Federal Rules of Bankruptcy Procedure, CMI requests that the Court take judicial notice of the documents and other records on file in this case and adversary case no. 11-05107, as referenced herein by Docket Number. References to the dockets are in the following format: BK Dkt. [Number], referring to the bankruptcy docket, and Adv. Dkt. [Number], referring the adversary case docket.

the real property located at 23 Pine Avenue, Mount Hermon, California 95041 (the "Property"). (*See id.*)

Reunion funded the Loan through a combination of advances from a line of credit it maintained with First Collateral Services, Inc. ("First Collateral") and its own funds. (*See* RJN, **Exhibit B**, pp. 13-14, 16 of *Exhibit B*). The Loan proceeds were used to pay off Borrowers' loan with Washington Mutual Bank. (*See* RJN, **Exhibit A**, ¶ 6).

**B.  THE TRANSFERS**

In February of 2006, CMI purchased the Loan from Reunion for valuable consideration. (*See* RJN, **Exhibit A**, ¶ 7). Reunion then indorsed the Note in blank and transferred physical possession of the Note to First Collateral, who then transferred it to CMI. (*See id.* at ¶ 8; RJN, **Exhibit B**, pp. 23-24, 33-34, 44 of *Exhibit B*). The blank indorsement was subsequently converted to a special indorsement to CMI. (*See* RJN, **Exhibit B**, pp. 8, 24, 44 of *Exhibit B*). CMI is in possession of the Note by and through its undersigned counsel. (*See* RJN, **Exhibit A**, ¶¶ 15-16; RJN **Exhibit B**, ¶ 7).

After acquiring the Loan from Reunion, CMI sold it to Federal Home Loan Mortgage Corporation ("Freddie Mac") for valuable consideration. (*See* RJN, **Exhibit B**, ¶ 12; RJN, **Exhibit C**, ¶ 5). In connection with the sale of the Loan to Freddie Mac, CMI indorsed the Note in blank, thereby converting it to a bearer instrument. (*See* RJN, **Exhibit A**, ¶ 8; RJN, **Exhibit C**, ¶¶ 6, 8). Following the sale of the Loan to Freddie Mac, CMI became Freddie Mac's authorized servicing agent and, in this capacity, is authorized to maintain possession of and enforce the Note. (*See* RJN, **Exhibit C**, ¶¶ 9-10).

On or about March 6, 2006, Freddie Mac issued a Pool Supplement (the "Supplement") to an Offering Circular for Mortgage Participation Certificates (the "Offering Circular"), dated July 1, 2004, which was issued pursuant to a Mortgage Participation Certificates Agreement, dated February 1, 2001, as amended June 28, 2004, whereby it offered Mortgage Participation Certificates ("PCs") to potential investors. (*See* RJN, **Exhibit C**, ¶¶ 13-16). The Supplement identified a pool of mortgage loans (the "PC Pool"), including the Loan, and offered investors the opportunity to purchase a beneficial interest in the pool through the purchase of the PCs. (*See id.* at ¶¶ 16-17). As a

result of Borrowers' default under the Loan, on February 15, 2010, Freddie Mac repurchased the Loan from the PC Pool. (*See id.* at ¶ 21). Freddie Mac currently owns the Loan. (*See id.* at ¶ 19).

### C. THE BANKRUPTCY & ADVERSARY

On March 10, 2010, Debtor commenced this case by filing a voluntary petition for relief under chapter 13 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq*. (the "<u>Bankruptcy Code</u>"). (*See* BK Dkt. 1). The case was subsequently converted to a chapter 11 on February 14, 2011. (*See* BK Dkt. 56). Despite the pendency of this case for nearly four years, Debtor has yet to obtain Court approval of a disclosure statement, much less confirm a plan of reorganization. (*See generally BK Dkt.*)

On April 2, 2010, CMI filed a Proof of Claim (the "<u>Claim</u>") in this case on account of the Loan. (*See* Claims Register, Claim No. 2-1). The Claim reflects that, as of the date of this bankruptcy filing, Borrowers were in default on 18 monthly mortgage payments and owed a total of $222,926.36 on the Loan. (*See id.*)

On April 13, 2011, Debtor commenced the Adversary by filing a Complaint against CMI and Freddie Mac wherein he seeks, among other things, a determination regarding the validity of the Claim. (*See* Adv. Dkt. No. 1). Throughout the course of the Adversary, Debtor propounded discovery on CMI and Freddie Mac that sought information regarding each entities interest in the Loan. (*See generally* Adv. Dkt.) Discovery in the Adversary has closed and the Court has taken CMI and Freddie Mac's Motion for Summary Judgment under advisement. (*See id.*)

On July 11, 2013, CMI and Freddie Mac filed a *Motion to Dismiss Case or, in the alternative, to Convert Case to Chapter 11* (the "<u>Motion to Dismiss</u>") in this case, which is set for a continued hearing on March 21, 2014. (*See* BK Dkt. 268). In connection with the Motion to Dismiss, CMI and Freddie Mac propounded Requests for Admission ("<u>RFAs</u>") on Debtor. (*See* RJN, **Exhibit D**, p. 10, ¶ 4; *Exhibit A*). By virtue of his failure to timely respond to the RFAs, Debtor has admitted, among other things, that: (a) he signed the Note; (b) CMI qualifies as the "holder" of the Note, as that term is defined under Article 3 of the Uniform Commercial Code (the "<u>UCC</u>"); and (c) he has no evidence to refute CMI's contention that it is authorized to enforce the Note. (*See id.* at p. 10, ¶ 5; *Exhibit A*).

- 3 -  
Case No. 10-52330  
**OPPOSITION TO OBJECTION TO PROOF OF CLAIM**  
Case: 10-52330   Doc# 369   Filed: 02/13/14   Entered: 02/13/14 17:13:48   Page 8 of 20

Notwithstanding the pendency of the Adversary, on January 21, 2014, Debtor filed his Objection wherein he raises the same issues regarding CMI's standing to enforce the Loan that are being litigated in the Adversary. (*See* BK Dkt. 349). The Objection is not supported by any admissible evidence. (*See id.*)

## II. LEGAL STANDARD

A validly filed proof of claim constitutes *prima facie* evidence of the claim's validity and amount. Fed. R. Bankr. P. 3001(f). It is well settled that a proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a). *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000). Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *Id.* (citing *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991)(quoting 3 L. King, Collier on Bankruptcy § 502.02, at 502-22 (15 ed. 1991)). To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Id.* (citing *In re Holm*, 931 F.2d at 623).

## III. ARGUMENT

### A. DEBTOR HAS NOT REBUTTED THE PRESUMPTIVE VALIDITY OF THE CLAIM

*1. The Claim is Presumptively Valid*

As an initial matter, the record reflects that the Claim was filed in accordance with Federal Rule of Bankruptcy Procedure 3001.[2] More specifically, the Claim was: (1) filed on the Court's Official B10 Form, as required by Rule 3001(a); (2) executed by CMI's authorized agent (i.e., its counsel), thereby satisfying Rule 3001(b); (3) accompanied by a duplicate of the writing on which the Claim is based (i.e., the Note) in accordance with Rule 3001(c)(1); and (4) accompanied by

---

[2] Effective December 1, 2011, Federal Rule of Bankruptcy Procedure 3001(c) was amended "to prescribe with greater specificity the supporting information required to accompany certain proofs of claims and, in cases in which the debtor is an individual, the consequences of failing to provide the required information." *See* Fed. R. Bankr. P. 3011, advisory committee's notes. As part of this amendment, the prior subdivision (c) was re-designated as subdivision (c)(1) and subdivision (c)(2) was added to require additional information to accompany proofs of claim filed in cases in which the debtor is an individual. Because amended Rule 3001(c) was not in effect at the time CMI filed its Claim, the additional requirements under the new version of the rule do not apply to the Claim.

evidence that CMI's security interest in the Property has been perfected (i.e., a copy of the recorded Deed of Trust), thereby satisfying Rule 3001(d). Because the Claim was filed in accordance with Rule 3001, it constitutes *prima facie* evidence of both the validity and amount of the claim. *See* Fed. R. Bankr. P. 3001(f). Debtor has not presented any evidence whatsoever in support of the Objection, much less sufficient evidence to rebut the presumptive validity of the Claim. His focus on CMI's standing is otherwise misguided, as explained below.

### 2. *The Constitutional Standing Principles Do Not Apply to CMI*

Admittedly, the Ninth Circuit Bankruptcy Panel (the "Panel") has held that "standing is a prerequisite to the evidentiary benefits of Rule 3001(f)." *See Veal v. Am. Home Mortgage Servicing, Inc. (In re Veal)*, 450 B.R. 897, 922 (9th Cir. BAP 2011). Nevertheless, this Court is not bound by the decisions of the Panel. *See CASC Corp. v. Milner (In re Locke)*, 180 B.R. 245, 254 (Bankr. C. D. Cal. 1995) (stating that BAP decisions are not binding on bankruptcy courts). CMI submits that the constitutional standing requirements do not supplement the evidentiary presumptions contained in Rule 3001(f). Reaching this conclusion requires an analysis of constitutional standing principles. Article III of the Constitution confines the federal courts to adjudicating actual "cases" or "controversies." *Allen v. Wright*, 468 U.S. 737, 750 (1984). It requires a litigant to have standing to invoke the power of a federal court. *Id.* "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Id.* at 750-51 (citation omitted).

Without question, the filing of a proof of claim subjects a claimant to the jurisdiction of the bankruptcy court. *See e.g., In re Skyline Lumber Co.*, 311 F.Supp. 112 (W.D. Va. 1970). This being said, the filing of a claim does not amount to a creditor's invocation of the court's power to decide a case or controversy. To the contrary, the claim is deemed allowed if not objected to, *see* 11 U.S.C. § 502(a), and an actual dispute does not arise unless and until an interested party objects to the claim. *See United States v. Levoy (In re Levoy)*, 182 B.R. 827, 834 (9th Cir. BAP 1995) (noting that it is the objection which initiates a contested matter, governed by Fed. R. Bankr. P. 9014); *see also In re State Line Hotel, Inc.*, 323 B.R. 703, 710 (9th Cir. BAP 2005), *vacated on other grounds and remanded*, 242 F. App'x 460 (9th Cir. 2007) (declining to find that the filing of an objection to claim

is akin to an answer because it is the objection that initiates the contested matter). Since Debtor is the party invoking the Court's power to decide a case or controversy, the constitutional and prudential standing doctrines apply to Debtor, not CMI. Holding otherwise would eliminate Rule 3001(f)'s presumption with respect to the *validity* of a claim filed in accordance with the rule. In light of the foregoing, CMI is entitled to the *prima facie* presumption established by Rule 3001(f). Because Debtor has failed to submit any evidence to rebut this presumption, the Objection should be overruled.

### B.   THE OBJECTION SHOULD BE OVERRULED BECAUSE CMI HAS STANDING TO ENFORCE THE NOTE

Even if the Court were inclined to follow the finding in *Veal* that standing is a prerequisite to the presumptions under Rule 3001(f), the Objection is nevertheless baseless because CMI has standing to file a claim in this case. The starting point for reaching this conclusion is section 501 of the Bankruptcy Code, which authorizes a "creditor" to file a proof of claim. *See* 11 U.S.C. § 501(a). A "creditor" is defined under the Bankruptcy Code as, among other things, an "entity that has a 'claim' against the debtor that arose at the time of or before the order for relief concerning the debtor." *See* 11 U.S.C. § 101(10). In turn, the Bankruptcy Code defines "claim" as a "*right to payment*, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *See* 11 U.S.C. § 101(5)(A) (emphasis added). Thus, as a matter of bankruptcy law, CMI is entitled to assert a claim in this case if it has a "right to payment" from Debtor.

Ultimately, state substantive law controls the rights of note and lienholders in bankruptcy proceedings. *See United States v. Butner*, 440 U.S. 48, 54-55 (1979)(nature and extent of property interests in bankruptcy are determined by applicable state law). Therefore, the Court must look to California law to determine whether CMI has a "right to payment" from Debtor. The provisions of the California Commercial Code, Cal. Comm. Code § 1101, *et seq.*, govern the rights of parties to negotiable instruments. For the reasons explained below, CMI has a "right to payment" under the Note pursuant to the California Commercial Code.

/././

### 1. The Note is a Negotiable Instrument

Under California law, a "negotiable instrument" is defined as:

> …an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it is all of the following:
>
> (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder.
>
> (2) Is payable on demand or at a definite time.
>
> (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

*See* Cal. Comm. Code § 3104(a); *see also Growth Equities Corp. v. Freed*, 227 Cal. App. 3d 506, 509, 277 Cal. Rptr. 848, 850 (Cal. Ct. App. 1991) (citing Cal. Comm. Code § 3104(a)(1)). The Note unquestionably satisfies each of these elements. First, the Note was made payable to Reunion at the time it was issued, thereby satisfying the requirements of Cal. Comm. Code § 3104(a)(1). Second, the Note satisfies the requirements of section 3104(a)(2) because it is payable at a definite time (i.e., the Note specifically provides that it is due and payable on February 1, 2036). Finally, the Note complies with section 3104(a)(3) as it does not require Debtor or his spouse to undertake any act aside from the payment of money (with the exception of maintaining and protecting real property to secure payment, which is expressly allowed under the statute). *See* Cal. Comm. Code § 3106 (providing that "[a] promise is not made conditional…by a reference to another writing for a statement of rights with respect to collateral, prepayment, or acceleration…").

### 2. CMI Qualifies as a "Holder"

Having established that the Note is a negotiable instrument under California law, CMI turns its analysis to CMI's rights under the California Commercial Code. As a negotiable instrument, the Note may be enforced by any person[3] that qualifies as the "holder." *See* Cal. Comm. Code § 3301. A

---
[3] Cal. Comm. Code § 1201(27) defines "person" as "an individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, government, governmental subdivision, agency or instrumentality, public corporation or any other legal or commercial entity."

person in possession of an instrument qualifies as the "holder" of the instrument if the instrument is payable to that person or is payable to the bearer. *See* Cal. Comm. Code § 1201(21)(a). An instrument is payable to the bearer if it does not state a payee. *See* Cal Comm. Code § 3109(a)(2). Here, the Note is payable to bearer because it does not state a payee. Because CMI is in possession of the bearer instrument, it qualifies as a "holder" and is entitled to enforce the Note. *See* Cal. Comm. Code §§ 3301, 1201(a)(21)(a). It follows that CMI has standing to file a claim in this case. *See Veal,* 450 B.R. at 922 (holding that "a 'person entitled to enforce the note,' as defined in U.C.C. § 3–301, has the requisite standing to file a proof of claim in a bankruptcy case."). Importantly, Freddie Mac's ownership interest in the Loan does not alter this analysis. On the contrary, Debtor's payment to CMI discharges his obligations under the Note notwithstanding Freddie Mac's ownership interest. *See* Cal. Comm. Code § 3602(a) (providing that an instrument is paid to the extent payments are made to the entity entitled to enforce it); Cal. Comm. Code § 3301 ("A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument…").

    *3.    The Indorsements on the Note Are Valid*

CMI is mindful of the fact that Debtor has made unsubstantiated allegations regarding the authenticity of the indorsements on the Note. In particular, Debtor has challenged the validity of the indorsement on the Note from CMI to blank.[4] This challenge is meritless. Indeed, if the blank indorsement on the Note were deemed invalid, the Note would be payable to CMI by virtue of the special indorsement from Reunion to CMI. Under this scenario, CMI would nevertheless qualify as a "holder" because it would be in possession of a Note made payable to an identified person (i.e., CMI). *See* Cal. Comm. Code § 1201 (defining "holder" as the "person in possession of a negotiable instrument that is payable…to an identified person that is the person in possession."). Thus, it is immaterial whether the blank indorsement is valid. Regardless, each of the indorsements on the Note

---

[4] In this respect, Debtor's grievance appears to be that the blank indorsement was not made by Janet L. Sims. Debtor fails to understand the mechanics of the UCC. Under the UCC, as adopted in California, a signature may be made: "(i) manually or by means of a device or machine, and (ii) by the use of any name, including a trade or assumed name, or by a word, mark, or symbol executed or adopted by a person with present intention to authenticate a writing." *See* UCC § 3-401(b). A signature may be made by "a person acting, or purporting to act, as a representative" who may sign the instrument "by signing either the name of the represented person or the name of the signer." *See* UCC § 3-402(a). There is no evidence that the blank indorsement did not satisfy these requirements.

- 8 -    Case No. 10-52330
**OPPOSITION TO OBJECTION TO PROOF OF CLAIM**
Case: 10-52330  Doc# 369  Filed: 02/13/14  Entered: 02/13/14 17:13:48  Page 13 of 20

is presumptively valid and authorized. More specifically, the California Commercial Code provides, in pertinent part:

> In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the *burden of establishing* validity is on the person claiming validity, but the signature is *presumed* to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature…

Cal. Comm. Code § 3308(a) (emphasis added). "Burden of establishing" means "the burden of persuading the triers of fact that the existence of the fact is more probable than its non-existence." Cal. Comm. Code § 1201(8). "Presumed" means "that the trier of fact must find the existence of the fact presumed unless and until evidence is introduced which would support a finding of its non-existence." Cal. Comm. Code § 1201(31).

Assuming *arguendo* that Debtor had properly denied the authenticity of the indorsements on the Note, they are nevertheless presumptively valid. Notably, this is not an action to enforce the liability of indorsers on the Note. *See* Cal. Comm. Code § 3415(a)(describing the obligations and potential liability of the indorser of a promissory note). As a consequence, the evidentiary presumption prescribed by section 3308(a) is applicable in this case. *See* Cal. Comm. Code § 3308(a) ("If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer."). Stated another way, the indorsements on the Note are presumptively authentic and authorized, and Debtor has the burden of introducing evidence that would support a finding that they were not. *See* Cal. Comm. Code § 1201(31). Debtor has not satisfied his burden of rebutting this evidentiary presumption.

    4.    *CMI Alternatively Qualifies as a Non-Holder in Possession*

Even if the indorsements on the Note were deemed invalid (they are not), CMI still has a right to payment from Debtor and, by extension, standing to file the Claim. This is the case due to CMI's qualifications as a "nonholder in possession" of the Note. Pursuant to the California Commercial Code, the "transfer of an instrument, whether or not the transfer is a negotiation, vests

- 9 -  Case No. 10-52330
**OPPOSITION TO OBJECTION TO PROOF OF CLAIM**

Case: 10-52330 Doc# 369 Filed: 02/13/14 Entered: 02/13/14 17:13:48 Page 14 of 20

in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course." *See* Cal. Comm. Code § 3203(b). Put differently, if a promissory note is "transferred" to a person who does not become a holder, the transferor is still entitled to enforce the instrument. In this scenario, the transferor qualifies as a nonholder in possession of the instrument. *See* Cal. Comm. Code § 3301; *see also Veal*, 450 B.R. at 911 (noting that a person becomes a nonholder in possession if the physical delivery of the note to that person constitutes a "transfer" but not a negotiation); UCC § 3-301, *Note 1* ("A nonholder in possession of an instrument includes a person that acquired rights of a holder by subrogation or under Section 3-203(a). It also includes any other person who under applicable law is a successor to the holder or otherwise acquires the holder's rights.").

An instrument is "transferred" for purposes of the California Commercial Code "when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." *See* Cal. Comm. Code § 3203(a). This scenario was illustrated in the recent Report of the Permanent Editorial Board ("<u>PEB</u>") for the UCC entitled *Application of the Uniform Commercial Code to Selected Issues Relating to Mortgage Notes* (the "<u>Report</u>"). In the Report, the PEB provided the following illustration of a nonholder in possession:

> Maker issued a negotiable mortgage note payable to the order of Payee. Payee sold the note to Transferee and gave possession of it to Transferee for the purpose of giving Transferee the right to enforce the note. Payee did not, however, indorse the note. Transferee is not the holder of the note because, while Transferee is in possession of the note, it is payable neither to bearer nor to Transferee. UCC § 1-201(b)(21)(A). Nonetheless, Transferee is a person entitled to enforce the note. This is because the note was transferred to Transferee and the transfer vested in Transferee Payee's right to enforce the note. UCC § 3-203(a)-(b). As a result, Transferee is a nonholder in possession of the note with the rights of a holder and, accordingly, a person entitled to enforce the note. UCC § 3-301(ii).
>
> Same facts as [above], except that (i) under the law of agency, Agent is the agent of Transferee for purposes of possessing the note and (ii) it is Agent, rather than Transferee, to whom actual physical possession of the note is given by Payee…In the context of [the above illustration], Transferee is a person entitled to enforce the note. *Whether Agent may enforce the note or mortgage on behalf of Transferee depends in part on the law of agency and, in the case of the mortgage, real property law*.

/./././

- 10 -    Case No. 10-52330
**OPPOSITION TO OBJECTION TO PROOF OF CLAIM**
Case: 10-52330    Doc# 369    Filed: 02/13/14    Entered: 02/13/14 17:13:48    Page 15 of 20

*See* John A. Sebert, *Report of the PEB on the UCC Rules Applicable to the Assignment of Mortgage Notes and to the Ownership and Enforcement of Those Notes and the Mortgages Securing Them* (November 4, 2011), p. 7, *available at* http://www.ali.org/00021333/PEB%20Report%20-%20November%202011.pdf. (emphasis added).

Inserting the facts of this case into the above illustration demonstrates that, as a matter of law, CMI qualifies as a nonholder in possession of the Note. Indeed, Borrowers (the "Maker" in the above illustration) issued a negotiable instrument payable Reunion (the "Payee" in the above illustration), which was later sold to Freddie Mac (the "Transferee" in the above illustration). Assuming *arguendo* that the indorsements on the Note are invalid (they are not), Freddie Mac, like the "Transferee" in the above illustration, became a nonholder in possession of the Note with the rights of a holder. However, like in the illustration, physical possession of the Note was transferred to CMI (the "Agent" in the above-illustration) rather than Freddie Mac. Consequently, the law of agency dictates the extent of CMI's rights as a nonholder in possession. The California Commercial Code specifically recognizes that its terms are to be supplemented by other legal principles, including the law of agency. *See* Cal. Comm. Code § 1103(b). Through the application of the law of agency to the facts of this case, CMI has the actual authority to possess and enforce the Note on Freddie Mac's behalf. (*See* RJN, **Exhibit C**, ¶¶ 8-10); *see also Associated Creditors' Agency v. Davis*, 13 Cal. 3d 374, 383-84, 530 P.2d 1084, 1089 (1975) *(*"Actual authority is such as a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess.") (internal quotations and citation omitted); RESTATEMENT (THIRD) OF AGENCY § 2.01 (2006). In other words, CMI qualifies as a nonholder in possession with the rights of a holder by virtue of its status as Freddie Mac's authorized agent.[5]

---

[5] This result would be the same even if the Note were non-negotiable, as Debtor alleges. Indeed, Reunion's right to payment from Debtor under the Note was assigned to CMI, who then assigned it to Freddie Mac. In turn, Freddie Mac authorized CMI to enforce the Note (and collect the payments due thereunder) on Freddie Mac's behalf. If this transaction were construed under general contract principles rather than the California Commercial Code, CMI would nevertheless have a right to payment from Debtor. *See* RESTATEMENT (SECOND) OF CONTRACTS § 317 (1981) ("An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance."); RESTATEMENT (THIRD) OF AGENCY § 2.01 (2006) ("An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act."); RESTATEMENT (THIRD) OF AGENCY § 2.02 (2006) ("An agent has actual authority to take action designated…in the principal's manifestations to the agent…").

####  5.     The Assignment is Irrelevant

Pursuant to the Objection, Debtor contends that the assignment "does not represent the chain of title." (*See* Opposition, p. 2). Debtor's focus on the assignment of the Deed of Trust is misguided. Indeed, "the critical issue for…purposes of judging allowance of a claim is who is the 'person entitled to enforce the Note.'" *Allen v. U.S. Bank, N.A. (In re Allen)*, 472 B.R. 559, 569 (9th Cir. BAP 2012). The determination of whether CMI is a "person entitled to enforce" the Note is governed exclusively by the California Commercial Code, which does not require an assignment of a trust deed as a condition to qualifying as a "person entitled to enforce" a promissory note. *See* Cal. Comm. Code § 3301. In any event, the assignment of the Note to CMI carried with it the beneficial interest under the Deed of Trust, even without a separate assignment of the Deed of Trust. *See* Cal. Civ. Code § 1084 ("The transfer of a thing transfers also all its incidents, unless expressly excepted…")*.*; Cal. Civ. Code, § 2936 ("The assignment of a debt secured by mortgage carries with it the security"); *Santens v. Los Angeles Finance Co.*, 91 Cal. App. 2d 197, 201, 204 P.2d 619 (4th Dist. 1949) ("the transfer of the note carried with it the security"). As a consequence, the validity of any assignment of the Deed of Trust has no bearing on the determination of whether CMI has the right to enforce the Note and/or Deed of Trust.

### C.  DEBTOR IS DEEMED TO HAVE ADMITTED THAT CMI HAS STANDING TO ENFORCE THE LOAN

Whether or not he chooses to recognize it, Debtor has admitted that CMI has standing to enforce the Loan. More specifically, on August 21, 2013, CMI and Freddie Mac served Debtor with the RFAs. (*See* RJN, **Exhibit D**, p. 10, ¶ 4). Pursuant to the RFAs, Debtor was required to admit or deny that: (1) he has no evidence to support his claims in the Adversary; (2) he has no defense to CMI's enforcement of the Loan; (3) CMI qualifies as the "holder" of the Note, as that term is defined under Article 3 of the UCC; and (4) he has no evidence to refute CMI's contention that it is authorized to enforce the Note. (*See* RJN, **Exhibit D**, *Exhibit A*). Notably, Federal Rule of Civil Procedure 36[6] provides that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection…"

---

[6] As made applicable to this case by Federal Rules of Bankruptcy Procedure 7036 and 9014.

1 *See* Fed. R. Civ. P. 36(a)(3). The record reflects that Debtor did not timely respond to the RFAs. (*See* RJN, **Exhibit D**, p. 10, ¶ 5). As a consequence, by operation of law, he is deemed to have admitted each of the foregoing matters. In fact, these matters are deemed to be conclusively established. *See* Fed. R. Civ. P. 36(b). Put simply, Debtor has admitted that CMI is the "holder" of the Note and this fact is deemed to have been conclusively established. A byproduct of CMI's status as the "holder" of the Note is that it has standing to file the Claim. *See Veal*, 450 B.R. at 922. Because CMI has standing to file the Claim, Debtor's Objection should be overruled.

### D. DEBTOR SHOULD NOT BE ALLOWED TO PURSUE THE SAME RELIEF THROUGH DUPLICATE PROCEEDINGS

An objection to claim is a "contested matter" that is governed by Federal Rule of Bankruptcy Procedure 9014. *See* Fed. R. Bankr. P. 3007, advisory committee's note; *see also Levoy*, 182 B.R. at 834. In turn, Rule 9014 makes Federal Rule of Bankruptcy Procedure 7042 applicable to contested matters. *See* Fed. R. Bankr. P. 9014(c). Rule 7042 incorporates the provisions of Federal Rule of Civil Procedure 42, which authorizes a court to consolidate actions that involve a common question of law or fact. *See* Fed. R. Civ. P. 42(a)(2). Significantly, Debtor seeks to litigate the same issues through the Objection that are being litigated in the Adversary. More plainly stated, both the Objection and Adversary involve the common question of whether CMI has standing to enforce the Note. Debtor has been afforded a full and fair opportunity to litigate his claims in the Adversary, which remains pending as of the date of this opposition. If the Court makes a finding that CMI has standing to enforce the Note in the context of the Adversary, its decision will be binding in this action. *See Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990) ("Under the [law of the case] doctrine, a court is generally precluded from reconsidering an issue previously decided by *the same court*, or a higher court in the identical case."). Thus, the Objection is unnecessary and duplicative. Assuming *arguendo* that there was a need for the Objection, it should be consolidated with the Adversary pursuant to Rule 42. *See* Fed. R. Bankr. P. 3007, advisory committee's note ("If a claim objection is filed separately from a related adversary proceeding, the court may consolidate the objection with the adversary proceeding under Rule 42.").

/./././

### E. DEBTOR SHOULD BE SANCTIONED FOR HIS BAD FAITH CONDUCT

It is settled law that a bankruptcy court has the inherent authority to sanction a party who vexatiously multiplies the proceedings before it. *Knupfer v. Lindblad (In re Dyer),* 322 F.3d 1178, 1196 (9th Cir.2003); *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.),* 77 F.3d 278, 283–84 (9th Cir.1996); *see also Volpert v. Ellis (In re Volpert),* 110 F.3d 494, 500–502 (7th Cir.1997). A bankruptcy court's inherent authority to sanction is recognized by the statutory grant in section 105 of the Bankruptcy Code. *Dyer*, 322 F.3d at 1196-97; *Rainbow Magazine*, 77 F.3d at 284-85, *Volpert*, 110 F.3d at 500-502. The plain language of section 105(a) grants to a bankruptcy court broad authority, including *sua sponte* authority, to impose sanctions to enforce and implement its own orders or rules, *or to prevent abusive litigation tactics*, so as to achieve the orderly and expeditious disposition of the cases before it. *See* 11 U.S.C. § 105(a)(emphasis added); *see also Rainbow Magazine,* 77 F.3d at 284–85; *Volpert,* 110 F.3d at 500.

For literally years, Debtor has prosecuted claims in his Adversary that deal with the same issue as the Objection; namely, whether CMI is authorized to enforce the Note. As a result, the Objection is duplicative of the Adversary. It serves no purpose other than to harass CMI and cause a needless increase in CMI's litigation expenses. A review of the record reveals that Debtor filed the Objection, at least in part, to obstruct CMI's discovery efforts in connection with its Motion to Dismiss. Making matters worse, Debtor has informed CMI's counsel that he intends to propound discovery in connection with the Objection, despite the fact that he already propounded extensive discovery in the Adversary. In short, Debtor's conduct in filing the Objection is tantamount to bad faith. Because of this bad faith conduct, the Court should impose a monetary sanction against Debtor in the form of an award to CMI of its reasonable attorneys' fees and costs incurred in defending against the Objection.

/./././

/./././

/./././

/./././

/./././

## IV.  CONCLUSION

For the reasons set forth herein, the Objection should be overruled or, in the alternative, consolidated with the Adversary, and Debtor should be ordered to pay CMI's reasonable attorneys' fees and costs.

**WHEREFORE**, CMI respectfully requests:

1. That the Court overrule the Objection and allow the Claim in its entirety;
2. Alternatively, that the Court consolidate the Objection with the Adversary;
3. Reasonable attorneys' fees and costs, subject to proof; and
4. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

**PITE DUNCAN, LLP**

Dated: February 13, 2014    /s/ *Brian A. Paino*
BRIAN A. PAINO
Attorneys for *Respondent* CitiMortgage, Inc.